## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| JOHNNY C. RUTHERFORD, JR. and MARY RUTHERFORD, and JOHNNY RUTHERFORD on behalf of those similarly situated,<br><br>     Plaintiffs,<br><br> v.<br><br>HEALTH CARE SERVICE CORPORATION, A Mutual Legal Reserve Company, doing business in Montana as Blue Cross and Blue Shield of Montana, and MONTANA UNIVERSITY SYSTEM,<br>     Defendants. | **Case No. CV-24-81-H-BMM**<br><br><br>**ORDER** |

## INTRODUCTION

Plaintiff's Johnny C. Rutherford, Jr., Mary Rutherford, and Johnny Rutherford on behalf of those similarly situated, (collectively "Rutherford'") filed a complaint in Montana state court alleging the following claims against Health Care Service Corporation doing business in Montana as Blue Cross Blue Shield of Montana and the Montana University System (hereinafter "HCSC" and "MUS" respectively): 1) common law bad faith; 2) breach of fiduciary duty; 3) consumer protection act violations; 4) breach of contract; 5) breach of the implied covenant of good faith and fair dealing; 6) agent liability of HCSC; and 7) negligence. (Doc. 4.)

HCSC removed the action to federal court on the basis of diversity jurisdiction. (Doc. 1.) Rutherford also asks for the following relief and asserts class action causes of action as follows: 8) request for declaratory judgment; 9) request for injunction; 10) common law baith faith; 11) violation of the Montana Unfair Trade Practices Act; 12) negligence per se; 13) violation of the consumer protection act; and 14) unjust enrichment. (Doc. 4 at 25-43.)

MUS employed Rutherford as the facilities director of the Helena college, University of Montana. (*Id*. at 3.) MUS provides health insurance to Rutherford under Montana University System Group Benefits Plan ("Plan"). (*Id*.) HCSC administers the Plan. (*Id*.) Rutherford experienced two herniated discs in his spine causing him severe pain. (*Id*. at 4.) Rutherford's pain affected his ability to work. (*Id*.) Rutherford underwent several pain management treatments, and physical therapy sessions to alleviate the pain, but nothing fully mitigated his pain. (*Id*. at 5.)

Rutherford sought treatment at the Mayo Clinic ("Mayo") in Rochester, Minnesota. (*Id*.) Dr. Arjun Sebastian ("Sebastian") determined that Rutherford's nerve roots had been severely compromised, and the best option was to perform surgical repair on the nerves. (*Id*.) Rutherford sought to have MUS and HCSC pay for Rutherford's surgery. (*Id*.) Mayo sought pre-authorization from HCSC. (*Id*. at 6.) HCSC responded it did not require pre-authorization. (*Id*.)

Sebastian performed the surgery and completely alleviated Rutherford's pain. (*Id.*) The type of surgery performed on Rutherford requires HCSC to undergo a "medical necessity and experimental, investigations or unproven" review before approving the cost of the surgery. HCSC obtained medical records regarding Rutherford's surgery from Mayo and conducted a review. HCSC determined that Rutherford's surgery was not covered and denied coverage. (*Id.* at 6-7.) Sebastian appealed on behalf of Rutherford and submitted reasons why he thought Rutherford's surgery had been necessary. HCSC withdrew its denial and approved Rutherford's claim and paid the claim in full.

## PROCEDURAL HISTORY

Rutherford filed a complaint in Montana state court against HCSC and MUS for himself and others similarly situated on December 15, 2023. (Doc. 4.) HCSC removed the action to Montana federal court on November 14, 2024. (Doc. 1.) Rutherford filed a motion for class certification and appointment of class counsel. (Doc. 29.) HCSC filed a motion to stay Rutherford's motion to certify the class. (Doc. 41.)

