FILED
02/09/2024
*Angie Sparks*
CLERK
Lewis & Clark County District Court
STATE OF MONTANA
By: Helen Coleman
DV-25-2023-0000789-NE
Menahan, Mike
11.00

John Morrison

MORRISON, SHERWOOD, WILSON, & DEOLA, PLLP

401 N. Last Chance Gulch St.

Helena, MT 59601

ph. (406) 442-3261

fax (406) 443-7294

john@mswdlaw.com

*Attorney for Plaintiffs*

# MONTANA FIRST JUDICIAL DISTRICT COURT
# LEWIS AND CLARK COUNTY

| | |
|---|---|
| JOHNNY C. RUTHERFORD, JR. and MARY RUTHERFORD,<br><br>Plaintiffs,<br><br>v.<br><br>HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Company, doing business in Montana as Blue Cross and Blue Shield of Montana, and the MONTANA UNIVERSITY SYSTEM.<br><br>Defendants. | Cause No: DV-25-2023-0000789-NE<br><br><br><br>**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Come now the Plaintiffs, through counsel, and for their Complaint in the above captioned matter allege as follows:

1. Plaintiff Johnny C. "John" Rutherford (hereinafter referred to as either "Mr. Rutherford" or "John") is a citizen and resident of the state of Montana, living in Lewis and Clark County.

1

2. Defendant Health Care Service Corporation is an Illinois Mutual Legal Reserve Company with its headquarters in Chicago, Illinois, which does business in Montana under the name "Blue Cross and Blue Shield of Montana." (BCBS)

3. Defendant Montana University System is a government entity that employs the Plaintiff, Mr. Rutherford, and provides health insurance to him as an employment benefit under a self-funded government plan, the Montana University System Group Benefits Plan, that is administered by BCBS.

4. Mr. Rutherford is and at all material times has been the facilities director at Helena College, University of Montana. It is in that role that he is covered by the said health insurance under the identification number MVA 826750411.

## GENERAL ALLEGATIONS

5. On Sunday, April 2, 2023, John woke to severe pain in his right shoulder. After taking over the counter medications to no effect, he was taken to Urgent Care. Staff took x-rays of his right shoulder but could not find an issue to explain the pain he was experiencing. They gave John prescription strength medications and suggested he see his primary care physician.

6. On Tuesday April 4, the pain was severe to point of being debilitating. John's wife Mary took him to the St. Peter's hospital emergency room where

staff were able to control the pain intravenously. They sent John home with stronger prescription meds.

7. John was able to see his primary care provider the next day. He was sent to Helena Orthopedic for further x-rays and diagnosis. He later had an MRI, which revealed two herniated discs between C5 and C6 and between C6 and C7. The fluid from the discs was leaking onto the nerve servicing John's right shoulder and arm.

8. At this point, John's right arm was numb and his right hand was "tingly." It felt like the hand was falling asleep. This was 24/7. John was unable to do any kind of physical labor, which was a particular hardship because Mary and John had purchased a home that required a complete renovation. They had done such renovations several times over the years. John was unable to perform at an optimum level at his work, as the Director of Facilities at Helena College, for the same reason. In that work, John has always been a "hands on" director, always working with his crew to accomplish any task.

9. John went through several PT sessions and had an x-ray guided cortisone shot in his C6 vertebrae. Nothing worked. John's pain was only partially mitigated with prescription medications, such as hydrocodone and gabapentin, as well as several steroids.

10. In May, John sent his records to Mayo Clinic (Mayo) in the hopes that they would be able to either effect repairs to his cervical spine or offer an effective course of non-invasive treatment. Mayo responded immediately with the recommendation that John travel to Rochester, Minnesota for further tests and a consult.

11. This happened on the June 5, 2023. Dr. Arjun Sebastian met with John and Mary to show them the result of the MRI and the x-rays taken at Mayo. The images showed that the nerve roots had been severely compromised. All four nerve canals were nearly closed off. After much conversation it was determined that the surgical option was John's best course of action. John made an appointment to return to Rochester for surgery on the June 27, 2023.

12. As noted above, John's primary health insurance is the Montana University System Group Benefits Plan administered by BCBS. As BCBS administered this coverage, Mayo called them for pre-authorization. BCBS informed Mayo, through an automated system, that pre-authorization was not required for the procedure.

