IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JOHNNY C. RUTHERFORD, JR. and MARY RUTHERFORD, and JOHNNY RUTHERFORD on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HEALTH CARE SERVICE CORPORATION, A Mutual Legal Reserve Company, doing business in Montana as Blue Cross and Blue Shield of Montana, and MONTANA UNIVERSITY SYSTEM,<br>                    Defendants. | **Case No. CV-24-81-H-BMM**<br><br>**ORDER** |

## INTRODUCTION

Plaintiff's Johnny C. Rutherford, Jr., Mary Rutherford, and Johnny Rutherford on behalf of those similarly situated (collectively "Rutherford'"), filed a complaint in Montana state court alleging the following claims against Health Care Service Corporation doing business in Montana as Blue Cross Blue Shield of Montana and the Montana University System (hereinafter "HCSC" and "MUS" respectively): 1) common law bad faith; 2) breach of fiduciary duty; 3) consumer protection act violations; 4) breach of contract; 5) breach of the implied covenant of good faith and fair dealing; 6) agent liability of HCSC; and 7) negligence. (Doc. 4.)

HCSC removed the action to federal court on the basis of diversity jurisdiction. (Doc. 1.) Rutherford also asks for the following relief and asserts class action causes of action as follows: 8) request for declaratory judgment; 9) request for injunction; 10) common law baith faith; 11) violation of the Montana Unfair Trade Practices Act; 12) negligence per se; 13) violation of the consumer protection act; and 14) unjust enrichment. (Doc. 4 at 25-43.)

## BACKGROUND

MUS employed Rutherford as the facilities director of the Helena College, University of Montana. (*Id.* at 3.) MUS provides health insurance to Rutherford under Montana University System Group Benefits Plan ("Plan"). (*Id.*) HCSC administers the Plan. (*Id.*) Rutherford experienced two herniated discs in his spine that caused him severe pain. (*Id.* at 4.) Rutherford's pain affected his ability to work. (*Id.*) Rutherford underwent several pain management treatments and physical therapy sessions to alleviate the pain, but nothing fully mitigated his pain. (*Id.* at 5.)

Rutherford sought treatment at the Mayo Clinic ("Mayo") in Rochester, Minnesota. (*Id.*) Dr. Arjun Sebastian ("Sebastian") determined that Rutherford's nerve roots had been severely compromised, and the best option was to perform surgical repair on the nerves. (*Id.*) Rutherford sought to have MUS and HCSC pay for Rutherford's surgery. (*Id.*) Mayo sought pre-authorization from HCSC. (*Id.* at 6.) HCSC responded that it did not require pre-authorization. (*Id.*)

Sebastian performed the surgery and completely alleviated Rutherford's pain. (*Id*.) The type of surgery performed on Rutherford requires HCSC to undergo a "medical necessity and experimental, investigations or unproven" review before approving the cost of the surgery. HCSC obtained medical records regarding Rutherford's surgery from Mayo and conducted a review. HCSC determined that Rutherford's surgery was not covered and denied coverage. (*Id*. at 6-7.) Sebastian appealed on behalf of Rutherford and submitted reasons why he thought Rutherford's surgery had been necessary. HCSC withdrew its denial and approved Rutherford's claim and paid the claim in full.

## PROCEDURAL HISTORY

Rutherford filed a complaint in Montana state court against HCSC and MUS for himself and others similarly situated on December 15, 2023. (Doc. 4.) HCSC removed the action to Montana federal court on November 14, 2024. (Doc. 1.) Rutherford filed a motion for class certification and appointment of class counsel. (Doc. 29.) HCSC filed a motion to stay Rutherford's motion to certify the class. (Doc. 41.)

