John M. Morrison
Scott L. Peterson
MORRISON, SHERWOOD, WILSON, & DEOLA, PLLP
401 N. Last Chance Gulch St.
Helena, MT 59601
ph. (406) 442-3261
fax (406) 443-7294
john@mswdlaw.com
speterson@mswdlaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| JOHNNY C. RUTHERFORD, JR. and MARY RUTHERFORD, and JOHNNY RUTHERFORD ON BEHALF OF THOSE SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Company, doing business in Montana as Blue Cross and Blue Shield of Montana, and the MONTANA UNIVERSITY SYSTEM,<br><br>Defendants. | Cause No: 6:24-CV-00081-BMM<br><br><br>**BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Plaintiff John Rutherford respectfully submits this brief in support of his Motion for Partial Summary Judgment. HCSC has stipulated that it denied Rutherford's claims because HCSC did not have an MRI result. Rather than ask

1

Mayo if it had the MRI required by HCSC's medical policy for the procedure, HCSC denied the claim and left it to Rutherford to appeal if he wanted to submit additional records. *HCSC now expressly contends that it has no duty to collect additional medical records that are relevant to the claim decision before denying the claim.* HCSC's position goes to the heart of the medical necessity claim denials that are at issue in this case. Rutherford believes that HCSC's position, which guides its approach to medical necessity denials, categorically violates Montana law and particularly Mont. Code Ann. § 33-18-201(4).[1] Rutherford also believes that HCSC's approach to this issue in his case violated the same Montana law. He therefore presents this issue, on behalf of himself and the certified (b)(1) Class, to the Court for summary ruling.

### Undisputed Relevant Facts

Rutherford's Statement of Undisputed Facts (SUF) is submitted with this motion and brief in accordance with Local Rule 56.1. The SUF establishes:

- HCSC denied multiple Rutherford claims because "it did not receive sufficient documentation to support medical necessity, specifically, MRI records were not provided to substantiate the treatment provided." SUF ¶ 6.

---

[1] In denying HCSC's motion to dismiss, the Court previously held, "Rutherford validly pleads that HCSC violated six separate subsections of Mont. Code. Ann. § 33-18-201." Doc. 70. At 10.

- HCSC's claim review process involves a nurse "medical reviewer" looking at records submitted by the provider with or after the billing and, if she determines the records do not satisfy HCSC's medical policies, the reviewer puts the claims in the queue for review by an HCSC doctor; if the doctor agrees that the records in hand do not satisfy the medical policy criteria, the claim is denied. SUF ¶ 9.

- HCSC Nurse Medical Reviewer Kelly Dunkirk testified "it is our process to review with what we have," and they only ask for additional documentation if they have no documentation at all from the date of service. SUF ¶ 10. They do not contact treating providers, or policyholders, or experts. *Id*. ¶ 11. If the records do not check the boxes on the HCSC medical policy for that procedure, she puts the claim in the queue for review by an HCSC doctor who decides whether to deny the claim. *Id*. ¶ 10

- Kimberly Warren Ellis, MD (now retired), who denied Rutherford's claims, testified that her job was simply to compare the records she is given to the medical policy, and she did not perform any other kind of investigation before deciding if the procedure was medically necessary. SUF ¶ 12. She did not contact the treating provider or the plan member or an expert or ask for any medical records that might be needed; she was "never told how to do that or anything about it." *Id*. Although she issues the claim denial, she has never

"seen documents or received training regarding Montana insurance claim handling law." *Id*. She does not recall anyone ever telling her that she was supposed to do a reasonable investigation before denying a claim. *Id*.

- Yvonne Hencley, a claim coordinator (now retired) who handled Rutherford's claims, stated in her declaration, "If medical records in hand do not meet the requirements of the policy, the claim is denied…. If the provider or the patient does not agree with the denial, it is up to them to file an appeal." SUF ¶ 13. She noted that initial appeals are usually denied, but second appeals are usually successful, although "[v]ery few people understand that there are a couple different levels of appeals or that there is a time limit. People usually just wind up paying the bill when a claim is denied. Often, it is because the member got a lawyer or someone else to help them get the additional information that was lacking when the claim was initially denied." *Id*.

- HCSC confirmed in its 30(b)(6) testimony that it reviews "whatever records are provided, and a claim decision is made. If those records do not satisfy the requirements of the medical policy as to medical necessity, then the claim is denied. And if the provider wants to appeal that, they can appeal and send in more records, and the claim can be reconsidered at that time." HCSC explained that "it's not the practice of HCSC to reach out to providers for that

4

information." Doc. 31-1 (HCSC 30(b)(6) depo. of J.P. Pujol, at 17, 107-108.) SUF ¶ 14.

