**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION**

| | |
|---|---|
| JOHNNY C. RUTHERFORD, JR. and MARY RUTHERFORD, and JOHNNY RUTHERFORD on behalf of those similarly situated,<br><br>               Plaintiffs,<br><br>   v.<br><br>HEALTH CARE SERVICE CORPORATION, A Mutual Legal Reserve Company, doing business in Montana as Blue Cross and Blue Shield of Montana, and MONTANA UNIVERSITY SYSTEM,<br>             Defendants. | **Case No. CV-24-81-H-BMM**<br><br><br>**ORDER** |

## INTRODUCTION

Plaintiffs Johnny C. Rutherford, Jr., Mary Rutherford, and Johnny

Rutherford on behalf of those similarly situated, (collectively "Rutherford"), filed a

complaint in Montana state court alleging a series of claims against Health Care

Service Corporation doing business in Montana as Blue Cross Blue Shield of

Montana and the Montana University System (hereinafter "HCSC" and "MUS"

respectively). (Doc. 4.) HCSC removed the case to federal court on November 14,

2024. (Doc. 1.)

Rutherford filed a motion for partial summary judgement on August 1, 2025. (Doc. 106.) HCSC filed a motion to stay briefing on Rutherford's motion for partial summary judgement on August 13, 2025. (Doc. 116.) HCSC filed a motion for reconsideration of class certification on August 14, 2025. (Doc. 124.) HCSC filed a motion for reconsideration on August 15, 2025. (Doc. 127.) The Court held a hearing on the motions for reconsideration (Doc. 124 and Doc. 127) on September 4, 2025. (Doc. 151.) The Court held a hearing on the motion for partial summary judgment on November 21, 2025. (Doc. 173.)

## FACTUAL BACKGROUND

MUS employed Rutherford as the facilities director of Helena College, University of Montana. (Doc. 4 at 3.) MUS provides health insurance to Rutherford under the Montana University System Group Benefits Plan ("Plan"). (*Id*.) HCSC administers the Plan. (*Id*.) Rutherford experienced two herniated discs in his spine causing him severe pain. (*Id*. at 4.) Rutherford's pain affected his ability to work. (*Id*.) Rutherford underwent several pain management treatments and physical therapy sessions to alleviate the pain, but nothing fully mitigated his pain. (*Id*. at 5.)

Rutherford sought treatment at the Mayo Clinic ("Mayo") in Rochester, Minnesota. (*Id*.) Dr. Arjun Sebastian ("Dr. Sebastian") determined that Rutherford's nerve roots had been severely compromised, and that surgical repair

on the nerves presented the best option. (*Id*.) Rutherford sought to have MUS and HCSC pay for Rutherford's surgery. (*Id*.) Mayo sought pre-authorization from HCSC. (*Id*. at 6.) HCSC responded that the procedure did not require pre-authorization. (*Id*.)

Dr. Sebastian performed the surgery and completely alleviated Rutherford's pain. (*Id*.) HCSC requires the type of surgery performed on Rutherford to undergo a "medical necessity and experimental, investigations or unproven" review before approving the cost of the surgery. (*Id*. at 6.) HCSC obtained medical records regarding Rutherford's surgery from Mayo and conducted a review. (*Id*.) HCSC determined that Rutherford's surgery was not covered and denied coverage. (*Id*. at 6-7.) Dr. Sebastian filed an appeal on Rutherford's behalf and submitted reasons why he thought Rutherford's surgery had been necessary. (*Id*. at 10) HCSC withdrew its denial and approved Rutherford's claim and paid the claim in full. (*Id*. at 12-13.)

## PROCEDURAL BACKGROUND

Rutherford's claims against HCSC and MUS seek relief for himself, and others similarly situated. Rutherford alleges the following claims: 1) common law bad faith; 2) breach of fiduciary duty; 3) consumer protection act violations; 4) breach of contract; 5) breach of the implied covenant of good faith and fair dealing; 6) agent liability of HCSC; and 7) negligence. (Doc. 4.) Rutherford also

asks for the following relief and asserts class action causes of action as follows: 8) request for declaratory judgment; 9) request for injunction; 10) common law bad faith; 11) violation of the Montana Unfair Trade Practices Act; 12) negligence per se; 13) violation of the consumer protection act; and 14) unjust enrichment. (Doc. 4 at 25-43.) A flurry of motions followed.

