IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JOHNNY C. RUTHERFORD, JR. and MARY RUTHERFORD, and JOHNNY RUTHERFORD on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HEALTH CARE SERVICE CORPORATION, A Mutual Legal Reserve Company, doing business in Montana as Blue Cross and Blue Shield of Montana, and MONTANA UNIVERSITY SYSTEM,<br>Defendants. | **Case No. CV-24-81-H-BMM**<br><br>O<small>RDER</small> |

## INTRODUCTION

Plaintiffs Johnny C. Rutherford, Jr., Mary Rutherford, and Johnny Rutherford on behalf of those similarly situated, (collectively "Rutherford"), filed a complaint alleging a series of claims against Health Care Service Corporation doing business in Montana as Blue Cross Blue Shield of Montana and the Montana University System (hereinafter "HCSC" and "MUS" respectively). (Doc. 4.) HCSC filed a motion for protective order under Rule 26(c) to prevent Rutherford

1

from deposing HCSC's Chief Executive Officer ("CEO"), Maurice Smith ("Smith"). (Doc. 163.)

## BACKGROUND

The Court is familiar with the facts of the case. Rutherford underwent a back surgery to address severe back pain. (Doc. 4 at 4-6.) Rutherford's surgery did not require pre-authorization with his insurer, HCSC. (*Id*. at 6.) HCSC determined that Rutherford's surgery was not covered due to failure to demonstrate "medical necessity" and denied coverage. (*Id*. at 6-7.) Rutherford's surgeon filed an appeal on Rutherford's behalf and submitted reasons why he thought Rutherford's surgery had been necessary. (*Id*. at 10). Rutherford's surgeon also shared an MRI of Rutherford's condition before surgery which was required documentation for the claim and mistakenly had not been shared with HCSC. (*Id*.) HCSC withdrew its denial and approved Rutherford's claim and paid the claim in full. (*Id*. at 12-13.)

Rutherford alleges in his class action complaint that HCSC has a policy of denying claims as not "medically necessary" before asking for further documentation. Rutherford alleges that this practice violates the UTPA.

## LEGAL STANDARD

Rule 26(c)(1) of the Federal Rules of Civil Procedure authorizes "[a] party or any person from whom discovery is sought" to "move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1). "Rule 26(c)

2

confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

A court, upon finding good cause, may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* A protective order may "forbid[] the disclosure or discovery" or "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A), (D). The party seeking the protective order bears the burden of proving good cause. *Father M. v. Various Tort Claimants*, 661 F.3d 417, 424 (9th Cir. 2011).

## DISCUSSION

Rutherford emailed HCSC on September 28, 2025, to request a deposition of Smith. (Doc. 164 Ex. B at 9.) HCSC objected to the deposition of Smith, and asked Rutherford what topics he would like to discuss with Smith in order to determine if another person at HCSC would be likely to have that information. (*Id*. at 4, 8.) Rutherford first responded that he was requesting to depose Smith personally and that, "[r]egardless of the topics, under the circumstances of this case, [he thought] it's important for the jury to hear from the head of the company." (*Id*. at 4.) HCSC responded that it did not believe that Smith had unique knowledge of the facts of

3

the case and that such reasoning was insufficient justification to depose Smith. (*Id.* at 3.)

Rutherford provided a list of six questions that he believed related to unique knowledge held by Smith. (*Id.* at 2.) These six factors include the following:

1. "Why [Smith] agrees to be one of the highest paid CEOs in the health insurance industry while HCSC has one of the highest denial rates in the industry.

2. Whether [Smith] personally knows that HCSC denies claims based on the absence of information or records without asking for those records.

3. Whether [Smith] personally knows that HCSC takes the position that it has no obligation to request information or records before denying claims; if so, whether he has approved that.

4. Whether [Smith] personally knows that people denying claims at HCSC are unaware of the duty to perform a reasonable investigation before denying claims.

5. Whether [Smith] has discussed any of these issues with the board of directors of the company.

6. Whether [Smith] has personally been involved in decisions relating to any of these issues and, if so, who else was involved in those decisions."

