Daniel J. Auerbach
Christy S. McCann
**BROWNING, KALECZYC, BERRY & HOVEN, P.C.**
201 West Railroad Street, Suite 300
Missoula, MT 59802
(406) 728-1694
daniel@bkbh.com
christy@bkbh.com

Martin J. Bishop
**CROWELL & MORING LLP**
300 N. LaSalle Drive
Suite 2500
Chicago, IL 60654
(312) 321-4200
Mbishop@crowell.com

Tracy A. Roman
Elizabeth Parr Hecker
**CROWELL & MORING LLP**
600 Fifth Street NW
Washington, DC 20001
(202) 624-2500
Troman@crowell.com
Ehecker@crowell.com

*Attorneys for Health Care Service Corporation
d/b/a Blue Cross and Blue Shield of Montana*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION**

| | |
|---|---|
| JOHNNY C. RUTHERFORD, JR. and MARY RUTHERFORD, and JOHNNY RUTHERFORD ON BEHALF OF THOSE SIMILARLY SITUATED, <br><br> Plaintiffs, | No. 6:24-cv-00081 |

v.

HEALTH CARE SERVICE
CORPORATION, a Mutual Legal
Reserve Company, doing business in
Montana as Blue Cross and Blue
Shield of Montana, and the
MONTANA UNIVERSITY SYSTEM,
*et al.*,

           Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF BLUE CROSS AND BLUE SHIELD OF MONTANA'S MOTION *IN LIMINE*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND.............................................................................. 2

LEGAL STANDARD.......................................................................................... 5

MOTIONS *IN LIMINE* ...................................................................................... 6

**I.**    Motion to exclude the report of the Kaiser Family Foundation
        and its underlying data.......................................................................... 6

    **A.**    The KFF Report is based on an incomplete data set.......................... 7

    **B.**    The KFF Report and its underlying data are limited to
            ACA Federally Facilitated Marketplace data and are
            therefore irrelevant to the issues in this case................................. 10

    **C.**    Permitting Rutherford to present evidence and argument
            regarding the KFF Report and its underlying data would
            unfairly prejudice BCBSMT. ........................................................ 12

    **D.**    BCBSMT has produced accurate data regarding claim
            denials for medical necessity, eliminating any need for
            Rutherford to use the KFF Report and its underlying
            data. ............................................................................................... 14

**II.**   Motion to exclude evidence of BCBSMT's and HCSC's
        respective financial conditions during the liability phase of trial. ............. 15

**III.**  Motion to exclude evidence relating to compensation paid to
        HCSC CEO Maurice Smith in both the liability and punitive
        damages phases of the trial. ................................................................... 17

**IV.**   Motion to exclude hyperbolic and inflammatory rhetoric about
        health insurers and managed care organizations. ..................................... 20

**V.**    Motion to exclude references to BCBSMT's law firms, the
        number of lawyers representing BCBSMT, or the fact that some
        of BCBSMT's lawyers are not residents of Montana. ............................. 22

CONCLUSION.................................................................................................. 23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Cartridge Techs., LLC v. Lexmark Int'l, Inc.*,
No. 8:10-cv-486, 2012 WL 12096443 (M.D. Fla. Mar. 26, 2012) ....................21

*Alexander v. Wal-Mart Stores, Inc.*,
No. 2:11-cv-752, 2013 WL 427132 (D. Nev. Feb. 1, 2013) .............................23

*Avondale Mills, Inc. v. Norfolk S. Corp.*,
No. 1:05-cv-2817, 2008 WL 6953958 (D.S.C. Jan. 16, 2008)..........................20

*BNSF Ry. v. Quad City Testing Lab'y, Inc*.,
No. CV-07-170-BLG-RFC, 2010 WL 4337827 (D. Mont. 2010) ......................6

*Borchik v. State Farm Mutual Automobile Insurance Co.*,
No. 2:21-cv-567, 2026 WL 910189 (D. Nev. Jan. 23, 2026).......................16, 17

*Closson v. Bank of Am., N.A.*,
No. 2:11-CV-275, 2012 WL 6627065 (D. Nev. Dec. 19, 2012).......................21

*Escobar v. Airbus Helicopters SAS*,
No. 13-598, 2016 WL 5897554 (D. Haw. Oct. 7, 2016)...................................23

*Ficek v. Kolberg-Pioneer, Inc.*,
No. CV–09–39, 2011 WL 1316801 (D. Mont. Apr. 5, 2011).............................5

*Gilley v. C.H. Robinson Worldwide, Inc.*,
No. 1:18-cv-536, 2022 WL 828941 (S.D. W. Va. Mar. 18, 2022) ...................21

*In re E.I. duPont de Nemours and Co.*,
No. 2:13-md-2433, 2015 WL 5882084 (S.D. Ohio Oct. 5, 2015).....................20

*Norwood v. Child. & Youth Servs., Inc.*,
No. CV1007944GAFMANX, 2012 WL 12882757 (C.D. Cal. July
27, 2012) ........................................................................................................19