## LEGAL STANDARDS

### I. Motion to Dismiss

A claim must be dismissed when there is a failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility arises when the complaint pleads facts from which a court can draw reasonable inferences from that would prove the defendant liable. *Id.* (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard asks for more than a sheer possibility that plaintiffs are entitled to relief." *Orellana v. Mayorkas*, 6 F.4th 1034, 1042 (9th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678)). A court must take allegations of material fact as true and construe the facts in the light most favorable to the nonmoving party. *Turner v. City and County of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015). "Dismissal is proper only where there is no cognizable legal theory, or an absence of sufficient facts alleged to support a cognizable theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Montana law requires that a party "point to the violation of a specific contractual provision in order for its complaint to sound in contract." *Tin Cup Cty. Water v. Garden City Plumbing & Heating Inc.*, 200 P.3d 60, 67 (Mont. 2008).

## II. Striking Class Actions

A court may require that the pleadings be amended in class actions to eliminate allegations about representation of absent persons and that the action proceed accordingly. Fed. R. Civ. P. 23(d)(1)(D). Rule 12(f) of the Federal Rules of

Civil Procedure states that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

### III.        Montana Unfair Practices Act

Montana's Unfair Trade Practices Act ("MT UTPA") reserves the right for an insured to bring a breach of contract claim. *Draggin' Y Cattle Co., v. Junkermier*, 439 P.3d 935, 942-943 (Mont. 2019). "An insured may not bring an action for bad faith in connection with the handling of an insurance claim." Mont. Code. Ann. § 33-18-242(3). The Montana Supreme Court allows a claim for breach of covenant of good faith and fair dealing that does not involve the handling of an insurance claim. *Thomas v. Northwestern Nat. Ins. Co.*, 973 P.2d 804, 809 (Mont. 1998). The Montana Supreme Court recognized in *Marshall v. State* that the plaintiff succeeded in pleading a breach of the implied covenant of good faith and fair dealing claim. 830 P.2d 1250, 1251-52 (Mont. 1992). Marshall argued that his employer acted in secret to deny Marshall's job promotion and breached the contract by violating the implied covenant of good faith and fair dealing. *Id*. The plaintiff in *Thomas* brought a breach of covenant claim based on conduct during renewal of the policy. 973 P.2d at 809. The Montana Supreme Court determined that Mont. Code Ann. § 33-18-242(3) did not bar the plaintiff's claim. *Id*.

## DISCUSSION

### I.  MUS Motion to Dismiss Counts I, III, and V

MUS moves to dismiss Counts I, III, and V of Rutherford's SAC. (Doc. 6.)

#### A. Counts I, V

MUS contends that the MT UTPA bars Rutherford's common law bad faith claim (Count I), and Rutherford's breach of implied covenant of good faith and fair dealing (Count V) claim. (Doc. 7 at 9.) MUS argues that Montana law prevents an insured from bringing an action for bad faith in connection with handling of an insurance claim. (*Id*. at 10, citing Mont. Code Ann § 33-18-242 (3).) Rutherford counters that the Montana Insurance Code ("MIC") does not apply to MUS and his claims are not precluded. (Doc. 19 at 7.)

The Montana state district court denied MUS's motion to dismiss and stated that "[t]he Montana Supreme Court has consistently found where [the MT UTPA] does not govern purely common law causes of action based upon insurer misconduct are not precluded." (Doc. 19 at 9, citing *Mark Ibsen, Inc. v. Caring for Montanans, Inc.*, to 371 P.3d 446, 446.) The Montana state district court reasoned that because the MIC did not apply to MUS then it was not subject to the provisions restricting the common law causes of action (*e.g.* § 242.) (Doc. 20-1 at 5, citing Mont. Code. Ann. § 33-1-102(7).) The Court reaches the same conclusion.

6

A plain reading of the statute demonstrates that the MIC does not apply to MUS. *See* Mont. Code. Ann. § 33-1-102(7). MUS is organized under Title 20, Education, rather than the Insurance Code. Contrary to what MUS argues, Rutherford bases his claims of bad faith on MUS's duty independent of any contract or statute and these claims are sufficiently plead to withstand a motion to dismiss. (Doc. 4 at 25.) Montana law distinguishes MUS from other types of insurers, such as HCSC. *See* § 22-25-1316 (6)(b). This distinction further supports Rutherford's argument that the MIC does not apply to MUS. MUS cites to no case law preventing an insured from asserting common law causes of action against an issuer of a group health benefits plan. Counts I and V in Rutherford's SAC should not be dismissed.