13. The surgery performed by Dr. Sebastian was a complete success. Postoperatively, John experienced nearly complete relief from his intractable, crippling pain. Unfortunately, his pain was replaced with the

stress of dealing with an insurance company that refused to pay for the procedure on grounds that it was not necessary.

14. Not long after successfully completing the procedure, John was informed that BCBS was denying coverage on the basis that it was "not medically necessary." The denials began in July. By letter of July 21, 2023, BCBS denied coverage for procedure codes 22845 (interior instrumentation in 2-3 vertebral segments) and 22853 (insertion of inter body biomechanical device(s) (e.g., synthetic cage, mesh) with integral anterior instrumentation for device anchoring screws flanges), when performed to intervertebral disk space in conjunction with inter body arthrodesis, each interspace) on grounds that the procedure was "Not Medically Necessary."

15. By letter of July 27, 2023, BCBS denied coverage for procedure codes 2251 (arthrodesis, anterior inter body, including disc space preparation, discectomy, osteophytectomy and decompression of spinal cord and/or nerve roots; cervical below C2) and 22552 (arthrodesis, anterior inter body, including disc space preparation, discectomy, osteophytectomy and decompression of spinal cord and/or nerve roots; cervical below C2, each additional interspace.") on grounds that the procedure was "Not Medically Necessary."

16. By letter dated August 2nd, 2023, BCBS denied coverage for procedure 77092 (trabecular bone score (TBS), structural condition of the bone microarchitecture; interpretation and report on fracture risk only by other qualified health care professional), on grounds that the procedures were "Experimental, Investigational, and/or Unproven."

17. By letter dated August 22nd, 2023, BCBS denied coverage for procedure codes 22551, 22552, 22853, and 22845, described as arthrodesis, anterior inter body, including disc space preparation, discectomy, osteophytectomy and decompression of spinal cord and/or nerve roots; cervical below C2, insertion of inter body biomechanical device(s) (e.g., synthetic cage, mesh) with integral anterior instrumentation for device anchoring and anterior instrumentation; 2 to 3 vertebral segment and all associated procedures and services" again on grounds that it was "Not Medically Necessary."

18. On August 30, John spoke with "Genica" at BCBS. She informed John that documentation had to come from the provider, and she recommended that John move forward with scheduling a "peer to peer" conversation between the BCBS medical director and Dr. Sebastian. This would be an opportunity, Genica said, for them to not only talk about the procedure but the symptoms and alternative treatments leading up to the surgical decision. John shared

this information with "Dawn" at Mayo, along with the BCBS phone number. BCBS put a deadline on this conversation of September 22, 2023.

19. John followed up with Mayo on September 15, 2023, and was told that the peer-to-peer conversation had not yet taken place. John reiterated how important it was that this conversation take place by the 22nd. Mayo reported that BCBS was not making themselves available.

20. On information and belief, also on about September 15, 2023, Mayo provided an explanation from Dr. Sebastian to BCBS explaining in detail why the procedure he performed upon Mr. Rutherford was necessary. Dr. Sebastian concluded by saying, "Please let our office know if you have any further questions at 507-538-0514."

21. John was later told that Mayo had been able to connect with BCBS on September 19 regarding the peer-to-peer conversation, but that BCBS told Mayo BCBS no longer offered it as an option.

22. On August 31, 2023, BCBS denied coverage for procedure codes 36620 and 00670, described as "arterial catheterization or cannulation for sampling, monitoring or transfusion and anesthesia for extensive spine and spinal cord procedures," again on grounds that the procedures were "Not Medically Necessary."

23. Also on August 31, 2023, BCBS denied coverage for procedure codes 95938, 95939, 95870, and 95941, described as "short latency somatosensory evoked potential study, stimulation of any/all peripheral nerves or skin sights, central motor evoked potential study, needle electromyography; Limited study of muscles and continuous interoperative neuropsychology monitoring, from outside the operating room," again on grounds that it was "Not Medically Necessary."

24. Also on August 31, 2023, BCBS denied coverage for procedure 00670, described as "anesthesia for extensive spine and spinal cord procedures," again on grounds that it was "Not Medically Necessary."

25. Also on August 31, 2023, BCBS denied coverage for procedure 72040, described as radiologic examination, spine, cervical" again on grounds that it was "Not Medically Necessary."

26. A letter along with clinical notes was generated by Mayo and sent to BCBS on September 20 as an effort to appeal the denial. BCBS rejected the letter and notes due to John not filling out and signing the official appeal form. John filled out the form and sent it to Mayo on October 18.