## LEGAL STANDARD

### I. Class Certification

Class relief proves appropriate where the underlying issues are common to the entire class and the questions of law are applicable to each class member. *Gen. Tel.*

*Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)). Class actions serve to save the Court's and the parties' resources by allowing an issue affecting every class member to be economically litigated. *Id.* Courts limit claims that fall under the class action umbrella to those class claims that are "fairly encompassed by the named plaintiff's claims." *Id.* at 156 (quoting *Gen. Tel. Co. of Northwest v. EEOC*, 446 U.S. 318 (1980)).

>A class may be established if the following exists:
>
>1) the class is so numerous that joinder of all members is impracticable;
>2) there are questions of law or fact common to the class;
>3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23 (a) (1-4).

>A class may be certified if the above is true and one of the following is true:
>
>1) prosecuting separate actions by or against individual class members would create a risk of:
>
>   A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
>   B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
>2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

    3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

        A) the class members' interests in individually controlling the prosecution or defense of separate actions;

        B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

        C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

        D) the likely difficulties in managing a class action.

*Id.* at (b) (1-3).

## DISCUSSION

### I. Rutherford's Motion for Class Certification; Rule 23 (a) requirements

Rutherford moves the Court for class certification against HCSC for having systematically denied claims as "Not Medically Necessary" and without having conducted an investigation into the claims. (Doc. 31 at 6.) Rutherford alleges seven counts regarding class actions claims: 1) declaratory judgment; 2) injunction; 3) common law bad faith for TPA subclass; 4) violation of the MCPA/UTPA § 33-18-242; 5) negligence per se; 6) consumer protection act for a TPA subclass; and 7) unjust enrichment. (Doc. 4 at 39-43.)

Rutherford points to HCSC employees Kelly Dunkirk ("Dunkirk") and Kimberly Warren-Ellis ("Warren-Ellis") as support for HCSC's Standard Operating Procedure ("SOP") in denying claims. (*Id.* at 7.) HCSC provided no substantive response to Rutherford's motion for class certification. (Doc. 46.) HCSC filed instead a motion to stay class certification briefing pending the Court's ruling on other motions. (Doc. 41.) HCSC argues that the motion for class certification is procedurally premature. (Doc. 47 at 3.) The Court will address the class certification motion in detail below. The Court treats this order as tentative should further discovery change the outcome of class certification. *See Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco,* 688 F.2d 615, 633 (9th Cir. 1982) (recognizing that a "district court's determination on the maintainability of a class action may be conditional and may be altered or amended before the decision on the merits.") (internal quotations and citations omitted).

Rutherford defines the class as follows:

> All policyholders and plan members covered under non-ERISA health plans in Montana that are administered by HCSC and subject to Montana claim handling law, who have had claims denied by HCSC within the applicable statute of limitations period, pursuant to the Not Medically Necessary Standard Operating Procedure, on grounds that the medical procedure being billed was "not medically necessary."

(Doc. 31 at 17, citing SAC.)

Rutherford also seeks to certify two subclasses. The first would be a subclass of policyholders whose claims were denied by HCSC as a third-party administrator.

6

The second subclass would be policyholders whose claims HCSC denied when acting as an insurer.

### A. Numerosity

No bright line rule exists for numerosity, but courts almost always deny certification of a class where the class contains fewer than 20 putative members. *See, e.g.*, *Gen. Tel. Co. of Northwest v. EEOC*, 446 U.S. 318, 330 (1980). Courts occasionally deny certifications for failure to meet the numerosity requirement when the proposed class stands between 20 and 40 putative members. *See, e.g.*, *Peterson v. Albert M. Bender Co., Inc.*, 75 F.R.D. 661, 667 (N.D. Cal. 1977)*; Anderson v. Home Style Stores, Inc.*, 58 F.R.D. 125, 130 (E.D. Penn. 1972). If the exact size of the class is unknown but a court can determine by way of common sense and general knowledge that the class may be large, the numerosity requirement is satisfied. *Turcios v. Carma Labs., Inc.*, 296 F.R.D. 638, 645 (C.D. Cal. 2014).