• HCSC testified that it does not contact the treating provider in making the claim decision or a decision on an appeal. Yet it also testified that the letter from the treating surgeon, Dr. Ajun Sebastian, which referenced the MRI that showed stenosis, was all it needed to reverse the denials and pay the claim. SUF ¶ 15.

• The above testimony reflects HCSC's Standard Operating Procedure (SOP) relating to medical necessity denials. The not medically necessary SOP (hereinafter NMN SOP) refers to the nurse claim reviewer (e.g., Dunkirk) as Utilization Management (UM) clinician and defines their role as follows:

> The Utilization Management (UM) Clinician reviews the request and available documentation from the provider or facility. If the information provided does not meet medical policy or guideline criteria for medical necessity, the UM clinician sends the request to the Medical Director (MD) for review and a decision.

The SOP defines the MD's role (e.g., Ellis) as follows:

> The MD receives the request from the UM clinician. The MD reviews the member's medical records and other information submitted by the provider, facility, or attending physician. Based on the member's plan, account, and service level, the MD uses appropriate policy and guidelines to determine medical necessity of the requested service. The MD makes the determination to approve or deny.

SUF ¶ 16.

- On the day that Rutherford's core claims were denied, Dunkirk reviewed 64 large dollar claims. She sent 17 claims (26.5%) for review by the physician. Ellis reviewed 17 claims the same day denying six (36%) as Not Medically Necessary and eight (53%) as E/I/U—she denied 9 out of 10 claims she reviewed. Her timecard shows that *she worked one hour that day*. In the last five years, HCSC says it has denied 15,127 claims in Montana alone as "Not Medically Necessary." According to HCSC, 3,841 (25%) of these claims were appealed by the claimant; 1,165 (30%) of the appeals resulted in the denial being reversed and the claim being accepted and paid. SUF ¶ 15.

- Rutherfords' first written discovery requests in this Court included various requests for admission, which HCSC denied. Rutherfords' second written requests included interrogatories that asked HCSC to explain the denials. HCSC's answers, while they did not justify the denials, asserted clearly HCSC's position that it does not have an obligation to investigate claims by collecting records or information before denying them on medical necessity grounds.

  • **REQUEST FOR ADMISSION NO. 1:** Admit that you denied John Rutherford's claims as not medically necessary because you did not have sufficient medical records to satisfy the requirements of the applicable HCSC medical policy.

• **RESPONSE:** Denied on the basis that <u>BCBSMT was not responsible for collecting all relevant medical records</u>. <u>Rather, it was the Mayo Clinic that was required to submit all medical evidence in support of a request for coverage,</u> and in this case, no MRI was submitted to BCBSMT that satisfied the criteria of medical policy SUR712.041. As a result, BCBSMT properly denied Mr. Rutherford's requests for coverage based on a lack of medical necessity.

• **REQUEST FOR ADMISSION NO. 2:** Admit that you did not request additional medical records before denying Rutherford's claims as not medically necessary.

• **RESPONSE:** Denied on the basis that the applicable Plan does not require BCBSMT to request additional records, particularly when it is unclear if those records exist. <u>BCBSMT relies on the providers submitting the requests to provide all necessary medical evidence in support of that request</u>.

• **REQUEST FOR ADMISSION NO. 3:** Admit that you made no effort to seek additional information from Dr. Sebastian, his staff, or the Mayo Clinic before denying Rutherford's claims as not medically necessary.

• **RESPONSE:** Denied on the basis that because Mr. Rutherford's request for coverage were initially routed through Blue Cross and Blue Shield of Minnesota, <u>BCSBMT had no obligation to request additional records.</u> The

applicable Plan does not require BCBSMT to request additional records, particularly when it is unclear if those records exist. BCBSMT relies on the providers submitting the requests to provide all necessary medical evidence in support of that request.

SUF ¶ 17 (Underscoring supplied).

HCSC has made clear through multiple witnesses that it denies claims as not medically necessary when the records in hand do not satisfy the requirements of HCSC's internal medical policies. If HCSC has any records in hand for the date of the procedure, its claim handlers make no effort to obtain records or information that would demonstrate medical necessity. (Except when they are handling a Texas claim, in which case--under substantively identical law--they are required to ask the treating provider to explain the medical necessity.) SUF ¶ 16, n.3.