MUS filed a motion to dismiss counts I, III, and V of the Second Amended Complaint. (Doc. 6.) HCSC filed a motion to dismiss the Second Amended Complaint. (Doc. 8.) HCSC filed a motion to strike the class allegations in the Second Amended Complaint. (Doc. 12.) Rutherford filed a motion to unseal the information filed under seal by HCSC. (Doc. 21.) Rutherford filed a motion for class certification and appointment of class counsel. (Doc. 29.) HCSC filed a motion to stay the motion to certify the class. (Doc. 41.) HCSC filed a motion to compel. (Doc. 63.)

The Court granted the motion to certify a class and denied the motion to stay. (Doc. 96.) HCSC filed a motion for reconsideration of the order to certify the class in Doc. 96. (Doc. 101.) The Court granted the motion to compel and granted, in part, and denied, in part, the motion for reconsideration. (Doc. 105.) Rutherford filed a motion for partial summary judgement. (Doc. 106.) HCSC filed a motion to stay briefing on plaintiff Johnny Rutherford's motion for partial summary

judgement. (Doc. 116.) HCSC filed a motion for reconsideration of class

certification. (Doc. 124.) HCSC filed a motion for reconsideration. (Doc. 127.)

The Court originally certified a Rule 23(b)(2) class on June 11, 2025. (Doc.

96). The Court vacated the Rule 23(b)(2) class on July 31, 2025, and reiterated that

the Rule 23(b)(2) class had been vacated in the August 6, 2025, order. (Doc. 106

and Doc. 111.) The Court stated that it would allow Rutherford to file a

supplemental motion to certify a Rule 23(b)(3) class in its order on July 31, 2025.

(Doc. 105 at 7, 8.) The Court has received no supplemental motion from

Rutherford to certify a Rule 23(b)(3) class.

## DISCUSSION

Rutherford moves for partial summary judgement on the issue that HCSC

violated Montana's Unfair Trade Practices Act ("UTPA"), Mont. Code Ann. §33-

18-201(4), by denying his claims without performing a reasonable investigation

based on all available information. (Doc. 156 Ex. 2 at 16; Doc. 106.) The parties

also seek reconsideration of the Court's orders on class certification. (Doc. 124,

Doc. 127, and Doc. 138.)

### I.    Plaintiffs' Motion for Summary Judgment

Summary judgment proves appropriate when "the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the

outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248.

A court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 323. A court must enter summary judgment if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### A. Montana UTPA §33-18-201(4)

The UTPA states that "[a] person may not, with such frequency as to indicate a general business practice, do any of the following: . . . (4) refuse to pay claims without conducting a reasonable investigation based upon all available information." Mont. Code Ann. § 33-18-201, (4). *Lorang v. Fortis Ins. Co.*, 192 P.3d 186, 204 (Mont. 2008), emphasized that "[t]he Legislature has utilized unmistakable terms which establish that all information available to the insurer must be considered."

Rutherford acknowledges that the question of whether a reasonable investigation has been conducted typically presents a question for the jury. (Doc. 156 Ex. 2 at 18.)  Rutherford argues, however, that the Court can grant summary

judgment in his favor on the issue because "HCSC has built its claim process on a categorical position about the limitations of its duty, which presents a legal question for the Court." (*Id.* citing *Abraham v. O'Brien*, 472 P.3d 1204 (Mont. 2020).) *Abraham* determined that "[t]he existence of a legal duty is a question of law." 472 P.3d (citing *Rhode v. Adams*, 957 P.2d 1124 (Mont. 1998)).

Rutherford argues that the duty to conduct a reasonable investigation "surely entails an obligation to make reasonable efforts to obtain all medical records relevant" to the claim. (Doc. 156 at 21, quoting *Hughes v. Blue Cross of N. Cal.*, 215 Cal. App. 3d 832, 846 (1989).) Rutherford also cites *James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 71 (5th Cir. 2014), to support this contention. (Doc. 156 at 21.) The Fifth Circuit in *James* concluded that "[a] proper investigation means obtaining all medical information relevant to a policyholder's claim. To do so, an insurer must make a reasonable effort to secure all medical records relevant to the claim." *James*, 743 F.3d at 71. HCSC suggests that *James* differs because the insurer failed to inform the plaintiff what medical records it needed which resulted in delay in investigation. (Doc. 160 at 32, citing *James*, 743 F.3d at 75-6.)