(*Id.*) Rutherford stated in the same email that "[a]ll of these issues are related to the systemic and programmatic nature of the conduct alleged in this case and to

4

[HCSC's] conscious disregard of the high probability of injury to [HCSC's] policyholders and plan members. If [Smith] has personal knowledge of the matters listed above, that is relevant. If [Smith] does not have personal knowledge of these facts, that is also relevant." (*Id*.)

HCSC filed a motion for protective order on November 12, 2025, to prevent Rutherford from deposing Smith. (Doc. 164.) HCSC attached a declaration from Smith. (*Id*. Ex. A.) Smith declares that he has "no personal knowledge or involvement in the decision-making process for individual benefit claims or the policies governing claim denials on medical necessity or other grounds[,]" that "[he does] not recall ever discussing HCSC's or BCBSMT's processes for adjudication benefit claims with HCSC's Board of Directors," and that "[his] compensation is set by the Board of Directors based on a range of financial and operational performance metrics . . . [and] [i]t has no connection to benefit claim approval or denial rates, nor [does he] receive any incentives or bonuses based on those metrics. (*Id*. Ex. A at 4-6.)

The Court will address the requested protective order with reference to Rutherford's most recent deposition topics and limitations, rather than the set of six questions listed above. Rutherford proposed in its response to HCSC's motion for protective order to limit his deposition of Smith to one hour at corporate headquarters and only discuss the following three topics: "[(1)] Smith's salary and

5

any benchmarks that increase or decrease his salary; [(2)] [Smith's] knowledge about high denial rates, his knowledge about any policy that caused these rates to skyrocket between 2022 and 2023; [and (3)] [Smith's] understanding and awareness of HCSC's practice of denying claims as not medically necessary without making efforts to obtain information or records needed to approve the claims." (Doc. 172 at 15.) Rutherford argues that a CEO's salary relates to the financial condition of the company and directly informs what level of punitive sanction would be meaningful to deter future misconduct. (*Id*. at 7-9.) Rutherford also argues that significant increases in HCSC's denial rates, particularly in Montana, relates to the case and that it would be highly unlikely that Mr. Smith had no knowledge of this change in policy. (*Id*. at 10-11.)

  HCSC argues that Rutherford has failed to show that Smith possesses unique, personal knowledge of facts relevant to the issues in this case, or that Rutherford cannot obtain the information he seeks through less intrusive discovery. (Doc. 164 at 7.) HCSC argues that "[t]he 'apex doctrine' is designed to prevent this type of harassment of high-level executives to gain leverage or publicity rather than to obtain relevant evidence." (*Id*.) The Court agrees.

  Rutherford correctly notes that "[w]hile district courts have applied the apex deposition doctrine to high level executives, the Ninth Circuit has not yet endorsed the doctrine." *In re Bank of Am. California Unemployment Benefits Litig.*, No.

21MD2992-GPC(MSB), 2025 WL 1557598, at *3 (S.D. Cal. June 2, 2025), *reconsideration denied*, No. 21MD2992-GPC(MSB), 2025 WL 2617075 (S.D. Cal. Sept. 10, 2025). The Ninth Circuit has "analyzed the deposition of high-level executives under a Rule 26(c) motion for protective order," however, and these cases can be used for guidance. *Id*. (citations omitted). The Ninth Circuit also has affirmed a district court decision that relied, in part, on the apex doctrine, in granting a protective order. *Andrich v. Glynn*, No. 24-3078, 2025 WL 1625536, at *1-2 (9th Cir. June 9, 2025).

Rutherford cites no case law that suggests that the Ninth Circuit has expressly rejected the apex doctrine. Courts in the District of Montana have applied and recognized the apex doctrine. *See Brewer v. BNSF Ry. Co.*, No. CV 14-65-GF-BMM, 2015 WL 13810744, at *1 (D. Mont. Nov. 5, 2015); *Voelker v. BNSF Ry. Co.*, No. CV 18-172-M-DLC, 2019 WL 6910167, at *1 (D. Mont. Dec. 19, 2019); *Est. of Petersen by & through Petersen v. Koelsch Senior Communities, LLC*, No. CV 22-11-BLG-SPW-TJC, 2024 WL 3964989, at *3 (D. Mont. Aug. 28, 2024); *Alario v. Knudsen*, No. CV 23-56-M-DWM, 2024 WL 1554133, at *4 (D. Mont. Apr. 10, 2024). The Court will apply Rule 26(c) and the apex doctrine.