*Olsen v. Owners Ins. Co.*,
No. 18-cv-01665, 2022 WL 1791098 (D. Col. June 1, 2022)..........................22

ii

*Pennington v. Clayton Industries*,
  00-cv-12266, 2002 WL 34357428 (C.D. Cal. Apr. 18, 2002) ...........................18

*Philips N. Am. LLC v. Summit Imaging Inc.*,
  No. C19-1745, 2021 WL 2118400 (W.D. Wash. May 25, 2021) .....................12

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538 U.S. 408 (2003)..................................................................................19

*Strickholm v. Evangelical Lutheran Good Samaritan Soc.*,
  No. 1:11-cv-00059, 2013 WL 788096 (D. Idaho Mar. 1, 2013) ......................23

*Trichtler v. Cnty. of Lake*,
  358 F.3d 1150 (9th Cir. 2004) ......................................................................6

*U.S. ex rel Miller v. Bill Harbert Intern. Const. Inc.*,
  608 F.3d 871 (D.C. Cir. 2010)...................................................................19

*Williams v. Hargrove*,
  No. 1:16-cv-266, 2018 WL 1598669 (S.D. Miss. Apr. 2, 2018).......................12

*Zrowka v. BNSF Ry. Co.*,
  No. CV-21-61-GF-BMM, 2023 WL 3412465 (D. Mont. May 12,
  2023) ................................................................................................15, 22

**Rules**

Fed. R. Civ. P. 30(b)(6)...............................................................................14

Fed. R. Evid. 401 ...............................................................................6, 12, 16

Fed. R. Evid. 402 ...................................................................................6, 23

Fed. R. Evid. 403 ...............................................................................6, 14, 17

## INTRODUCTION

BCBSMT moves *in limine* to exclude five categories of evidence and argument that Plaintiff Johnny Rutherford is likely to introduce at trial. Each should be excluded because it is either irrelevant to the issues in this case, unfairly prejudicial to BCBSMT, or both.

First, the Court should exclude the report of the Kaiser Family Foundation ("KFF Report") and its underlying data. The KFF Report is based on an incomplete and inaccurate data set and is limited to ACA Federally Facilitated Marketplace ("FFM") plans — a category that does not include Rutherford's employer-sponsored plan. Whatever marginal relevance it might otherwise carry is substantially outweighed by the risk of unfair prejudice and jury confusion.

Second, the Court should exclude evidence of BCBSMT's and HCSC's financial conditions during the liability phase of trial. The companies' net worth and financial resources are irrelevant to whether BCBSMT conducted a reasonable investigation of Rutherford's claim. Further, Rutherford was covered under a self-insured plan for which BCBSMT provided administrative services only; BCBSMT therefore had no financial stake in whether Rutherford's claim was paid or denied.

Third, the Court should exclude evidence regarding compensation paid to HCSC CEO Maurice Smith. His compensation has no bearing on whether BCBSMT violated Montana law, and its admission would create a serious risk that the jury

bases its verdict on passion rather than the evidence.

Fourth, the Court should preclude Rutherford and his counsel from making hyperbolic and inflammatory characterizations of health insurers and managed care organizations — statements that carry no probative value and would serve only to inflame the jury.

Fifth and finally, the Court should exclude any reference to the size, composition, or geographic location of BCBSMT's legal team, which is wholly irrelevant to the merits and could serve only to prejudice BCBSMT in the eyes of the jury.

## FACTUAL BACKGROUND

Plaintiff John Rutherford obtained health benefits under the Montana University System ("MUS") Group Benefits Plan, a self-funded health benefits plan. Pls.' Second Am. Compl. ("SAC") ¶ 3. His plan was administered by Blue Cross and Blue Shield of Montana ("BCBSMT"), which was responsible for processing benefits requests and determining whether they met the "medical necessity" criteria in MUS's plan; BCBSMT was not responsible for paying any benefits due Mr. Rutherford. *See id*. ¶ 14.

In June of 2023, Rutherford underwent spinal surgery at the Mayo Clinic ("Mayo") in Rochester, Minnesota. Rutherford Dep., 69:25-70:7, 72:25-73:1, 81:15-20, 85:24-86:12, ECF 234-2. Mayo sought reimbursement for Rutherford's surgery

2

by submitting a claim to Blue Cross and Blue Shield of Minnesota ("BCBS Minnesota"), which in turn transmitted the claim to BCBSMT on July 1. *See* BCBSMT_1092, ECF 234-3. Mayo attached multiple records to its submission. However, Mayo's submission omitted Rutherford's MRI results documenting cervical nerve root compression, which was required under BCBSMT's medical policy for approval of spinal surgery claims. *See* BCBSMT_1251, ECF 234-4. BCBSMT requested additional records through BCBS Minnesota. *See* BCBSMT_125766, ECF 234-6; Decl. of Suzi Livorsi ¶ 5, ECF 160-11.

On July 6, BCBS Minnesota asked Mayo to provide additional records, including patient history, testing, and treatment plans, within 10 days. *See* BCBSMT_1068, ECF 234-7. Mayo responded on July 18 — two days late — but the supplemental records still did not include the MRI report or imaging. *Id.* BCBS Minnesota forwarded the documents to BCBSMT on July 20, one day after a BCBSMT Medical Director had already declined to approve the claim due to the absence of MRI documentation. *See* BCBSMT_1235, ECF 234-9; Declaration of Suzi Livorsi ¶ 5, ECF 160-11.