## B.  Count III

MUS moves to dismiss Rutherford's Montana Consumer Protection Act ("MCPA") claims based on MUS's status as a governmental entity. (Doc. 7 at 12.) Rutherford argues that MUS should be considered a "legal entity" under the MCPA. (Doc. 19 at 10.) Rutherford notes that because the definition of "person" differs throughout Title 30 that the Court should determine MUS to be potentially liable under the MCPA as a "legal entity". (*Id.*)  Part 2 of Title 30 defines "person" to include "any person, partnership, firm, corporation, joint-stock company, or other association engaged in business within this state." Mont. Code Ann. § 30-14-202 (7). Part 1 of Title 30 defines a person to include "natural persons, corporations,

trusts, partnerships, incorporated or unincorporated associations, and any other legal entity." Mont. Code. Ann. § 30-14-102 (6).

MUS relies on *Montana Vending, Inc v. Coca-Cola Bottling Company of Mont.*, to argue that when a statutory scheme does not specifically include the "state" or "governmental entity" then it is not logical to read a governmental entity into the statute. 78 P.3d 499 (Mont. 2003.) The Court agrees. The Court declines to read into the statute the applicability to a governmental entity absent a clear expression by the legislature to include a governmental entity.

The Montana Supreme Court in *Montana Vending* addressed whether a school district was subject to a suit under the MT UTPA. *Id.* at 502. Specifically, the Montana Supreme Court analyzed whether the school district constitutes a "person" who engages as a "business" under the MT UTPA. *Id.* The school district cited no fewer than twenty other instances throughout Montana Code that referenced governmental agencies or the state. *Id*. at 503. The same proves true here.

To take the words "any other legal entity" in context, it seems more probable that the Montana Legislature intended the Consumer Protection Act to apply to people and business entities, not governmental entities. The term "any other legal entity" most likely refers to any other legal business entity organized in a way different than those specifically enumerated. MUS would not fall under the

8

definition of any other legal entity. MUS's motion to dismiss should be granted as to Count III of Rutherford's SAC.

## II.    HCSC's Motion to Dismiss the SAC.

HCSC and MUS defenses tie together and HCSC moves to dismiss Rutherford's SAC for many of the same reasons asserted in MUS's motion. (Doc. 9.)

### A. Count I, Breach of Common Law Bad Faith

HCSC argues that the MT UTPA bar claims by an insured against an insurer related to the handling of an insurance claim. (Doc. 9 at 16, citing § 33-18-242 (3)) Rutherford contends that HCSC serves as a third-party administrator ("TPA"), not an insurer, and remains subject to suit under the MT UTPA. (Doc. 20 at 15.) Rutherford relies on *O'Fallon v. Farmers Ins. Exch*, to argue that he maintains a claim as a "third party claimant" under the MT UTPA. (*Id*. at 15, citing 859 P.2d 1008 (Mont. 1993).

A driver and passenger in *O'Fallon* were injured in a car accident and filed an action against the other driver's insurer to recover for unfair trade practices and malicious prosecution. *Id*. A Montana state district court dismissed both claims for failure to state a claim upon which relief could be granted. *Id*. The Montana state district court gave no explanation for its dismissal of the bad faith claims. *Id*. at 1013. The insurer, on appeal, argued that the driver and passenger were neither an

"insured" or "third-party claimant" and, therefore, lacked standing under § 242 the of the MT UTPA. *Id.* Section 242 of the MT UTPA provides for an independent cause of action when the MT UTPA has been violated:

> An insured or a third-party claimant has an independent cause of action against an insurer for actual damages caused by the insurer's violation of 33-18-201(1), (4), (5), (6), (9), or (13).

*Id*; citing Mont. Code. Ann. § 33-18-242 (1).

The Montana Supreme Court reversed the Montana state district court's decision to dismiss the bad faith claims and recognized the Montana legislature's intent to distinguish between people making claims for bad faith against their own insurer and people making claims against an insurance company with which they have no contractual relationship. *Id*. The Montana Supreme Court concluded that the driver and passenger alleged a valid claim under § 242 as third-party claimants. *Id*. The result should be the same here.