27. By letter dated November 6, 2023, BCBS denied coverage for procedure code 77091, described as "trabecular bone score (TBS), structural condition

of the bone microarchitecture, technical calculation only," on grounds that the procedure was "experimental, investigational, and/or unproven."

28. On November 14, 2023, John called and was told that there had been no update. John has received nothing from BCBS regarding the status of the denied and appealed claims.

29. The medical procedures performed by Dr. Sebastian and Mayo the medical procedures performed for Mr. Rutherford were medically necessary and were not "experimental, investigational, and/or unproven."

30. BCBS took over the execution of the contract between the state of Montana and Mr. Rutherford. As a result, BCBS became a party to the contract and owed duties under the contract to Rutherford.

31. A special relationship existed between Mr. Rutherford and Defendants, as exists in all first party consumer insurance contracts, due to the parties inherently unequal bargaining positions, the vulnerability of the policyholder, and other factors.

32. The stress of facing the large Mayo medical bill without coverage has been maddening for John and resulted also in Mary suffering a loss of consortium.

33. At all material times, BCBS acted as the authorized agent of Defendant State of Montana.

34. On information and belief, BCBS benefits, directly or indirectly, from making decisions that result in fewer paid claims and/or better financial performance by the Montana State health plan.

35. The decisions described herein were made with conscious or intentional disregard of and with indifference to the high probability of injury to the Plaintiffs.

## COUNT I

## NEGLIGENCE

36. Plaintiffs incorporate herein by reference all paragraphs above as if fully set forth.

37. Defendants undertook to handle the health coverage claims of Mr. Rutherford and had a duty to exercise reasonable care in doing so. Defendants also had the duty under Montana law, applicable to anyone who handles insurance claims, to exercise reasonable care in doing so. That duty ran to Plaintiffs because it was foreseeable--indeed, certain--that the acts and omissions of Defendants in handling Mr. Rutherford's claims would directly and indirectly impact Plaintiffs.

38. Defendants failed to exercise reasonable care in their determination that the procedures performed by Dr. Sebastian and his team at Mayo were not medically necessary and/or experimental, investigational, and/or unproven.

Such decisions fell below the standard of care applicable to health plans and TPAs evaluating such claims and therefore were negligent.

39. As the direct and legal result of the negligence of Defendants, Plaintiffs and each of them suffered significant damages including, without limitation, more than $100,000 in unpaid medical bills, damage to their credit and credit reputation, and emotional distress.

## COUNT II

## BREACH OF FIDUCIARY DUTY

40. Plaintiffs incorporate herein by reference all paragraphs above as if fully set forth.

41. Defendants were in a fiduciary relationship with Mr. Rutherford because they exercised considerable—virtually complete--discretion over the plan by deciding whether claims for plan benefits would be paid, and their actions in the handling of Mr. Rutherford's claims constitute breach of fiduciary duty under the common law of Montana. Moreover, BCBS possessed fiduciary duties to Plaintiffs because it served, *de facto*, as the ultimate decisionmaker in a plan regarding an award of benefits.

42. As a direct and legal result of such Defendants' breach of fiduciary duty, Mr. Rutherford suffered significant economic and non-economic injuries and

damages, including emotional distress, and Mary Rutherford has suffered a loss of consortium.

## COUNT III

## COMMON LAW BAD FAITH

43. Plaintiffs incorporate herein by reference all paragraphs above as if fully set forth.

44. Defendants had a common law duty of good faith to Mr. and Mrs. Rutherford that exists independent of contract and independent of statute. The duty attaches to every person and entity that provides insurance services to the people of Montana. The duty required honesty and fact and the observance of reasonable commercial standards by Defendants in their performance of the insurance claim handling functions. By engaging in conduct described herein, Defendants breached their common law duty of good faith.

45. Although the Montana insurance code does not apply to the Montana University System Group Benefit Plans, per § 33-1-102, MCA, § 33-18-201, a model insurance code provision, represents one source of reasonable commercial standards for insurance claims handling. Defendants violated multiple standards set forth in the subsections of § 201 including the duty to accurately represent facts and insurance policy provisions relating to

coverages (1), the duty to adopt and implement reasonable standards for the prompt investigation of claims (3), the duty to perform a reasonable investigation before denying claims (4), the duty to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear (6), the duty not to compel its insureds to institute litigation to recover amounts due under the insurance policy (7), the duty not to delay investigation or payment of claims by requiring the insured to submit formal forms (12), and the duty to provide a reasonable explanation of the basis for the denial of a claim.