Rutherford alleges that HCSC denied 15,000 claims in the last five years as "Not Medically Necessary." (Doc. 31 at 20.) Rutherford narrows the class to Montana and claims that HCSC denied pursuant to the "Not Medically Necessary" Standard Operating Procedure. The Court agrees that it is conceivable that a large number of claims exist in Montana that were denied by following the Standard Operating Procedure. The Court determines that the supporting declarations and complaint adequately support Plaintiffs' numerosity claim.

### B. Commonality

A class meets the commonality requirement through the existence of the "same injury" resulting in a "common contention" that is "capable of class wide resolution [. . .] in one stroke." *Walmart Stores, Inc. v. Dukes* ("*Dukes*"), 564 U.S. 338, 350 (2011). Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982). The U.S. Supreme Court has narrowed this inquiry significantly. It no longer suffices to demonstrate that the putative class members suffered injuries under the same law. *Dukes*, 564 U.S. at 350. To establish commonality, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008) (internal citations omitted).

Rutherford asserts that he can answer common questions of law and fact on a class-wide basis by using the same evidence Rutherford would use to prove his own claim. (Doc. 31 at 23.) The deposition excerpts from Dunkirk and Warren-Ellis and the questions posed by Rutherford indicate common questions resolvable through class remedies. Dunkirk and Warren-Ellis served as medical reviewers for HCSC. HCSC tasked medical reviewers with "simply reviewing the patient's documentation that the provider sends in and looking at [HCSC's] medical policies,

and lining [it up] to make sure that the patient had met the medical policy criteria." (Doc. 31-1 at 9.)

Dunkirk would send any adverse determination to a medical doctor for review. HCSC alleges that Dunkirk lacks the authority to deny claims. (*Id*. at 10.) Dunkirk could approve the claim if she determined that the claim met the medical policy criteria. (*Id*.) Dunkirk knew nothing of the steps before or after a claim gets to her for review. (*Id*. at 11.) Dunkirk relied solely on information contained in the medical records and requested additional documentation only if such document was missing from the date of service. Warren-Ellis also did not understand what happens to a claim after she made a determination of "Not Medically Necessary" and was unsure if she possessed the authority to issue a final determination. (Doc. 31-1 at 23.) Warren-Ellis sat in a similar role as Dunkirk in reviewing HCSC's medical policy and determining whether the claim fit the types of procedures the patient sought. (*Id*. at 24-25.) The Court finds that the facts at issue support a finding that commonality exists among potential class members.

### C. Typicality

Representative claims are "typical" if the claims of the putative class are expected to be "reasonably coextensive with those of absent class members," though they "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The test of typicality 'is whether other members have the

same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Rutherford cites to HCSC's Standard Operating Procedure in reviewing claims and deeming them Not Medically Necessary. (Doc. 31 at 25.) Questions of fact remain regarding what documents HCSC employees reviewed as part of the Not Medical Necessary determination. The procedure in which the claims were reviewed remains typical of the class. The class likely would have had to appeal their claim through HCSC's appeal process similar to the path followed by Rutherford. The class members may have been subjected to various types of injuries as a result of the denial, but all allegedly suffered harm as a result of HCSC's policy to review claims systematically without consulting outside information. The Court finds that the typicality prong has been met.

### D. Adequacy of Representation

Under Rule 23(a)(4), Plaintiffs must fairly and adequately protect class interests. Fed. R. Civ. P. 23(a)(4). This inquiry presents a two-fold test: first, "the named representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). And second, whether the named plaintiffs and counsel will

litigate vigorously on behalf of the entire class. *Ellis v. Costco Wholesale Corp.*, 657 F. 3d 970, 985 (9th Cir. 2011).

Rutherford's proposed class counsel represents that he is unaware of any conflicts of interest. The Court finds that the first part of the test has been met at this stage. Rutherford must also demonstrate "a sufficient interest in, and nexus with, the class so as to ensure vigorous representation." (Doc. 31 at 27; citing *Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.),* 779 F.3d 934, 943 (9th Cir. 2015).) Rutherford sits in a position to pursue class claims vigorously that will benefit the class and his own claim. Rutherford appealed his Not Medical Necessary determination until HCSC paid his claim. Rutherford's claim likely would not have been approved if he had not vigorously appealed and forced HCSC to consider documents outside of the initial determination.