The record in this case shows, for example, that HCSC denied John Rutherford's claim because they did not have an MRI. The MRI had been done and showed the required nerve impingement, but HCSC did not ask for it. Nor did HCSC ask for the treating provider's explanation of the necessity of the procedure even though they now say, as soon as they received that from Dr. Sebatian at Mayo, they made the decision to pay the claims. (They actually made the decision days after an executive inquiry following service of this lawsuit, months after Dr. Sebastian's letter.)

The data obtained from HCSC during discovery shows that in the last five years, HCSC has denied over 15,000 claims in Montana alone as "Not Medically Necessary." According to HCSC, roughly 25% of these claims were appealed by the claimant and 30% of the appeals resulted in the denial being reversed and the claim being accepted and paid. Claim coordinator Hencley stated that, while initial appeals are usually denied, second level appeals usually result in reversal of the denials. Thus, HCSC in five years denied about 1000 claims as not medically necessary that, after it received more information, it ultimately paid. Thousands more such claims remain denied because HCSC abandons its duty to investigate.

HCSC claim handlers have never been trained in claim handling law such as Montana's Unfair Claims Settlement Practices Act that prohibits refusing to pay claims "without performing reasonable investigation based upon all available information." Mont. Code Ann. § 33-18-201(4). They do not even know there is a duty to investigate.

### The Standard for Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. *Celotex Corp.*, 477 U.S.

at 325. Rule 56 also allows a court to grant partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); *see also Allstate Ins. Co. v. Madan*, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995).

The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); *State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender

evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e) ; *Matsushita*, 475 U.S. at 586, n.11.

In the absence of a binding decision from the state's highest court, "a federal court must predict how the highest state court would decide the issue . . . ." *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 884 F.3d 812, 820 (9th Cir. 2018) (internal citations omitted). In Montana, "duty is a question of law" for the court to decide. *Monroe v. Cogswell Agency*, 2010 MT 134, 356 Mont. 417, 234 P.3d 79, 86 (Mont. 2010).

## Argument

1. **HCSC's denial of Rutherford's claims without asking for the MRI and without asking for Dr. Sebastian's input violated the Montana Unfair Claim Settlement Practices Act.**

   a. *Montana law states in "unmistakable terms" that the insurer must conduct a reasonable investigation based on "all available information" before denying a claim.*

Montana's Unfair Claim Settlement Practices Act provides rules that govern claim handling in Montana. § 33-18-201, MCA. In pertinent part, the Act states:

> **33-18-201. Unfair claim settlement practices prohibited.** A person may not, with such frequency as to indicate a general business practice, do any of the following: …
> (4) refuse to pay claims without conducting a reasonable investigation based upon all available information….

The Montana Supreme Court has made clear that "the UTPA is designed to protect claimants against insurers who would deny a claim without first conducting a reasonable investigation." *Lorang v. Fortis Ins. Co*., 2008 MT 252, ¶ 86, 345 Mont. 12, 35, 192 P.3d 186, 204.[2] The Court emphasized: "The Legislature has utilized <u>unmistakable terms</u> which establish that <u>all information available to the insurer must be considered</u>. *Lorang*, ¶ 87, citing § 33-18-201(4), MCA. (Underscoring supplied.)

> b. *HCSC's denial of Rutherford's claims because it did not have an MRI, without asking Mayo for the MRI, violated Montana's UCSPA.*

Ordinarily, whether the insurer has performed a reasonable investigation in a particular case is a fact issue of the jury. *McVey v. USAA Cas. Ins. Co*., 2013 MT 346, ¶ 26, 372 Mont. 511, 516, 313 P.3d 191, 195 (Whether USAA actually conducted a reasonable investigation as required by § 33-18-201(4), MCA, remains an issue for the trier of fact.)  However, the undisputed facts in this case show that 1) HCSC denied Rutherford's claims because HCSC did not have an MRI showing nerve encroachment, 2) the MRI showing such results had been done and was available to HCSC via records request or communication with Dr. Sebastian, 3) HCSC deliberately chose not to ask Mayo whether the MRI had been done, 4) HCSC declares that it has no duty to ask for available information, 5) once Dr. Sebastian

---

[2] "A later payment fails to cure an insurer's prior failure to conduct a reasonable investigation, as required by § 33-18-201(4), MCA." *McVey v. USAA Cas. Ins. Co*., 2013 MT 346, P24, 372 Mont. 511, 515-516, 313 P.3d 191, 195, citing, Lorang, ¶ 149.

sent HCSC a letter saying the MRI was done and showed stenosis, that was all HCSC says it needed to pay the claim, and 6) HCSC then reversed the claim denial (after being sued) purportedly because it now had in hand the information that was equally available before it denied the claims.