Rutherford cites *Peden v. State Farm Mut. Auto. Ins. Co.*, 841 F.3d 887, 891 (10th Cir. 2016), which determined that "[i]n conducting this investigation, the insurer must promptly and effectively communicate with anyone it was reasonably aware had information pertaining to the handling of a plaintiff's claim." (Doc. 156

at 22.) Rutherford similarly cites *McGranahan v. GEICO Indem. Co.*, No. 24-1037, 2025 WL 869306, at *2 (9th Cir. Mar. 20, 2025), which reasoned that the duty to investigate requires the insurer to "seek to discover" evidence that would be relevant to the claim. (Doc. 156 at 22.) HCSC argues that neither *Peden* nor *McGranahan* dealt with Montana law or arose in the health insurance context. (Doc. 160 at 32.) HCSC also contends that *McGranahan* concluded that "[b]y asking for corroborating medical records and bills or medical authorization forms ten times before the settlement offer deadline, [the insurer] conducted an adequate investigation and acted reasonably as a matter of law by seeking to obtain the necessary and missing information without delay." (*Id.* quoting *McGranahan*, 2025 WL 869306, at *2.)

HCSC claims that Montana law required it to consider only the records available to it at the time. (*Id.* at 23.) HCSC argues that courts have concluded that the information available to an insurer captures information that the insurer possessed at the time that it processed the claim. (*Id.* citing *Peterson v. Doctors' Co.*, 170 P.3d 459, 465 (Mont. 2007).) *Peterson* never explicitly stated such a holding but does reason that the plaintiff's claims tested "the propriety of the actions taken or not taken by the insurer in light of the information possessed by the insurer at the time it adjusted the underlying claim." *Peterson*, 170 P.3d at 465.

HCSC cites *Rudolph v. Standard Ins. Co.*, No. C11-1363-MJP, 2012 WL 6590918, at *4 (W.D. Wash. Dec. 18, 2012), to support its argument. (Doc. 160 at 24.) *Rudolph* concludes that it was proper to deny "summary judgment where it was 'unclear' that the insurer's 'failure to contact treating physicians . . . violated the full and fair investigation requirement.'" No. C11-1363-MJP, at *4. The plaintiff in *Rudolph* "cite[d] no authority indicating that an insurance company's reliance on medical records from treating physicians, evaluated by their own physicians, 'did not constitute full and fair investigation.'" *Id*.

HCSC also denies Rutherford's claims that it routinely fails to identify missing information to a patient when HCSC denies a patient's claim. (Doc. 160 at 25.) HCSC argues that it "specifically identifies the missing information in the body of the non-approval letter." (*Id*.) HCSC claims that Rutherford's contentions rely on inaccurate and incomplete information from former BCBSMT employee Yvonne Hencley. (*Id*.)

Rutherford provides factual evidence to dispute these claims, particularly as the record pertains to the denial of Rutherford's claim. (Doc. 166 at 4-6.) The parties also dispute at what point HCSC allegedly notified Rutherford's medical providers that it needed the MRI—before or after denial. (*Id*. at 9.) These factual disputes prove critical to the Court's analysis of Rutherford's UTPA claims. Whether and when HCSC notified Rutherford's providers that they needed to

provide an MRI involves a material fact. The uncertainty in the record and

disagreement between the parties demonstrate that a genuine dispute exists as to

material facts. The Court determines that summary judgment would be improper

on this issue given the dispute underlying the factual record. The Court denies

Rutherford's motion for partial summary judgment on his UTPA claim (Doc. 106).

### B. Class Summary Judgment Claims

HCSC argues that the Court also should deny Rutherford's request for

summary judgment on behalf of the Rule 23(b)(1) class. (Doc. 160 at 33.)  HCSC

provides no briefing on the class issues but asserts that it previously has explained

why this case would not be suitable for class treatment. (*Id*. at 33-34.) HCSC

argues that the evidence establishes that it has no categorical policy to deny claims

without a reasonable investigation and summary judgment on the class claims

should be denied. (*Id*. at 34-35.)

HCSC further argues that the Court should deny summary judgment based

on the "one-way intervention rule" as the question of a Rule 23(b)(3) class remains

open. (*Id*. at 35.) HCSC cites *Schwarzchild v. Tse*, 69 F.3d 293, 295 (9th Cir.

1995), to support its position that the rule prevents "the intervention of a plaintiff

in a class action after an adjudication favoring the class had taken place." (Doc.