HCSC, the party seeking to prevent a deposition in this case, must show good cause as to why discovery should be denied. *Apple Inc. v. Samsung Electronics Co. Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). The Court previously

characterized this good cause standard as presenting a heavy burden on the movant. *Brewer*, 2015 WL 13810744, at *1. The Court now clarifies that the heavy burden on the movant involves the good cause showing required under Rule 26(c). *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). Good cause may be proven by "demonstrating harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004).

HCSC argues that harm or prejudice will result from a deposition of Smith as the topics about which Rutherford seeks to depose Smith are not relevant. (Doc. 175 at 11, n.3.) HCSC claims that this lack of relevance violates Rule 26. (*Id*.) HCSC contends that Smith has no unique personal knowledge of the relevant facts, and alternative means exist for Rutherford to obtain the information. (*Id*.) HCSC argues that Smith's lack of personal knowledge, and the availability of the information from other sources violates the apex doctrine. (*Id*.) HCSC also contends that even a short deposition would distract Smith from his day-to-day duties and the responsibilities of running a company. (*Id*. at 18.)

Courts have observed a high risk of potential abuse or harassment when a party seeks an apex deposition. *Apple*, 282 F.R.D. at 263. Courts consider (1) whether the deponent has unique, first-hand, non-repetitive knowledge of the facts at issue in the case, and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods. *Id.*

8

Rutherford provides no evidence that Smith possesses unique, first-hand, non-repetitive knowledge of the facts at issue in the case. Smith declares that he does not have "personal knowledge or involvement in the decision-making process for individual benefit claims or the policies governing claim denials on medical necessity or other grounds." (Doc. 164 Ex. A at 4.) Rutherford argues that "[a] claimed lack of knowledge, by itself, is insufficient to preclude a deposition." (Doc. 172 at 7, quoting *Brewer*, 2015 WL 13810744, at *1.) Rutherford further asserts that he does not need to "prove conclusively in advance that the deponent definitely has unique, non-repetitive information[.]" (Doc. 172 at 7, quoting *Brewer*, 2015 WL 13810744, at *1.)

Rutherford correctly argues that an assertion of lack of knowledge, by itself, and with no indications of truthfulness or accuracy, would not be sufficient. Rutherford also fails to recognize, however, the clear factual distinctions between *Brewer* and the case at hand. The plaintiff in *Brewer* was attempting to depose a corporate executive at BNSF who was present at the relevant meeting and heard the plaintiff's comments which were directed at the corporate executive. *Id*. The plaintiff contended that the corporate executive's knowledge of those comments, which the corporate executive heard at the meeting, may have caused the corporate executive to react in response and contributed to BNSF's later decision to terminate the plaintiff's employment. *Id*. The court concluded that the corporate

9

executive may have unique, non-repetitive knowledge of his own reaction, despite his assertion that he does not recall the comments. *Id*. The court reasoned that it is common for counsel to refresh a witness's recollection during questioning at a deposition. *Id*. In other words, the situation in *Brewer* differed from the case here and clear factual indicators existed that the corporate executive in *Brewer* held personal knowledge of the issue in the case.

    *Est. of Petersen by & through Petersen v. Koelsch Senior Communities, LLC*, No. CV 22-11-BLG-SPW-TJC, 2024 WL 3964989, at *4 (D. Mont. Aug. 28, 2024), similarly included factual evidence that the defendant trying to avoid a deposition likely had personal knowledge. The plaintiff in *Peterson* was attempting to depose the CEO of a "modestly-sized," 40-person company, who the defendants already had conceded possessed personal knowledge of facts relative to the case. *Id*. The CEO in *Petersen* had been present in the incident at issue in the case, already had spoken publicly about the incident, and previously had acknowledged he was involved in the response to the incident despite his later assertions that he lacked first-hand knowledge. *Id*. The court concluded that "[t]his [was] not a situation where a party is attempting to take the deposition of a high-level executive or official who is far removed from any personal involvement in the controversy." *Id*. The facts of this case are not analogous.