On July 21, BCBSMT notified Rutherford that certain procedure codes were deemed "not medically necessary" due to the lack of MRI documentation. *See* BCBSMT_1111, ECF 234-10. The denial letters advised Rutherford of his right to appeal and noted that additional records, including those not previously submitted,

3

could be provided on appeal. *Id.* Between July 27 and August 31, BCBSMT issued additional non-approval letters for other procedure codes, each reiterating the missing MRI documentation and Rutherford's appeal rights. *See, e.g.,* BCBSMT_1668, ECF 234-12.

On July 26, BCBSMT again requested additional documentation from Mayo through BCBS Minnesota, but Mayo did not respond for several months. *See* BCBSMT_1211, ECF 234-11.

Rutherford forwarded some of the adverse determination letters to Mayo, asking for assistance in obtaining approval. *See* BCBSMT_1111, ECF 234-10; Rutherford Dep. 128:9-129:14, 135:4-13, ECF 234-2. Mayo initially indicated its billing team was working with the insurer and advised Rutherford to allow more time. *See* MSWD 0224, ECF 234-18. When Rutherford followed up in mid-August, Mayo recommended that he file an appeal himself. *See* MSWD  0568-B, ECF 234-21; Rutherford Dep. 139:6-141:4, ECF 234-2.

On August 30, Rutherford spoke with a BCBSMT representative, who recommended a peer-to-peer conversation between a BCBSMT Medical Director and Rutherford's surgeon, Dr. Sebastian, before September 22. *See* Rutherford Dep. 146:19-150:13, ECF 234-2. Rutherford relayed this information and the deadline to Mayo. *Id.* at 152:25-153:7.

Without notifying Rutherford, Mayo filed an appeal on his behalf around

September 13. *See* BCBSMT_0703, ECF 234-21; Rutherford Dep. 167:6-19, ECF 234-2. On September 20, in connection with that appeal, Dr. Sebastian submitted a letter describing the MRI findings. *See* BCBSMT_1154, ECF 234-22.

On September 15, BCBSMT again recommended that Rutherford have Mayo set up a peer-to-peer conversation between BCBSMT and Dr. Sebastian before September 22. *See* Rutherford Dep. 151:23-152:15, ECF 234-2. However, on September 19, BCBSMT informed Rutherford that because an appeal had already been filed, a peer-to-peer conversation was no longer permitted. SAC ¶ 26; MSWD 0607-B, ECF 234-24.

Mayo's initial appeal was closed due to a signature authorization deficiency. BCBSMT_0754, ECF 234-25. A second appeal was submitted on November 15, 2023. *See* BCBSMT_1227, ECF 234-26. Before BCBSMT could adjudicate it, Rutherford filed suit alleging BCBSMT failed to conduct a reasonable investigation of his claim. In early January 2024, BCBSMT timely processed the appeal, overturned all denials, and paid the claim in full. Pls.' Statement of Undisputed Facts ¶ 8, ECF 108; BCBSMT_3208, ECF 234-27, Rutherford Dep. 205:8-20, 207:11-18, ECF 234-2; Order on Mot. for Class Cert., ECF 230 at 3, 11.

## LEGAL STANDARD

Courts have "wide discretion" in deciding motions *in limine*. *Ficek v. Kolberg-Pioneer, Inc.*, No. CV–09–39, 2011 WL 1316801 (D. Mont. Apr. 5, 2011)

(citing *Trichtler v. Cnty. of Lake*, 358 F.3d 1150, 1155 (9th Cir. 2004)). Such motions should be granted where the evidence is "inadmissible on all potential grounds." *BNSF Ry. v. Quad City Testing Lab'y, Inc.*, No. CV-07-170-BLG-RFC, 2010 WL 4337827, at *1 (D. Mont. 2010) (cleaned up). Under Federal Rules of Evidence 401 and 402, evidence that is not "relevant"—meaning it does not make a fact that is "of consequence in determining the action" either more or less probable— is inadmissible. Furthermore, under Federal Rule of Evidence 403, even relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needless presentation of cumulative evidence.

## MOTIONS *IN LIMINE*

### I.    Motion to exclude the report of the Kaiser Family Foundation and its underlying data.

Throughout this case, Rutherford has attempted to use a report from the Kaiser Family Foundation ("KFF Report") (Declaration of Elizabeth Hecker ("Hecker Decl.") Ex. A[1]) to make various arguments regarding HCSC's claim denial rates. *See, e.g.*, Pls. Updated Statement of Undisputed Facts, ECF 239, ¶ 55; Mot. Hr'g Tr., ECF 176, at 15, 32-33, 40. The Court should exclude the KFF Report, any reference to its contents, and any argument relating to it, from trial. It is undisputed that the

---

[1] All exhibits cited are attached to the accompanying declaration from Elizabeth P. Hecker.

denial rates contained in the KFF Report relating to HCSC are inaccurate because they are based on incomplete data regarding HCSC plans sold on the Federally Facilitated Marketplace ("FFM").