Rutherford sits as a third-party claimant who asserts a claim of bad faith against HCSC as a third-party administrator. Rutherford validly pleads that HCSC violated six separate subsections of Mont. Code. Ann. § 33-18-201, and that Rutherford suffered significant economic loss and damages. (Doc. 4 at 26-27.) HCSC contends that Count 1 of Rutherford's SAC should be barred because the heading reads "common law bad faith." (Doc. 34 at 7.) The Court recognizes that Rutherford may have intended to plead statutory bad faith claims, not common law

10

bad faith claims and treats the error as harmless. HCSC's motion to dismiss on Count I should be denied.

### B. Count II, Breach of Fiduciary Duty

HCSC seeks to dismiss the breach of fiduciary claim in Count II of the SAC. HCSC contends that its role as a TPA and the fact that Rutherford is not part of the contract between MUS and HCSC warrants dismissal. (Doc. 34 at 10.) The pertinent part of the contract between HCSC and MUS provides as follows:

> "The Claims Administrator [HCSC] provides ministerial duties only, exercises no discretion over Plan assets, and will not be considered a fiduciary as defined by any applicable state or federal law or regulation.

(Doc. 9-1 at 101.)

Rutherford asserts that HCSC served as the "de facto ultimate decisionmaker" under the Plan, and, therefore, owed a fiduciary duty to Rutherford. (Doc. 4 at 27.) Third party administrators, such as HCSC, typically do not function as fiduciaries when they "perform their usual professional functions in rendering legal, accounting, or consulting services to an employee benefit plan." *Cheap Easy Online Traffic Sch. v. Peter L. Huntting & Co.*, 818 F. App'x 683, 685 (9th Cir. 2020) (citing *CSA 401(K) Plan v. Pension Prof'ls, Inc.*, 195 F.3d 1135, 1139 (9th Cir. 1999)).

The plaintiffs in *CSA* attempted to recover for breach of fiduciary status under Employee Retirement Security Income Act ("ERISA"), which specifically defines on which parties a fiduciary duty may be imposed. *CSA 401(K) Plan v. Pension Pros., Inc.*, at 1138. The co-trustee of an employee retirement accounts hired a third-

party consulting company to "prepare financial reports and perform other third-party administrative services." *Id*. at 1137. The consulting company discovered that the co-trustee had been embezzling funds from the employees and that the co-trustee was in violation of tax law and U.S. Department of Labor regulations. *Id*.

The consulting company represented that it would continue working for the co-trustee as long as the co-trustee repaid the embezzled funds. *Id*. The consulting company notified the co-trustee that the company would be required to report, however, the fact that the co-trustee had mishandled the funds. *Id*. The co-trustee continued falsifying documents, and the consulting company resigned. *Id*. Notably the consulting company chose not to notify the employees or law enforcement of the suspected embezzlement after having resigned. *Id*. at 1138. The employees sued the consulting company for breach of fiduciary duty.

The Ninth Circuit determined that the consulting company had been hired to perform ministerial tasks, but addressed whether the consulting company stepped beyond the scope of its duties as a third-party administrator when it conditioned its continued work on the co-trustee's repayment. *Id*. at 1139. This issue raised the question of whether the consulting company exercised discretionary authority or control. *Id*.  The Ninth Circuit concluded that the consulting company lacked actual control or discretionary authority over the co-trustee's decision-making power. *Id*. This case differs.

HCSC, in its role as a third-party administrator, apparently possesses a significant amount, if not total control, over Rutherford's claims and assets. (*See* Doc. 4 at 6-11.) Rutherford was not free to accept or reject HCSC denial of medical coverage, or in a position where he simply could retain another claims administrator to handle his claim. *See CSA 401(K) Plan*, 195 F.3d 1135, 1139 (9th Cir. 1999). HCSC continued to deny Rutherford's claim until he appealed to a "peer to peer" conversation between Rutherford's doctor, Sebastian, and HCSC. (Doc. 4 at 8-9.) HCSC denied Rutherford's claim until Sebastian appealed on Rutherford's behalf. HCSC rejected Rutherford's claim on a technicality because Rutherford did not appeal himself. (*Id*. at 11.) HCSC paid Rutherford's medical bills after Rutherford's complaint had been filed in Montana state court. (*Id*. at 12-13.) These facts weigh in favor of finding that a fiduciary relationship existed between HCSC and Rutherford. HCSC's motion to dismiss Count II will be denied.