46. As a direct and legal result of Defendants' breach of their common law duty of good faith, Mr. Rutherford suffered significant economic and non-economic injuries and damages, including severe emotional distress, and Mary Rutherford has suffered a loss of consortium.

## COUNT IV

## CONSUMER PROTECTION ACT

47. Plaintiffs incorporate herein by reference all paragraphs above as if fully set forth.

48. Plaintiffs are consumers, pursuant to § 30-14-102, MCA.

49. Defendants are persons within the meaning of § 30-14-102(6).

50. Defendants have violated § 30-14-103, MCA, by using unfair or deceptive acts or practices in the conduct of their trade or commerce, which is unlawful.

51. Plaintiffs, due to Defendants' violation of § 30-14-103, MCA, are entitled to recover all benefits from this plan for the above-mentioned procedures as well as with all other economic and non-economic damages.

52. Pursuant to § 30-14-133, MCA, Plaintiffs are entitled to treble damages and attorney fees.

## COUNT V

## BREACH OF CONTRACT

53. Plaintiffs incorporate herein by reference all paragraphs above as if fully set forth.

54. The Montana University System Group Benefits Plan constitutes a contract between Defendants and Plaintiff, Mr. Rutherford.

55. By refusing to pay for the medical services provided by Dr. Sebastian and Mayo, Defendants breached their contract with Mr. Rutherford. In particular, Defendants' position that the procedures performed by Dr. Sebastian and Mayo were not medically necessary and/or experimental, investigational, and/or unproven, were unfounded and the procedures were otherwise within the scope of coverage of the planned contract.

56. Moreover, the plan contract specifically provided that denial of the claim on the basis that it was "not medically necessary" could only be raised if the insured did not submit the claim for pre-authorization and, in this case, Mr. Rutherford, through Mayo, did submit the claim for pre-authorization and was told by BCBS's automated system that they procedure did not require pre-authorization.

57. As a direct and legal result of Defendants' breach of contract Plaintiffs have suffered and will continue to suffer a loss of the benefits promised to them under the health plan contract.

## COUNT VI

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

58. Plaintiffs incorporate herein by reference all paragraphs above as if fully set forth.

59. The Montana University System Group Benefits Plan, like all contracts, contained an implied covenant or to good faith and fair dealing that required honesty in fact and the observance of reasonable commercial standards.

60. By engaging in conduct described herein, Defendants breached the implied covenant or of good faith and fair dealing.

61. As a direct and legal result of the Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs suffered special and general damages as described herein.

## COUNT VII

## AGENT LIABILITY OF BCBS

62. Plaintiffs incorporate herein by reference all paragraphs above as if fully set forth.

63. BCBS, as agent of the state of Montana, committed wrongful acts which caused damage to plaintiffs and, pursuant to § 28-10-702(3), MCA, BCBS is liable for all such damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs John and Mary Rutherford respectfully request the following relief against defendants:

a. Payment of all Mr. Rutherford's medical expenses as billed by his providers and covered by the plan;

b. Consequential economic damages;

c. Non-economic damages, including for emotional distress and lost enjoyment of life;

d. Loss of Consortium for Mary Rutherford;

e. Treble damages;

16

f. Attorney fees;

g. Prejudgment interest and post judgment interest in the amounts permitted by law;

h. Costs of suit and such other and further relief as this court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38, F. R. Civ. P., the Plaintiffs hereby demand a trial by jury of the issues triable by right by jury.

DATED this 9th day of February, 2024.

By: /s/ John Morrison  
John Morrison  
*Attorney for Plaintiffs*

# CERTIFICATE OF SERVICE

I, John Martin Morrison, hereby certify that I have served true and accurate copies of the foregoing Complaint - Amended Complaint to the following on 02-09-2024:

Mary Christina Surr McCann (Attorney)
201 W. Railroad St., Suite 300
Missoula MT 59802
Representing: Health Care Service Corporation
Service Method: eService

Daniel J. Auerbach (Attorney)
201 West Railroad St., Suite 300
Missoula MT 59802
Representing: Health Care Service Corporation
Service Method: eService

Electronically signed by Amy Kirscher on behalf of John Martin Morrison
Dated: 02-09-2024