Rutherford also has retained experienced class counsel that prove qualified to pursue claims on behalf of the proposed class. (*See* Doc. 31-3.) The Court finds that the adequacy of representation prong has been met.

## II.  Rule 23(b) Requirements

### A. Rule 23(b)(2)

Rule 23(b)(2) applies when the opposing party either has acted or refused to act on grounds that apply to the entire class such that injunctive relief or declaratory relief is appropriate for the whole class. Fed. R. Civ. P. 23(b)(2). A Rule 23(b)(2)

class does not allow members the chance to opt out and does not require a district court to afford potential members notice of the action. *Walmart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Id*. at 360.

The Court finds that Rutherford made the requisite showing under Rule 23(b)(2). Rutherford seeks a declaratory ruling that HCSC's Not Medically Necessary Standard Operating Procedure and related claim denials violate an insurer's obligation to reasonably investigate claims based on all available information. (Doc. 4 at 39.) Rutherford also seeks a preliminary and permanent injunction to prevent HCSC from denying claims based on the Not Medically Necessary Standard Operating Procedure and force HCSC to change the way that it investigates claims. (*Id*. at 40.) Rutherford proposes steps that HCSC should implement as part of its investigation. (*Id*.) The Court finds that the remedy that Rutherford seeks would apply to the class as a whole. If HCSC is required to change its Standard Operating Procedure, each class member would be provided a different level of review, potentially changing the outcome of their claim status. Each member's claim also could potentially be adjusted monetarily after HCSC reviews the claim under the new method.

### B. Rule 23(b)(3)

Federal Rule of Civil Procedure 23(b)(3) requires a district court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). A Rule 23(b)(3) class is not a mandatory class, and putative class members can opt out after receiving notice. *Ellis v. Costco Wholesale Corp.*, 657 F. 3d 970, 987 (9th Cir. 2011). Rule 23(b)(3) permits class certification where a class action may not be required but would be more convenient. *Amchem Products, Inc.*, 521 U.S. at 615. Predominance and superiority allow the rule to "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote [. . .] uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable result.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment)).

Rule 23(b)(3) calls upon courts to give careful scrutiny to the relation between common and individual questions in a case. An individual question is one where "members of a proposed class will need to present evidence that varies from member to member." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). A common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* The requirements of Rule 23(b)(3) overlap with the requirements of Rule

13

23(a) in the following manner: plaintiffs must prove that there are "questions of law or fact common to class members" that can be determined in one stroke. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022).

The Court finds that it lacks sufficient information to define a class under Fed. R. Civ. Pro. 23(b)(3). The class may be appropriately certified under (b)(1) and (b)(2). Whether questions of law and fact of class members predominate or whether class action would be superior to other methods remains undecided. The Court will allow class discovery to take place. The Court reserves the right to make findings and alter this order. *See* Fed. R. Civ. Pro. 23(c)(1)(C).

## ORDER

Accordingly, **IT IS ORDERED**:

1. Rutherford's Motion for Class Certification (Doc. 29) is **GRANTED in part**.

2. The class will be defined as follows

    "All policyholders and plan members covered under non-ERISA health plans in Montana that are administered by HCSC and subject to Montana claim handling law, who have had claims denied by HCSC within the applicable statute of limitations period, pursuant to the Not Medically Necessary Standard Operating Procedure on grounds that the medical procedure being billed was "not medically necessary."

3. There will be a subclass defined as follows:

"Policyholders whose claims were denied by HCSC as a third-party administrator."

4. HCSC's Motion to Stay Class Certification (Doc. 41) is **DENIED**.

**DATED** this 11th day of June, 2025.

_____
Brian Morris, Chief District Judge
United States District Court