While, in any given case, the reasonableness of the insurer's investigation may be a fact issue for the jury, the undisputed facts in this matter show that HCSC violated § 33-18-201(4) as a matter of law. The information that HCSC needed to pay the claim was available to HCSC and HCSC chose not to investigate by asking for it before denying the claim. Indeed, as discussed further below, HCSC contends it has no duty to ask.

For these reasons, Plaintiff respectfully submits that the Court should grant partial summary judgment in his favor that HCSC violated § 33-18-201(4) by failing to perform a reasonable investigation based on all available information before denying Rutherford's claims.

**2. HCSC's categorical policy of denying claims where records or information is missing, without requesting the particular records or information at issue, violates the Montana Unfair Claim Settlement Practices Act.**

HCSC has built its claim process on a categorical position about the limitations of its duty, which presents a legal question for the Court. *Abraham v. O'Brien*, 2020 MT 254N, 402 Mont. 425, 472 P.3d 1204, citing, Rhode v. Adams,

1998 MT 73, ¶ 9, 288 Mont. 278, 957 P.2d 1124 (The existence of a legal duty is a

question of law.) HCSC has declared in its answers to discovery requests in this case:

> BCBSMT was not responsible for collecting all relevant medical records.
> Rather, it was the Mayo Clinic that was required to submit all medical
> evidence in support of a request for coverage…. BCBSMT relies on the
> providers submitting the requests to provide all necessary medical evidence
> in support of that request…. BCSBMT had no obligation to request additional
> records.
> SUF ¶ 17

Thus, when HCSC decides to deny a claim on medical necessity grounds

because certain information is missing, HCSC categorically does not ask for the

missing information. Rather, as an established, intentional business practice, HCSC

denies the claim as not medically necessary and leaves it to the patient and provider

to figure out what information they must submit on appeal to get the denial reversed.

Moreover, HCSC has testified that even in the appeal process, it does not ask

for information or records that it needs to approve the claim. HCSC plays a guessing

game with the insured and the medical provider and waits to see how much they

push back. Only 25% of the denials are appealed. 30% of those appeals result in

reversal. Even fewer pursue a second appeal and most of them, according to claim

coordinator Hencley, get the denial reversed.

HCSC has made a deliberate decision not to seek available information that it

needs to make a claim decision but rather to shift that responsibility onto the insured

patient and/or the medical provider. This approach may help HCSC maximize its

profits[3], but it cannot be squared with Montana law that prohibits denial of claims without first performing a reasonable investigation based on all available information. Mont. Code Ann. § 33-18-201(4) ("A person may not … refuse to pay claims without conducting a reasonable investigation based upon all available information.")

Again, while in any given case there may be a fact issue for the jury about whether the investigation performed by HCSC was reasonable, Rutherford submits HCSC's categorical position, that it has no duty to ask for needed records or information before denying claims, runs contrary to § 33-18-201(4) as a matter of law. For that reason, Rutherford respectfully asks this Court to enter partial summary judgment in favor of the Class on this point, to wit: that HCSC's declared position, that it has no obligation to request additional records or medical evidence when the

---

[3] HCSC is technically a non-profit mutual, but Plaintiffs in earlier briefing cited the Chicago Business News article about the HCSC CEO's $28 million income. Doc. 20 at 1, n. 3. Although Plaintiffs have not yet seen a similar article (or 990) this year, healthcare management consultants are commenting recently online that the HCSC CEO pay in 2024, incredibly—all things considered-- skyrocketed even higher to $40 million. https://www.linkedin.com/posts/kimberlycarleson_healthcare-transparency-executivepay-activity-7354106811756548096-YxpP/; (Last year, Maurice Smith, CEO of Health Care Service Corporation, HCSC, the so-called "member-owned" Blue Cross plan covering Illinois, Texas, Oklahoma, New Mexico, and Montana, took home over $40 million in 2024.) See also, https://x.com/DutchRojas/status/1947646139907371224

absence of such records or evidence dictate a "not medically necessary denial,"

violates § 33-18-201(4), MCA.

## Conclusion

For the above stated reasons, Plaintiff John Rutherford respectfully urges this

Court to grant his Motion for Partial Summary Judgment.

Dated this 1st day of August, 2025.

By:    _____

John Morrison
Scott L. Peterson
*Attorneys for Plaintiffs*

16