160 at 35, quoting *Schwarzchild*, 69 F.3d at 295.) The Court has recognized that

"[o]ne way intervention occurs where a prospective class member waits to

intervene until after adjudication on the merits, thereby collecting damages if the class wins but not being bound by collateral estoppel if the class loses." *Anderson v. Boyne USA, Inc.*, No. CV-21-95-BU-BMM, 2024 WL 1486091, at \*2 (D. Mont. Apr. 5, 2024). The defendant in *Anderson* had moved for summary judgment so the Court declined to apply the one-way rule. *Id.*

Rutherford has filed the motion for summary judgment on the class issue. Rutherford argues that the one-way rule does not preclude summary judgment when the Court has certified a Rule 23(b)(1) class. (Doc. 166 at 14.) Rutherford contends that "[t]he certified class will ultimately be bound by the court's determinations regarding the unfair investigation process with or without a (b)(3) claim." (*Id.*) The Court disagrees.

Summary judgment on behalf of the Rule 23(b)(1) class would be inappropriate given the Court's denial of Rutherford's individual summary judgment motion on the UTPA claim. The Court will deny summary judgment to Rutherford on his individual claim and on behalf of the Rule 23(b)(1) class.

## II.    Reconsideration of the Class Certification Claims

The Court originally certified a Rule 23(b)(2) class on June 11, 2025. (Doc. 96). The Court vacated the Rule 23(b)(2) class on July 31, 2025, and reiterated that it had been vacated in the August 6, 2025, order. (Doc. 106 and Doc. 111.) The Court stated that it would allow Rutherford to file a supplemental motion to certify

a Rule 23(b)(3) class in its order on July 31, 2025. (Doc. 105 at 7, 8.) The Court

has received no supplemental motion to certify a Rule 23(b)(3) class from

Rutherford. The Court certified a Rule 23(b)(1) class on June 11, 2025. (Doc. 96.)

The 23(b)(1) class included all "policyholders and plan members covered

under non-ERISA health plans in Montana that are administered by HCSC." (Doc.

111 at 3.) The class focused on those members "who have had claims denied by

HCSC within the applicable statute of limitations period, pursuant to the Not

Medically Necessary Standard Operating Procedure on grounds that the medical

procedure being billed was 'not medically necessary.'" (Doc. 111 at 3.) The Court

defined a subclass of policyholders "whose claims were denied by HCSC as a

third-party administrator." (*Id.*) The Rule 23(b)(1) class remains the only certified

class. The Court repeatedly has "reserve[d] the right to amend or modify its class

certification determination." (Doc. 105 at 9; Doc. 111 at 3.)

A court may amend and reconsider a class certification order before final

judgment under Fed. R. Civ. P. 23(c)(1)(C) and 54(b). *See Am. Rivers v. NOAA

Fisheries*, 2006 WL 1983178, at *2 (D. Or. July 14, 2006). The Ninth Circuit has

concluded that when "faced with motions to reconsider orders denying class

certification, [courts] routinely appl[y] the ordinary standards for reconsideration."

*English v. Apple Inc.*, No. 14-cv-01619, 2016 WL 1108929, at *5 (N.D. Cal. Mar.

22, 2016) (collecting cases) [citations omitted]. Reconsideration represents an

"extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Am. Rivers,* 2006 WL 1983178, at *5, (quoting *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F. 3d 877, 890 (9th Cir. 2000)).

A court should grant a motion for reconsideration only if there is newly discovered evidence, the court committed clear error, or there is new controlling law. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009). Specifically, a court may grant a motion to reconsider under Fed. R. Civ. P. 54(b) under the following circumstances: "(1) there are material differences in fact or law from that presented to the court and, at the time of the court's decision, the party moving for reconsideration could not have known the factual or legal differences through reasonable diligence; (2) there are new material facts that happened after the [c]ourt's decision; (3) there has been a change in the law that was decided or enacted after the court's decision; or (4) the movant makes a convincing showing that the court failed to consider material facts that were presented to the court before the court's decision." *Am. Rivers*, 2006 WL 1983178, at *6-7. Motions for reconsideration are generally disfavored and cannot be used by the movant "to present new arguments or evidence that could have been raised earlier." *Id*. at *8. The Court will address in turn the status of each Rule 23(b) class.