Rutherford presents no factual evidence to indicate that Smith possesses unique, personal knowledge of Rutherford's case, or of the issues raised by Rutherford generally. The fact alone that Smith *may* have first-hand knowledge of relevant facts does not appear to be sufficient based on the case law to justify a deposition without any indication that Smith probably had knowledge of the issues. *See Anderson v. Air W., Inc.*, 542 F.2d 1090 (9th Cir. 1976) (denying motion for protective order when corporate defendant "probably had some knowledge" of corporate acquisition which was the subject of litigation). *Anderson* and related cases provide some guidance to the Court.

For example, the court in *Hunt v. Cont'l Cas. Co.*, No. 13-CV-05966-HSG, 2015 WL 1518067, at *2 (N.D. Cal. Apr. 3, 2015) denied a motion for protective order when plaintiffs had "substantial basis for concluding that [the corporate defendant] may have unique first-hand knowledge[,] when the plaintiff's complaint included "direct allegations regarding actions taken by and statements made by [the corporate defendant])." Similarly, the court in *Powertech Tech., Inc. v. Tessera, Inc.*, No. C 11–6121 CW, 2013 WL 3884254, at *2 (N.D. Cal. July 26, 2013), denied a motion for protective order where the corporate defendant "indisputably considered and voted on matters relevant to this case." *In re Google Litig.*, No. C 08-03172 RMW PSG, 2011 WL 4985279, at *1 (N.D. Cal. Oct. 19, 2011), considered a motion for protective order to prevent depositions of two individual

corporate executives in a patent infringement case. The court denied the protective order for the first corporate executive as he had been intimately involved in several relevant patents. *Id*. The court granted the protective order, however, for the second corporate executive who also was a named co-inventor on the relevant patent but who the court was not convinced had "unique knowledge of facts that cannot be secured by other less intrusive means of discovery." *Id*. The cases discussed above from the District of Montana reveal a similar pattern. *See Brewer*, 2015 WL 13810744, at *1 (discussed above); *Peterson*, 2024 WL 3964989, at *4 (discussed above).

    The Court recognizes that Smith's salary and his benchmarks may prove relevant to the question of punitive damages. The Court remains skeptical of whether Rutherford has presented any indications that Smith has unique, non-repetitive personal knowledge of the issues in this case. The Court does not need to decide these questions, however, because it is clear that Rutherford has failed to meet the second prong of the apex doctrine—whether the party seeking the deposition has exhausted other less intrusive discovery methods. The Court does not see why Rutherford needs to depose Smith in order to obtain the information he is allegedly seeking regarding Smith's salary or his other deposition topics. Rutherford does not argue that deposing Smith presents the only way to obtain information concerning Smith's salary and benchmarks. Rutherford provides no

12

evidence to the Court detailing any other efforts he has made in the discovery process to obtain this information. Rutherford should attempt first to procure such information through less burdensome discovery methods.

The Court is additionally skeptical of whether Rutherford's second and third deposition topics, about Smith's knowledge and understanding of various alleged policies and practices of HCSC, meet the relevance and proportionality prongs of Rule 26. *Andrich*, 2025 WL 1625536, at *1 (quoting Fed. R. Civ. P. 26(b)(1)). Relevant information is "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). A court evaluates proportionality in light of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

It appears that in seeking to depose Smith, Rutherford is not after relevant and important information related to HCSC's actions in denying claims from his putative class members. Rutherford seems more interested in "annoy[ing], embarrass[ing], oppress[ing], or [inflicting] undue burden or expense[]" on Smith. *Seattle Times*, 467 U.S. at 36. The original deposition topics that Rutherford

13

proposed indicate to the Court some insincerity in Rutherford's intent. This type of discovery tactic proves to be precisely the type that courts imagined when they noted the high risk of potential abuse or harassment when a party seeks an apex deposition. *Apple*, 282 F.R.D. at 263. The Court may reconsider Rutherford's efforts to depose Smith if Rutherford can present some indication or factual evidence that Smith probably has unique, first-hand, non-repetitive knowledge of relevant issues in this case. The Court does not see at this time how deposing Smith would not violate the apex doctrine or any relevant and proportional value such a deposition would offer to this case. The Court will grant Rutherford's motion for protective order.

## ORDER

Accordingly, **IT IS ORDERED**:

1. HCSC's Motion for Protective Order (Doc. 163) is **GRANTED.**

**DATED** this 13th day of January, 2026.

_____
Brian Morris, Chief District Judge
United States District Court