But even if the KFF Report were based on a correct data set, the Report is irrelevant to this litigation because it (1) includes *only* data regarding HCSC's FFM plans and therefore does not include denials for employer-sponsored plans like Rutherford's; (2) includes pharmacy and dental claims, which for various reasons are denied at significantly higher rates than medical claims; (3) is not limited to the kind of denials that are at issue in this case—medical necessity denials—and instead includes claim denials for reasons wholly irrelevant to this case. Ex. A, KFF Report. Any marginal relevance the KFF Report has to Rutherford's claims is therefore heavily outweighed by the risk of unfair prejudice and jury confusion.

### A.    The KFF Report is based on an incomplete data set.

The Centers for Medicare and Medicaid Services ("CMS") "collects data for …every insurer on the federally facilitated marketplace each year." Ex. B, Deposition of Mark Tomaszewski ("Tomaszewski Dep.") 20:7-15. The FFM consists of "individual qualified health plans that are [Affordable Care Act]-compliant." *Id.* 19:18-23. Rutherford's BCBSMT plan, an employer-sponsored group health plan, is not an FFM plan and therefore is not included in the data HCSC is required to submit to CMS. *Id.* 18:10-19:10; 88:10-89:16.

7

Health insurers, including HCSC, submit to CMS certain data relating to the plans they offer on the FFM, according to rules set forth by CMS. *Id.* 20:16-24. As relevant here, that data includes claim denial rates. *Id.* 18:10-19:10. Each year, health insurers submit an initial set of data, and then a few months later, submit a final set. *Id.*; *see also id.* at 44:15-46:11.

In January 2025, KFF published a study based on FFM data submitted by health insurers to CMS relating to the year 2023. Ex. B, Tomaszewski Dep. 11:14-23; *see also* Ex. A, KFF Report. The KFF Report states that HCSC's overall claim denial rate for 2023 was 29%. Ex. A, KFF Report at Figure 3; Ex. B, Tomaszewski Dep. 24:6-10. But for unknown reasons, the KFF report improperly relied *only* on HCSC's initial, partial submission. *See id.* at 22:10-24. Because KFF failed to include data from HCSC's final submission, the KFF Report's reported denial rates for 2023 for HCSC are inaccurate. *Id.* at 21:13-25; 22:10-24.

The omitted information made a substantial difference. HCSC's initial submission to CMS for 2023 did not include medical claims and denials for three of HCSC's four divisions that sell plans on the FFM—*BCBSMT*, Blue Cross Blue Shield of Texas, or Blue Cross Blue Shield of Oklahoma; for those states, the initial submission included *only* pharmacy and dental claims and denials. Ex. B, Tomaszewski Dep. 30:11-24; 50:8-18. In fact, because HCSC division Blue Cross and Blue Shield of New Mexico does not participate in the FFM, HCSC's initial

submission included *medical* claims and denials for only a single HCSC division – Blue Cross and Blue Shield of Illinois.[2]

HCSC's final submission to CMS, in contrast, contained data on medical claims and denials for all four of HCSC's member companies that participate on the FFM—Illinois, Texas, Montana, and Oklahoma. *Id*. at 30:11-24. When those complete numbers are taken into account, HCSC's denial rate decreases to 23%. *Id.* at 24:6-22. This difference is largely attributable to the fact that medical claims generally are denied at far lower rates than pharmacy claims, which have high rates of administrative denials. *Id.* 53:11-16; *see also id.* at 64:1-17 ("[T]he pharmacy percent denial is much higher than medical, and that is for a variety of reasons, including people trying to get days' supply of drugs over what they've been prescribed, [and] trying to get drugs that are from a time period when they're no longer insured."). Indeed, the corrected data reflects that in 2023, HCSC denied only 18% of in-network medical claims. *Id.* 91:1-5. And not all those denials were denied for lack of medical necessity; though the KFF Report does not break down reasons for denial by insurer, it states that for all insurers who reported data, only 6% of total denials were based on lack of medical necessity. Ex. A, KFF Report; Ex. B, Tomaszewski Dep. 93:12-94:9.

---

[2] Blue Cross and Blue Shield of New Mexico participates on a state-based exchange rather than the FFM; accordingly, it was not required to report FFM information to CMS. Ex. B, Tomaszewski Dep. 24:12-22; 43:22-44:14.

**B.**     **The KFF Report and its underlying data are limited to ACA Federally Facilitated Marketplace data and are therefore irrelevant to the issues in this case.**

The KFF Report also should be excluded because it is irrelevant to the issues in this case. As explained above, the insurer data on which the KFF Report is based relates *only* to FFM plans and does not include employer-sponsored group health plans like the one under which Rutherford obtained insurance. Ex. 2B, Tomaszewski Dep. 18:10-19:10; 88:10-89:16. Further, it includes only in-network claims and excludes claims for services rendered by out-of-state providers and processed through the national BlueCard system, as Rutherford's claim was. *Id.* 89:17-22. Accordingly, the KFF Report says nothing about denial rates for claims like Rutherford's.