## C. Count III, Breach of Montana Consumer Protection Act

HCSC seeks to dismiss Count III of the SAC based on the claim that the MCPA excludes insurers. (Doc. 9 at 19.) HCSC argues that Montana law exempts the application of the MCPA to the regulated insurance agency as regulated by the Montana state auditor. (*Id*. at 20.) Rutherford contends that the MCPA specifically governs those activities in which HCSC is *permitted* to engage rather than exempting HCSC's allegedly *prohibited* conduct at issue. (Doc. 20 at 22, citing Mont. Code.

Ann. § 30-14-105(1).) The Court finds Rutherford's reading too narrow. The definitions of "person" under the MCPA would not exempt HCSC as a governmental entity. As discussed above, HCSC serves as a third-party administrator and Rutherford stands as a third-party claimant. HCSC argues that the MCPA's exemption of its handling of insurance claims shields it from liability. (Doc. 9 at 19-20, citing *Binder v. State Farm Fire & Cas. Co.*, No. CV 07-29-M-DWM-JCL, 2008 WL 11348719, at *4 (D. Mont. Feb. 25, 2008), report and recommendation adopted, No. CV 07-29-M-DWM-JCL, 2008 WL 11349719 (D. Mont. Apr. 2, 2008).) The Court knows of no cases and the parties cite none, where a third-party administrator insurer has been found to have violated the MCPA. The Court finds that that contract tasked HCSC with handling Rutherford's insurance claim. HCSC handling of Rutherford's insurance claims should shield it from violation of the MCPA. HCSC motion to dismiss Count III should be granted.

### D. Count IV, breach of contract

HCSC seeks to dismiss Count IV of Rutherford's complaint due to the lack of contractual relationship between HCSC and Rutherford. (Doc. 9 at 21.) HCSC also claims Rutherford suffered no damages because HCSC eventually paid his claim. (*Id.*) The cases cited by HCSC prove unpersuasive. (*Id.*) The Ninth Circuit in *Alloco v. Metro Life Ins. Co.* affirmed a grant of summary judgment based on an employee's attempt to assert that a salary continuation plan should be treated as an insurance

14

contract. 425 Fed. Appx. 559, 561 (9th Cir. 2011). The Ninth Circuit concluded that nothing in the record supported the employee's assertion that the third-party administrator's supervision of the employer's salary continuation plan qualified as an insurance contract. *Id*. The facts here prove different.

The Court determines that the Montana state district court's reliance on *Crystal Springs Trout Co. v. First State Bank of Froid*, 732 P.2d 819, 823, on reh'g, 736 P.2d 95 (Mont. 1987), applies. A bank president, who also was a lawyer, promised the plaintiffs in *Crystal Springs Trout Co.* that he would secure a loan from a bank. The president was an authorized agent of the bank and assured plaintiffs he was securing a loan for their business. The president was not in fact securing a loan for the plaintiff's business. The plaintiffs were forced to sell their business and suffered damages. *Id*. at 823. The Montana Supreme Court concluded that it was clearly erroneous for the Montana state district court to have held that the president's conduct constituted willful and wanton misconduct, betrayal, and other tortious acts and nevertheless concluded that the plaintiffs were not entitled to damages from that conduct. *Id*. The president's action as an agent of the bank left the bank jointly and severally liable for any damages suffered by the plaintiffs. *Id*.

HCSC, as the Claims Administrator "may, when appropriate or when required by law, consult with relevant health care professionals and access professional industry resources in making decisions about claims that involve specialized medical

knowledge or judgment." (Doc. 9-1 at 35.) This authority mirrors the exact authority the Plan Administrator exercises under the Plan. (*Id*. at 39, 41, 87.) HCSC serves as MUS's agent and may be jointly and severally liable to third parties such as Rutherford for wrongful acts. *Crystal Springs Trout Co. v. First State Bank of Froid*, 732 P.2d at 823.