**A. Rule 23(b)(1) Class**

The Court will address HCSC's arguments that it should reconsider certification of a Rule 23(b)(1) class. HCSC argues that the Court should reconsider its certification of a Rule 23(b)(1) class as the Court failed to provide HCSC an opportunity to be heard on the propriety of certifying either a Rule 23(b)(1)(A) class or Rule 23(b)(1)(B) class. (Doc. 125 at 3.) HCSC asserts that Rutherford never sought to certify a Rule 23(b)(1) class and neither party briefed certification of a Rule 23(b)(1) class. (*Id*.) HCSC asserts that Rutherford failed to establish that certification of a Rule 23(b)(1) class would be maintainable under Rule 23(b)(1) as is required by controlling precedent. (*Id*.) HCSC further contends that the Court failed to perform the required "rigorous analysis" as to whether class certification would be maintainable under Rule 23(b)(1). (*Id*.) Rutherford filed no response to HCSC's motion for reconsideration of the Rule 23(b)(1) class.

The Court agrees with HCSC. Rutherford's original briefing on his motion for class certification did not seek a Rule 23(b)(1) class. (*See* Doc. 31, Doc. 52.) The Court certified the Rule 23(b)(1) class in its June 11, 2025, order without providing analysis. (Doc. 96.) The Court's order reiterating that the Rule 23(b)(1) class remained certified similarly did not include analysis on certification of the Rule 23(b)(1) class. The Court concludes that certification of the Rule 23(b)(1) class constituted clear error such that reconsideration and vacatur proves proper. *See Marlyn Nutraceuticals, Inc.*, 571 F.3d at 880. The Court will vacate the Rule

14

23(b)(1) class. The Court will allow Rutherford to file a supplemental motion to certify a Rule 23(b)(1)(A) class or Rule 23(b)(1)(B) class, as appropriate.

### B. Rule 23(b)(2) Class

HCSC filed a second motion for reconsideration on August 15, 2025. (Doc. 127.) The second motion asks the Court to reconsider its certification of a Rule 23(b)(2) class. (*Id.*) The Court originally certified a Rule 23(b)(2) class in its June 11, 2025, order (Doc. 96), but vacated the Rule 23(b)(2) class on July 31, 2025. (Doc. 106; *see also* Doc. 111.) HCSC acknowledges that the July 31, 2025, order and August 6, 2025, order effectively mooted the relief that HCSC sought in this second order for reconsideration. (Doc. 128 at 6, n.1.) HCSC states that it opted to brief the propriety of a Rule 23(b)(2) class based on its interpretation of the Court's August 6, 2025, order permitting such briefing (Doc. 111). (Doc. 128 at 6, n.1.) Rutherford argues that the Court should re-certify a Rule 23(b)(2) class. (Doc. 138 at 6.) The Court will address the parties' arguments concerning a Rule 23(b)(2) class at this time.

As previously stated in the Court's order, "Rule 23(b)(2) applies when the opposing party either has acted or refused to act on grounds that apply to the entire class such that injunctive relief or declaratory relief is appropriate for the whole class. Fed. R. Civ. P. 23(b)(2)." (Doc. 96 at 11-12; Doc. 105 at 6.) The Court quoted *Walmart v. Dukes*: "Rule 23(b)(2) applies only when a single injunction or

declaratory judgment would provide relief to each member of the class. It does not

authorize class certification when each individual class member would be entitled

to a different injunction or declaratory judgment against the defendant." (Doc. 96

at 12, quoting *Walmart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011); Doc.

111 at 6.)

The Court previously had found that Rutherford met the requirements under

Rule 23(b)(2) and determined that "each class member would be provided a

different level of review, potentially changing the outcome of their claim status."

(Doc. 96 at 12; Doc. 111 at 7.) The Court further had found that "[e]ach member's

claim also could potentially be adjusted monetarily after HCSC reviews the claim

under the new method." (Doc. 96 at 12; Doc. 111 at 7.) The Court determined that

such findings had been made in error. (Doc. 111 at 7.) The Court concluded that

"Rule 23(b)(2) classes do not provide individualized relief of the type that

potentially would be available to the class as defined by Rutherford." (*Id.*) The

Court cited *Dukes* for the assertion that the key to a Rule 23(b)(2) class is "the

indivisible nature of the injunctive relief or declaratory remedy warranted . . . [as

the relief can apply] to all of the class members or as to none of them." (Doc. 111

at 7, quoting *Dukes*, 564 U.S. at 360 (internal citation omitted)).