Further, the KFF Report includes claim denials for not only medical claims—the only claims at issue in this case—but also for dental and pharmacy claims. Ex. B, Tomaszewski Dep. 89:5-90:11. Neither dental nor pharmacy claims were subject to the alleged claim processing procedures Rutherford challenges here, and the denial rates for pharmacy claims skew the denial rates sharply upward; approximately 38% of pharmacy claims were denied. *Id.* at 91:6-11. Indeed, the data HCSC submitted to CMS in 2023 reveals that HCSC denied only 18% of in-network *medical* claims. *Id.* 91:1-5. And most of those claims were denied for reasons other than lack of medical necessity, including lack of prior authorization, plan exclusion,

10

or other administrative reasons that have no relevance to the issues in this case. *Id.* at 92:11-93:25.

Finally, nothing in the KFF Report has any tendency to show that any of HCSC's claim denials were wrongful. This case is not about overall denial rates or about comparing denial rates of one company to another. It is about whether BCBSMT had a company policy prohibiting reviewers from conducting a reasonable investigation to determine whether medical claims were medically necessary in violation of Montana law. *See generally* Pls. Br. in Support of Mot. for Partial S.J., ECF 238. The KFF Report does not contain any information about what percentage of *medical* claims HCSC denied *for lack of medical necessity*, even for the FFM markets it covers (which again, would not include the plan under which Rutherford was insured).[3] And even if it did, the only medical necessity denials that would be relevant to the claims of the putative class are those that were denied due to missing documentation. *See id.* at 18-20.[4] Accordingly, the KFF Report does not contain any

---

[3] There is nothing in the record suggesting that the denial rates documented in the KFF Report or its underlying data could serve as a proxy for medical necessity denials, either.

[4] *See also* Pls. Br. in Support of Mot. for Class Cert., ECF 200, at 12-13 (seeking to certify a class of individuals who "have had claims denied by HCSC as 'not medically necessary,' where the denial was *expressly based on lack of documentation* to meet the requirements of the applicable medical policy, and where such claims were subject to HCSC's standard operating procedure (NMN SOP) that governs medical necessity determinations") (emphasis added).

11

evidence that would make it more or less likely that the alleged policy that Rutherford challenges (failing to ask for additional documentation when determining medical necessity) exists. *See* Fed. R. Evid. 401 (to be relevant, evidence must have a "tendency to make a fact more or less probable than it would be without the evidence").

### C.   Permitting Rutherford to present evidence and argument regarding the KFF Report and its underlying data would unfairly prejudice BCBSMT.

Because the KFF Report presents inaccurate numbers about HCSC's denial rates as compared with other insurers, its probative value would be grossly outweighed by the danger of unfair prejudice. The KFF Report inaccurately states that HCSC denied 29% of claims in the FFM markets in 2023, compared to an average of 20% for all insurers, making it appear that HCSC's denial rate was 45% higher than the average. In fact, HCSC denied 23% of claims in the FFM Market— only 15% higher than average. *See Williams v. Hargrove*, No. 1:16-cv-266, 2018 WL 1598669, at *3 (S.D. Miss. Apr. 2, 2018) (excluding from trial charts and tables that "unfairly and inaccurately present[ed] the underlying data"); *Philips N. Am. LLC v. Summit Imaging Inc.*, No. C19-1745, 2021 WL 2118400, at *10 (W.D. Wash. May 25, 2021) ("Opinions derived from erroneous data are appropriately excluded.") (internal quotation marks and citation omitted).

Even corrected, the 23% denial rate reflected in the CMS data is not limited

12

to medical denials—the only denials at issue in this case. HCSC's denial rate for *medical* claims in the FFM market in 2023 was only 18%. Ex. B, Tomaszewski Dep. 91:1-5. The inclusion of pharmacy claims increases the reported denial rate substantially, even though pharmacy claims were not subject to any of the alleged claim processing procedures Rutherford challenges here. *Id.* 91:6-11.[5]

Even if the flaws in the KFF Report—and its irrelevance to the issues in this case—could be explained on cross-examination, doing so would take up valuable time at trial. An HCSC witness would need to explain what data is required to be submitted to CMS, why HCSC's initial production did not (and was not required to) contain the full set of data, and how the actual denial rate is calculated. HCSC would also be required to educate the jury on the differences between the FFM market and employer-provided, group-based plans like Rutherford's, explain why the inclusion of pharmacy data skews the results, and explain why the KFF Report tells the reader nothing about HCSC's denial rate for medical necessity reasons, much less whether those denials were based on lack of required documentation.

---

[5] Rutherford cites the KFF report to argue that BCBSMT's denial rates are higher than the two other primary health insurance providers in Montana—Mountain Health Coop and PacificSource. Pls. Updated Statement of Undisputed Facts, ECF 239, ¶ 55. BCBSMT notes that PacificSource recently announced that it was exiting the market for individual insurance, and as of December 31, 2026, will no longer offer or administered insurance plans in the State of Montana. *See* https://dailymontanan.com/2026/05/22/pacificsource-to-end-montana-insurance-operations/.

Because the probative value of the KFF Report is negligible at best, the Court should avoid subjecting the jury to the confusion and waste of time that its introduction would certainly create. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, … undue delay, [or] wasting time.").