HCSC further contends that MUS eventually paid Rutherford's claims, and, therefore, Rutherford had no cause of action and can recover no damages. (Doc. 9 at 23.) HCSC is partially correct. Rutherford may not have any damages for the insurance claims themselves but may maintain a claim for damages to the wrongful handling of the claims. Rutherford may maintain both a breach of contract claim and a claim for tortious handling of his claim if Rutherford can show that HCSC breached the terms of the contract. *See Estate of Gleason v. Cent. United Life Ins. Co*., 350 P.3d 349, 356 (Mont. 2015) (holding that if an insurer is found to have violated the UTPA damages due to denial or delay in payment of claims under the contract may also present tort damages). HCSC motion to dismiss Count IV should be denied.

### E. Count V, breach of the implied covenant of good faith and fair dealing

HCSC seeks to dismiss Count V of Rutherford's complaint because the MT UTPA "explicitly proscribes" common law bad faith and breach of fiduciary duty causes of action that are based on handling of an insurance claim. (Doc. 9 at 16,

citing *Ave. C Apartments, Ltd. Liab. Co. v. Cincinnati Ins. Co.*, No. CV 19-37-BLG-SPW-TJC, 2019 WL 6498914, at *4 (D. Mont. Nov. 12, 2019).) Rutherford argues that HCSC's third-party administrator status cannot shield it from liability as an insurer handling the claim of the insured. The Court finds that for similar reasons as to Count I and Count II that HCSC's motion should be denied with respect to Count V. Rutherford brings both common law bad faith and statutory claims under the MT UTPA. The common law claims arise independent of any breach of contact claims. The claims should survive at this stage. As determined above, HCSC was acting as a fiduciary when it agreed to administer the claims for MUS. Rutherford, as the third-party claimant, had little to no control over the claims process and could not force MUS to select an alternative claims administrator. HCSC's motion should be denied as to Count V.

### F. Count VI, agent liability of HCSC

HCSC seeks to dismiss the Count VI based on the lack of any formal or informal relationship with the State of Montana. For the reasons stated above HCSC's motion will be denied as to Count VI. HCSC asserts that it is exempt because it is regulated by the Montana state auditor and not subjected to the MCPA. HCSC's argument fails. HCSC, as Claims Administrator and agent of MUS, may be liable to Rutherford under agent liability.

### G. Count VII, negligence

HCSC does not challenge Rutherford's negligence claim. The Montana state district court dismissed Rutherford's individual negligence claim. The facts, as outlined above, prove sufficient to support a negligence claim.

HCSC motion should be denied at to count VII.

### H. Mrs. Rutherford's claims

HCSC seeks to dismiss Mrs. Rutherford's claims for lack of standing. The Court agrees in part. Mrs. Rutherford claims emotional distress and loss of consortium damages. (Doc. 4.)

### i. Counts IV and II

HCSC argues that the allegations in the SAC rest on the existence of the Plan. (Doc. 9 at 26.) HCSC assert that Mrs. Rutherford was not a party to the contract or an intended third-party beneficiary. HCSC argues that Mrs. Rutherford may not recover under Rutherford's breach of contract or fiduciary duty claims. HCSC concedes that Mrs. Rutherford stands as an incidental beneficiary but argues that Mrs. Rutherford may not enforce the contract between MUS and HCSC. The Court agrees. Mrs. Rutherford was not a party to the Plan and was not eligible to submit claims under the Plan. HCSC's motion should be granted on Count IV and Count II. Rutherford asserts no facts to support the claim that the Plan also covered Mrs. Rutherford as his spouse.

### ii. Counts I and V

For similar reasons Mrs. Rutherford lacks standing to bring common law bad faith and breach of contractual duty of good faith and fair dealing. Rutherford cites *Butler v. Unified Life Ins. Co.,* to argue that Mrs. Rutherford should be entitled to recover on the same theories as Mr. Rutherford.  No. CV 17-50-BLG-SPW-TJCC, 2018 WL 4473883, at *4 (D. Mont. July 18, 2018), report and recommendation adopted, No. CV 17-50-BLG-SPW, 2018 WL 4462502 (D. Mont. Sept. 18, 2018). The spouse seeking loss of consortium in *Butler*, sought medical attention for depression and anxiety and had been hospitalized for high blood pressure and heart palpitations. *Id*. at *4. These conditions arose after the complaint had been amended to include facts sufficient to support a loss of consortium claim. *Id*. Mrs. Rutherford cites her anxiety having to deal with Rutherford's medical issues and claim processing but goes no further. (Doc. 4 at 11.) Without more facts Mrs. Rutherford's claims should be dismissed. The Court will dismiss the claims without prejudice and allow Rutherford to amend should there be facts tending to support Mrs. Rutherford's loss of consortium claim.