Rutherford asks the Court to recertify the Rule 23(b)(2) class as numerous

courts have continued to recognize that reprocessing represents a viable Rule

23(b)(2) class remedy. (Doc. 138 at 6.) Rutherford further asserts that this case differs from *Dukes* as the Court previously has determined that commonality exists here. (*Id*. at 12.) The U.S. Supreme Court determined that commonality did not exist in *Dukes* where each of the local managers exercised discretion and instituted their own individual policy concerning pay and promotions. 564 U.S. at 359-360. *Dukes* did not rely upon the absence of commonality for its conclusion that certification of a Rule 23(b)(2) class would be improper. *Id*. at 359-367. Certainly Rule 23(a) and Rule 23(b) share common questions and lines of analysis but it would be inappropriate to entirely conflate the two rules. The Court agrees that *Dukes* is not on all fours with this case, yet the U.S. Supreme Court's opinion provides guidance for the Court.

Rutherford relies upon several other cases to support his argument that reprocessing remains a viable remedy under Rule 23(b)(2). (Doc. 138 at 17, 19, and 20, citing *Cumalander v. BlueCross BlueShield of Tennessee, Inc.*, No. 1:24-CV-176, 2024 WL 5126272, at *17-18 (E.D. Tenn. Dec. 16, 2024); *Collins v. Anthem, Inc.*, No. 20-CV-01969 (SIL), 2024 WL 1172697, at *47 (E.D.N.Y. Mar. 19, 2024); *Kazda v. Aetna Life Ins. Co.*, No. 19-CV-02512-WHO, 2022 WL 1225032, at *27 (N.D. Cal. Apr. 26, 2022); *Ballas v. Anthem Blue Cross Life & Health Ins. Co.*, No. CV1200604MMMFFMX, 2013 WL 12119569, at *38 (C.D. Cal. Apr. 29, 2013); *C. P. v. Blue Cross Blue Shield of Ill.*, 705 F. Supp. 3d 1273,

1288 (W.D. Wash. 2023); and *Wit v. United Behavioral Health*, 79 F.4th 1068,
1084 (9th Cir. 2023) (*Wit II*).) The Court finds these authorities largely unhelpful
as the question here is not whether reprocessing could represent a proper remedy
under Rule 23(b)(2). The question presented instead asks whether reprocessing
would be a proper remedy for this proposed class.

Wit *II* makes it clear that the standard does not require a showing of actual
injury. It remains necessary to demonstrate, however, that "application of the
wrong standard could have prejudiced the claimant." *Wit II*, 79 F.4th at 1084. The
plaintiffs in *Wit II* were all beneficiaries of Employee Retirement Income Security
Act ("ERISA") governed health benefit plans for which the defendant served as the
claims administrator. *Id.* at 1076. The plaintiffs claimed that the defendant
"improperly developed and relied on internal guidelines that were inconsistent with
the terms of the class members' plans and with state-mandated criteria." *Id.* at
1077. The plaintiffs had many different plans that contained varied conditions, but
each plan allegedly required compliance with generally accepted standards of care
("GASC") or "were governed by state laws specifying certain criteria for making
coverage or medical necessity determinations." *Id.* The plaintiffs argued that class
certification was proper because each class member's claim had been denied, at
least in part, based the defendant's application of their error-riddled internal
guidelines. *Id.* at 1085.

The Ninth Circuit acknowledged that many of the defendant's internal guidelines were more restrictive than GASC. *Id*. at 1085. The Ninth Circuit recognized, however, that the plaintiffs did not challenge many provisions of the defendant's internal guidelines, and the district court did not find many provisions of the defendant's guidelines to be overly restrictive. *Id*. The putative class would have included members whose claims had been denied allegedly based on reference to the defendant's internal guidelines, but not solely upon application of provisions of the guidelines that had been found to be overly restrictive. *Id*. The Ninth Circuit concluded that the putative class would include members whose claims had been denied based on provisions of the guidelines that the plaintiffs had not challenged. *Id*. In other words, each class member had been subjected to application of the same policy or procedure—the defendant's internal guidelines— but their claims had been denied for various reasons within that overarching process.

The Ninth Circuit determined that the plaintiffs had failed to demonstrate that "all class members were denied a full and fair review of their claims or that such a common showing is possible." *Id*. at 1086. The Ninth Circuit concluded that "[b]ecause the classes were not limited to those claimants whose claims were denied based only on the challenged provisions of the [defendant's internal g]uidelines, Rule 23 was applied in a way that enlarged or modified [the

plaintiffs'] substantive rights in violation of the Rules Enabling Act. *Id*. (citing *Dukes*, 564 U.S. at 357). Rutherford's proposed class suffers the same problems.