**D.    BCBSMT has produced accurate data regarding claim denials for medical necessity, eliminating any need for Rutherford to use the KFF Report and its underlying data.**

BCBSMT has produced extensive data regarding medical necessity denials and denial rates. *See generally* Deposition of Stacie Burns ("Burns Dep."), Ex. C, 88:11-229:25. BCBSMT also produced a Rule 30(b)(6) witness to explain how to interpret that data. *See id.* At trial, Rutherford will be able to present this evidence in support of any arguments about BCBSMT's denial rates. He does not need to rely on the KFF Report, which (1) is based on inaccurate and incomplete data; (2) is limited to a discrete portion of HCSC's business that does not include Rutherford's plan; (3) includes pharmacy and dental denials, which are substantially higher than medical denials; and (4) contains no information regarding HCSC's rate of denials on medical necessity grounds.

For all these reasons, the Court should exclude the KFF Report, the data underlying that report, and related arguments, from trial.

14

**II.    Motion to exclude evidence of BCBSMT's and HCSC's respective financial conditions during the liability phase of trial.**

The respective financial conditions of BCBSMT and its parent company HCSC are irrelevant to BCBSMT's liability on Rutherford's claims, which are based on Rutherford's allegation that BCBSMT failed to conduct a reasonable investigation into his claim for cervical spine surgery. Though courts generally hold that such evidence is irrelevant during the liability phase of trial, BCBSMT's financial status is particularly irrelevant here, as BCBSMT merely administered Rutherford's benefits on behalf of his self-insured plan, MUS, and BCBSMT therefore had no financial stake in whether Rutherford's claim was paid. BCBSMT has not placed either its or HCSC's financial condition at issue. Accordingly, the Court should exclude references to BCBSMT's and HCSC's respective financial conditions or net worth during the liability phase of the trial.

Federal courts, including this Court, routinely exclude evidence of a defendant's financial condition based on lack of relevance or the risk of unfair prejudice. *See, e.g., Zrowka v. BNSF Ry. Co.*, No. CV-21-61-GF-BMM, 2023 WL 3412465, at *2 (D. Mont. May 12, 2023) ("Evidence of or argument regarding the size, wealth, assets, properties, liabilities, ownership structure, or financial standing of [defendants], or their ability to pay damages in this case, is not relevant to any material issue which pertains to [defendant's] conduct in this lawsuit and would serve as inflammatory and prejudicial to [defendant] without being probative.").

15

*Borchik v. State Farm Mutual Automobile Insurance Co.*, No. 2:21-cv-567, 2026 WL 910189 (D. Nev. Jan. 23, 2026), is instructive. There, as here, the plaintiff asserted a bad faith claim alleging that the defendant insurer acted unreasonably in investigating his claim. *Id.* at *2. The insurer moved to preclude the plaintiff from introducing "evidence or argument comparing the relative size, wealth, or financial strength of the parties," arguing that such evidence was "not relevant to whether it complied with its contractual and statutory obligations," which "turn[ed] on the conduct of claims handling, the information available at the time, and the reasonableness of its actions." *Id.*

The court agreed, holding that "evidence of the comparative size, wealth, and financial resources of the parties in not relevant to [the d]efendant's liability." *Id.* at *3. The court observed that "[t]he fact that [d]efendant is a large company and has financial wealth, especially compared to [p]laintiff, does not tend to make it more or less probable that it did or did not have a reasonable basis for its" handling of the plaintiff's claim. *Id.* (citing Fed. R. Evid. 401). The court further held that "even if such evidence were relevant, any probative value is substantially outweighed by the risk of unfair prejudice" because "[t]he danger that the jury may find [d]efendant liable because it is a large insurance company with significant financial wealth (especially compared to the amount of money [p]laintiff requested) outweighs any probative value as the jury would base its decision on something other than the

16

established facts and legal propositions in the case." *Id.*

The same is true here. BCBSMT's and HCSC's respective financial conditions are irrelevant to whether BCBSMT conducted a reasonable investigation into Rutherford's claim for surgery—particularly because here, BCBSMT acted as the third-party administrator of Rutherford's plan and any payment for Rutherford's claim was paid by MUS, not by BCBSMT. But even if the companies' respective financial conditions did bear some marginal relevance to whether BCBSMT conducted a reasonable investigation into Rutherford's claim, the Court should exclude such evidence during the liability phase of the trial because "its probative value is substantially outweighed by a danger of…unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403.

## III. Motion to exclude evidence relating to compensation paid to HCSC CEO Maurice Smith in both the liability and punitive damages phases of the trial.

The Court should preclude Rutherford from introducing evidence regarding the compensation paid to HCSC President and Chief Executive Officer Maurice Smith or from comparing Smith's compensation to the compensation of other health insurance industry executives. Mr. Smith's compensation is irrelevant to the issues in this case and runs a serious risk of unfair prejudice.[6]

---

[6] Other than Mr. Smith, Rutherford has not indicated that he intends to introduce evidence of the compensation paid to other HCSC executives. But to the extent he

As set forth above, courts routinely exclude evidence of a defendant's financial condition in the liability phase of a trial. The same is true for evidence regarding how much the company pays its high-level executives. Such evidence has nothing to do with whether BCBSMT violated Montana law by failing to conduct a reasonable investigation of Rutherford's claim.