### iii.  Counts III

For the same reasons as stated above, Mrs. Rutherford cannot maintain a loss of consortium claim based on the MCPA. HCSC's motion to dismiss Count III as it relates to Mrs. Rutherford is granted.

Mrs. Rutherford may have loss of consortium as it pertains to the negligence claim alleged in Count VII. As stated above, Mrs. Rutherford has not pled sufficient facts to link her alleged loss of consortium with any harm. The Court should dismiss Mrs. Rutherford's claims without prejudice.

## I. Class Action Claims

HCSC seeks to dismiss Rutherford's class claims as legally deficient. (Doc. 9 at 30.) HCSC uses the same arguments to argue that the class claims should be dismissed. HCSC also filed a motion to strike the class allegations in the SAC. (Doc. 12.) Rutherford has filed separately a motion for class certification. (Doc. 30.) Because Rutherford has a pending class certification motion, the Court addresses briefly the motion to dismiss and motion to strike here. The Court will address the class claims in more detail in a separate class certification order.

Rutherford alleges seven counts regarding class actions claims including the following: 1) declaratory judgment; 2) injunction; 3) common law bad faith for TPA subclass; 4) violation of the MCPA/UTPA § 33-18-242; 5) negligence per se; 6) consumer protection act for a TPA subclass; and 7) unjust enrichment. Rutherford argues that HCSC's motion to strike should be dismissed as moot because of its pending motion for class certification. (Doc. 18 at 15.) Rutherford incorporates his individual arguments for the putative class and argues the claims have been sufficiently pled. (Doc. 20 at 25.) A court may strike claims in a pleading either on

its own or on motion made by a party. Fed. R. Civ. Pro. 12 (f) (1-2). A court may refuse to enter declaratory judgment "where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." Mont. Code. Ann. § 27-8-206.

The Court declines to dismiss Rutherford's class action request to declare HCSC Not Medically Necessary ("NMN") Standard Operating Procedure ("SOP") to be in violation of Montana law. It is plausible that potential class members were denied claims based on HCSC's NMN SOP in the same manner as Rutherford. The Court lacks the appropriate context at this stage to determine whether HCSC's alleged SOP violates Montana law. The Court similarly lacks context to support dismissing the request for preliminary and permanent injunction to prohibit HCSC from enforcing its SOP. The motion to dismiss should be denied. The motion to dismiss as to the remaining five claims should be denied. Claims may exist in the class that are not unique to Rutherford. The Court will address the claims in more detail in class certification order.

## ORDER

Accordingly, **IT IS ORDERED**:

1. MUS's Motion for Dismiss (Doc. 6.) is **DENIED in part and GRANTED in part**.

2. MUS's motion to dismiss Counts I and V of the SAC are **DENIED**.

3. MUS's motion to dismiss Count III of the SAC is **GRANTED**.

4. HCSC's Motion for Dismiss (Doc. 8.) is **DENIED in part and GRANTED in part**.

5. HCSC's motion to dismiss Counts I, II, IV, V, VI, and VII is **DENIED**.

6. HCSC's motion to dismiss Count III is **GRANTED**.

7. HCSC motion to dismiss Counts IV and II as to Ms. Rutherford is **GRANTED**.

8. HCSC's motion to dismiss Counts I, V, and III as to Ms. Rutherford is **GRANTED** without prejudice.

9. Rutherford may amend his complaint to include facts sufficient to support Ms. Rutherford's claims.

10. HCSC's motion to strike (Doc. 12) the class action claims in the SAC is **DENIED**.

**DATED** this 14th day of May, 2025.


Brian Morris, Chief District Judge
United States District Court