Rutherford's proposed class includes all policyholders and plan members who have had claims denied by HCSC as "not medically necessary." (Doc. 31.) Rutherford argues that HCSC reviewed the claims from each of these potential claimants using the same standard operating procedure, and, therefore, these potential claimants have suffered a common injury. Similar to the plaintiffs in *Wit II*, not all of these potential class HCSC members had claims denied by HCSC based on an allegedly wrongful standard operating procedure. Not all of Rutherford's potential class members had claims denied as not medically necessary due to HCSC's policy of not requesting additional documentation.

HCSC certainly denied some of those potential class members for reasons other than missing documentation. "For such class members, remand for reevaluation[, or reprocessing,] may be a 'useless formality.'" *Wit II*, 79 F.4th at 1086 (quoting *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1096 (9th Cir. 1985)). Reprocessing for certain members of the class necessarily "would be futile." *Wit II*, 79 F.4th at 1085 (citing *Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 659–60 (6th Cir. 2013)). Certification of a Rule 23(b)(2) class in such circumstances would be improper and would enlarge or modify Plaintiffs' substantive rights in violation of the Rules Enabling Act. *See Wit II*, 79 F.4th at 1086. The parties' other arguments

do not alter the Court's analysis. The Court concludes that it remains proper to vacate the Rule 23(b)(2) class.

The Court reserves the right to amend or modify its class certification determination. The Court recognizes that discovery has not completed and the deadline for filing of dispositive motions has not passed. The Court declines to re-certify a Rule 23(b)(2) class at this time.

### C. Rule 23(b)(3) Class

The Court allowed Rutherford to file a supplemental motion to certify a Rule 23(b)(3) class in its order on July 31, 2025. (Doc. 105 at 7, 8.) The Court determined that HCSC seemed to concede that a Rule 23(b)(3) class would be more appropriate given the nature of Rutherford's claims. (*Id.* citing Doc. 102 at 5 (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 987 (9th Cir. 2011)).) The Court declined to certify a Rule 23(b)(3) class in its June 11, 2025, order due to the lack of sufficient information before the Court. (Doc. 96 at 14; *see also* Doc. 105 at 7.) The Court has received from Rutherford no supplemental motion to certify a Rule 23(b)(3) class. The Court reiterates that Rutherford remains able to file a supplemental motion to certify a Rule 23(b)(3) class.

### CONCLUSION

The Court determines that summary judgment proves improper given the dispute underlying the factual record. The uncertainty in the record and

disagreement between the parties proves that a genuine dispute exists as to material facts. The Court denies summary judgment to Rutherford on his individual claim and on behalf of the class. The Court determines that it committed an error in certifying a Rule 23(b)(1) class. The Court vacates the Rule 23(b)(1) class. The Court concludes that it proves proper for the Rule 23(b)(2) class to remain vacated. The Court declines to re-certify the Rule 23(b)(2) class. The Court continues to allow Rutherford to file a supplemental motion to certify a Rule 23(b)(3) class. The Court also will permit Rutherford to file supplemental briefing on certification of a Rule 23(b)(1) class.

## ORDER

Accordingly, **IT IS ORDERED**:

1.  Rutherford's Motion for Partial Summary Judgment (Doc. 106) is **DENIED** without prejudice.

2.  HCSC's Motion to Stay Briefing on Plaintiff Johnny Rutherford's Motion for Partial Summary Judgment is **DENIED** as moot.

3.  HCSC's Motion for Reconsideration of Class Certification (Doc. 124) is **GRANTED**.

4.  The Court's previous ruling in Doc. 96, establishing a Rule 23(b)(1) class will be vacated.

5. The Court's previous ruling in Doc. 96, establishing a Rule 23(b)(2) class remains vacated.

6. HCSC's Motion for Reconsideration (Doc. 127) is **DENIED** as moot.

7. Rutherford may file a supplemental motion for class certification addressing either, or both, a Rule 23(b)(1) class or a Rule 23(b)(3) class.

8. The Court reserves the right to amend or modify its class certification determination.

**DATED** this 19th day of December, 2025.


_____
Brian Morris, Chief District Judge
United States District Court