For example, in *Pennington v. Clayton Industries*, the court granted defendant's motion *in limine* to exclude evidence relating to executive compensation, holding that "[e]vidence of the compensation paid to defendant's high-level executives is irrelevant." 00-cv-12266, 2002 WL 34357428, at *2 (C.D. Cal. Apr. 18, 2002). The court explained that "[t]o the extent that [such evidence] could be marginally relevant to [the merits of plaintiff's claims], that relevance is substantially outweighed by the prejudice defendant would suffer in the eyes of the jurors, who would be deflected from the legitimate issues in the case." *Id.*

Mr. Smith's compensation is entirely unrelated to any of the issues in this case. It is undisputed that Mr. Smith plays no role in reviewing claims, overseeing those who review claims, or setting policies or procedures for reviewing claims. *See* Smith Decl., ECF 164-1 at ¶¶ 9-11. Nor is Mr. Smith's compensation relevant to

---

plans to do so, the argument and authority in this Section would apply to those executives as well. Rutherford has identified no evidence that any HCSC executive's compensation was based, even in part, on denial rates; as such, such evidence would be irrelevant and highly prejudicial.

BCBSMT's alleged motive to deny claims, as it is undisputed that Mr. Smith's compensation was not linked in any way to claim approval or denial rates. *Id.* at ¶ 15. BCBSMT President Lisa Kelley testified that Mr. Smith's compensation is "determined by an independent compensation committee" made up of individuals from HCSC's board of directors, who "use an external consultant" who "looks at similarly situated…peer companies" and "the overall national environment." Ex. D, Deposition of Lisa Kelley ("Kelley Dep.") 85:4-19. The consultant then makes a recommendation to the Board, which "ultimately reviews and approves the CEO salary." *Id.* Because Mr. Smith's compensation has no link to HCSC's denial rates, it is irrelevant to any issue in this case.

On the other hand, courts repeatedly have acknowledged the danger of unfair prejudice inherent in permitting evidence of executive compensation—namely, the risk that a jury will base their damages award on the defendant's perceived ability to pay, rather than on the defendant's culpability. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003) ("[E]vidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses."); *Norwood v. Child. & Youth Servs., Inc.*, No. CV1007944GAFMANX, 2012 WL 12882757, at *2 (C.D. Cal. July 27, 2012) ("[E]vidence of a defendant's wealth can induce fact finders to abandon their objectivity and return a verdict based on passion and prejudice."); *U.S. ex rel Miller v. Bill Harbert Intern. Const. Inc.*,

608 F.3d 871, 898 (D.C. Cir. 2010) (vacating judgments and remanding for a new trial where plaintiff "emphasized the wealth of [companies affiliated with the defendant] in his closing statement and insinuated that the money would be in better hands if it were taken from the defendants.").

The Court also should exclude evidence of Smith's compensation from the punitive damages phase of the trial. Unlike *BCBSMT's* financial condition generally, the amount of Mr. Smith's compensation is irrelevant to BCBSMT's ability to pay a punitive damages award. *See, e.g., In re E.I. duPont de Nemours and Co.*, No. 2:13-md-2433, 2015 WL 5882084, at *2 (S.D. Ohio Oct. 5, 2015) ("[E]xecutive compensation is not relevant to show defendants' ability to pay a punitive damages award.") (quoting *Avondale Mills, Inc. v. Norfolk S. Corp.*, No. 1:05-cv-2817, 2008 WL 6953958, at *1 (D.S.C. Jan. 16, 2008)).

Because the undisputed evidence shows that Mr. Smith's compensation was in no way based on medical necessity denial rates, it is irrelevant to any fact at issue in this case. The introduction of such evidence would serve only to create risk that the jury would improperly base its verdict and damages award on passion and bias. Because the probative value of such evidence is vastly outweighed by the danger of unfair prejudice, the Court should preclude Rutherford from introducing it.

**IV.    Motion to exclude hyperbolic and inflammatory rhetoric about health insurers and managed care organizations.**

The Court also should preclude Rutherford and his counsel from making

20

hyperbolic, inflammatory, or stereotypical characterizations of HCSC, health insurers, managed care organizations, or large corporations generally.[7] Such statements have no probative value and serve only to inflame the jury's passions against large insurers like BCBSMT.

Courts routinely grant motions *in limine* to exclude such improper rhetoric. *See, e.g.*, *Gilley v. C.H. Robinson Worldwide, Inc.*, No. 1:18-cv-536, 2022 WL 828941, at *11 (S.D. W. Va. Mar. 18, 2022) ("Descriptions intended to cast [the defendant] as a villainous big corporation are improper."); *Closson v. Bank of Am., N.A.*, No. 2:11-CV-275, 2012 WL 6627065, at *2 (D. Nev. Dec. 19, 2012) (prohibiting plaintiffs from "making statements regarding alleged misconduct by other … corporations, general corporate greed, [and] the need for corporate America and defendant to be sent a message," and explaining that such "statements are never proper and are prohibited in front of the jury"); *Advanced Cartridge Techs., LLC v. Lexmark Int'l, Inc.*, No. 8:10-cv-486, 2012 WL 12096443, at *2 (M.D. Fla. Mar. 26,

---

[7] The "expert" reports Rutherford submitted were replete with improper rhetoric about HCSC. For example, Linda Peeno relied on a warped and inaccurate reading of the record of this case to accuse HCSC of seeing "patients as [no]thing more than entries on their screens with dollar values." Ex. E, Expert Rep. of Linda Peeno, at 10; *see also id.* at 13 (accusing HCSC of "subterfuge, using precious patient and provider time to their financial advantage"). Similarly, Richard Miltenberger claimed, without evidence, BCBSMT "built a system" with high denial rates so "the money . . . is going to be in the pockets of the executives." Ex. F, Deposition of Richard Miltenberger ("Miltenberger Dep.") at 194:13-200:4.

2012) (excluding testimony "directed to [the defendant's] corporate size and wealth and calculated to invoke disparaging stereotypes," and noting that such testimony "is often deployed in desperation or over-zealousness in civil litigation to distort the jury's judgment").

Because rhetoric aimed at stereotyping MCOs and health insurance companies as greedy corporations has no probative value and creates a significant risk of prejudice, the Court should preclude Rutherford from making such statements or arguments at trial.

## V.    Motion to exclude references to BCBSMT's law firms, the number of lawyers representing BCBSMT, or the fact that some of BCBSMT's lawyers are not residents of Montana.

For similar reasons, the Court should exclude evidence regarding the size of BCBSMT's legal team and the size and locations of the law firms that employ them. Such evidence or commentary is irrelevant to the issues in this case and can only serve to prejudice the jury against BCBSMT.

This Court previously granted a motion *in limine* to prevent a plaintiff "from commenting upon the number of law firms or attorneys representing" a defendant. *See Zrowka*, 2023 WL 3412465, at *5. The Court is in good company in doing so; other courts have overwhelmingly granted motions *in limine* to exclude such evidence from being referenced at trial. *See, e.g.*, *Olsen v. Owners Ins. Co.*, No. 18-cv-01665, 2022 WL 1791098, at *2 (D. Col. June 1, 2022) ("Comments about a

22

party's law firm, its size, or its resources are also improper and potentially prejudicial, as well as irrelevant."); *Escobar v. Airbus Helicopters SAS*, No. 13-598, 2016 WL 5897554, at *1 (D. Haw. Oct. 7, 2016) (granting motion *in limine* and precluding plaintiff from "introducing any testimony, evidence, argument, or other reference to the size of the law firms representing [d]efendant, the reputation of the [d]efendant's law firms and their attorneys, their hourly fees, or any similar statements."); *Strickholm v. Evangelical Lutheran Good Samaritan Soc.*, No. 1:11-cv-00059, 2013 WL 788096, at *6 (D. Idaho Mar. 1, 2013) ("The Court will prohibit any reference by the parties to the number of attorneys representing any other party and where those attorneys are from."); *Alexander v. Wal-Mart Stores, Inc.*, No. 2:11-cv-752, 2013 WL 427132, at *4 (D. Nev. Feb. 1, 2013) ("[D]uring the course of the trial the location of each attorneys' office and firm headquarters, in addition to where they practice and are licensed to practice, is irrelevant and therefore inadmissible under Fed. R. Evid. 402.").

Because evidence of and references to the size and location of BCBSMT's lawyers and the location of their offices has nothing whatsoever to do with the merits of the issues in this case, the Court should exclude them.

## CONCLUSION

For the reasons set forth above, this Court should grant BCBSMT's motions *in limine*.

23

Dated: June 12, 2026

Respectfully submitted,


By:    */s/ Elizabeth Parr Hecker*
**CROWELL & MORING LLP**
By:    Martin J. Bishop
        Tracy A. Roman (*pro hac vice*)
        Emily T. Kuwahara (*pro hac vice*)
        Robert C. Deegan (*pro hac vice*)
        Elizabeth Parr Hecker (*pro hac vice*)

-and-

**BROWNING, KALECZYC, BERRY & HOVEN, P.C.**

        Daniel J. Auerbach
        M. Christy S. McCann

*Attorneys for Health Care Service Corporation d/b/a Blue Cross and Blue Shield of Montana*

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of June 2026, a true and correct copy of

the above and foregoing was served via ECF to the following parties:

John Morrison
Morrison, Sherwood, Wilson & Deola, PLLP
401 N. Last Chance Gulch St.
Helena, MT 59601
(406) 442-3261
john@mswdlaw.com

Justin P. Stalpes
Beck, Amsden & Stalpes, PLLC
610 Professional Dr.
Bozeman, MT 59718
(406) 586-8700
justin@becklawyers.com

*Attorneys for Plaintiff*

By:    */s/ Elizabeth Parr Hecker*
           Elizabeth Parr Hecker

1

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that on this 12th day of June, 2026, pursuant to L.R. 7.3, this memorandum does not exceed 6500 words.


By:    */s/ Elizabeth Parr Hecker*
          Elizabeth Parr Hecker

2