John M. Morrison, Esq.
Scott L. Peterson, Esq.
MORRISON, SHERWOOD, WILSON & DEOLA, PLLP
401 N. Last Chance Gulch St.
Helena, MT 59601
Tel: (406) 442-3261
Fax: (406) 443-7294
john@mswdlaw.com
speterson@mswdlaw.com

Justin P. Stalpes, Esq.
Conner C. Bottomly, Esq.
BECK, AMSDEN & STALPES, PLLC
610 Professional Dr.
Bozeman, MT 59718
Tel: (406) 586-8700
Fax: (406) 586-8960
justin@becklawyers.com
conner@becklawyers.com
info@becklawyers.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| JOHNNY C. RUTHERFORD, JR. and MARY RUTHERFORD, and JOHNNY RUTHERFORD ON BEHALF OF THOSE SIMILARLY SITUATED,<br><br>               Plaintiffs,<br><br>   v.<br><br>HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Company, doing business in Montana as Blue Cross and Blue Shield of Montana, and the MONTANA UNIVERSITY SYSTEM.<br><br>               Defendants. | Cause No: 6:24-CV-00081-BMM<br><br><br>**BRIEF IN SUPPORT OF MOTIONS IN LIMINE** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................iv

LEGAL STANDARDS.....................................................................................1

MOTIONS TO EXCLUDE................................................................................2

    1.   Arguments, testimony, and evidence about "industry standard" that is contrary to § 33-18-201 and *Lorang*. ........................................................................2

    2.   Arguments, testimony, and evidence that "everyone does it that way.".........5

    3.   Arguments, testimony, and evidence contrary to 30(b)(6) testimony or where HCSC withheld such testimony. ...................................................................6

        a.  HCSC may not contradict what it has admitted in 30(b)(6) depositions...7

        b.  HCSC should not be allowed to offer fact testimony or evidence regarding subjects on which its 30(b)(6) witnesses were unprepared to answer questions. ...........................................................................................9

        c.  HCSC should not be allowed to offer fact testimony or evidence regarding topics on which it failed to produce witnesses to testify. ........................11

    4.   Denials of Rutherford's MPSJ and Motion for Certification.......................12

    5.   Depositions taken in violation of this Court's Pro Hac Vice Orders............14

    6.   Evidence Regarding Mary's Financial Condition ........................................16

    7.   Linda Peeno's 2007 License Suspension.....................................................17

    8.   Argument that HCSC's appeal process is part of the investigation or that it was still "deciding" the Rutherford claim after denial. ...............................18

    9.   Conversations Allegedly Overheard During Deposition Breaks. .................19

    10. Alleged fault of Non-Parties should be excluded. .......................................20

11.  Evidence, Insinuation or Argument attempting to place fault on Plaintiffs should be excluded. ................................................................21

12.  Undisclosed and Late-Produced Documents ................................................21

AFFIRMATIVE MOTIONS ................................................................22

1.  *Lorang* sets the standard. ................................................................22

2.  *Dunkirk and Ellis are, at a minimum, managing agents of HCSC. Therefore, their testimony may be used by Plaintiff for "any purpose."* ................22

CONCLUSION ................................................................24

CERTIFICATE OF COMPLIANCE ................................................................26

# TABLE OF AUTHORITIES

## Cases

*BNSF Railway Co. v. Quad City Testing Laboratory, Inc.*
2010 WL 4337827 (D. Mont. 2010)......................................................................1

*Booton v. Lockheed Medical Benefit Plan*
110 F.3d 1461 (9th Cir. 1997) ............................................................................6

*Butler v. Unified Life Ins. Co.*
No. CV 17-50-BLG-SPW-TJCC, 2018 WL 4473883, (D. Mont. July 18, 2018)
.......................................................................................................................16

*Calgene, Inc. v. Enzo Biochem, Inc.*
1993 WL 645999 (E.D.Cal.1993) ......................................................................23

*Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*
769 F. Supp. 671, 704 (D. Del. 1991), *aff'd*, 988 F.2d 414 (3d Cir. 1993).........13

*Coleman Const. Inc. v. Diamond State Ins. Co.*
2008 WL 2357358 (D. Mont. 2008)....................................................................1

*Cooper v. Hanson*
2010 MT 113, 356 Mont. 309, 234 P.3d 59 ........................................................2

*Ensource Invs. LLC v. Willis*
No. 3:17-CV-00079-H-LL, 2020 WL 532376, (S.D. Cal. Feb. 3, 2020)......13, 14

*F.D.I.C. v. Dosland*
50 F.Supp.3d 1070 (N.D. Iowa Oct. 7, 2014) ......................................................7

*Faulconbridge v. State*
2006 MT 198, 333 Mont. 186, 142 P.3d 777 .....................................................20

*Gallo v. U.S. Dist. Ct. For Dist. of Arizona*
349 F.3d 1169 (9th Cir. 2003)...........................................................................15

*Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*
251 F.R.D. 534 (D. Nev. Mar. 24, 2008) .............................................................6

*Hangarter v. Provident Life and Accident Ins. Co.*
373 F.3d 998, 1016 (9th Cir. 2004)......................................................................4

*Hunt v. K-Mart Corp.*
1999 MT 125, 294 Mont. 444, 981 P.2d 275 ......................................................2

*In re Camp Lejeune N.C. Water Contamination Litig.*
263 F.Supp.3d 1318, 1350 n.164 (N.D. Ga. Dec. 5, 2016) ................................7

*In re NFL'S "Sunday Ticket" Antitrust Litig.*
2024 U.S. Dist. LEXIS 79048 (2024) ................................................................2

*Jarecke v. Am. Nat'l Prop. & Cas. Co.*
2014 U.S. Dist. LEXIS 159300 (D. Mont.) ........................................................4

*Klepper v. Montana Dept. of Transportation*
2012 WL 28067 (D. Mont. 2012) .......................................................................1

*Libbey Glass, Inc. v. Oneida, Ltd.*
197 F.R.D. 342 (N.D. Ohio 1999) ....................................................................23

*Limberhand v. Big Ditch Co.*
218 Mont. 132, 706 P.2d 491 (1985) ..................................................................5

*Lorang v. Fortis Ins. Co.*
2008 MT 252, 345 Mont. 12, 192 P.3d 186 ...............................................passim

*Luce v. U.S.*
469 U.S. 38, 40 n. 2 (1984) ................................................................................1

*McVey v. USAA Cas. Ins. Co.*
2013 MT 346, 372 Mont. 511, 313 P.3d 191 ...............................................5, 18

*Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*
316 F.R.D. 327 (D. Nev. 2016) ........................................................................24

*Ohler v. United States*
529 U.S. 753 (2000) ...........................................................................................1

*Pioneer Drive, LLC v. Nissan Diesel Am., Inc.*
262 F.R.D. 552 (D. Mont. Dec. 3, 2009) ...........................................................6

*Plumb v. Fourth Jud. Dist. Court, Missoula County*
(1996), 279 Mont. 363, 927 P.2d 1011 ............................................................21

*Ridley v. Guaranty Nat. Ins. Co.*
(1997), 286 Mont. 325, 951 P.2d 987 ................................................................5

*Snapp v. United Transp. Union*
  889 F.3d 1088 (9th Cir. 2018) ..................................................................7

*State v. Krause*
  2002 MT 63, 309 Mont. 174, 44 P.3d. 493 ........................................1

*Texas & Pac. Ry. Co. v. Behymer*
  189 U.S. 468 (1903) (Holmes, J.)...........................................................5

*United States v. Blitz*
  151 F.3d 1002 (9th Cir. 1998) ................................................................1

*United States v. Moran*
  493 F.3d 1002 (9th Cir. 2007) ................................................................4

*United States v. Sine*
  493 F.3d 1021 (9th Cir. 2007) ..............................................................13

*United States v. Taylor*
  166 F.R.D. 356 (M.D. N.C. Feb. 27, 1996)...........................................7

*United States v. Weitzenhoff*
  35 F.3d 1275 (9th Cir. 1993) ..................................................................4

*Vision Ctr. Nw. Inc. v. Vision Value LLC*
  No. 3:07-CV-183 RLM, 2008 WL 4276240 (N.D. Ind. Sept. 15, 2008), *aff'd*,
  No. 3:07-CV-183, 2008 WL 4724722 (N.D. Ind. Oct. 21, 2008) ......................23

*Watters v. Guaranty Nat'l Ins. Co.*
  2000 MT 150, 300 Mont. 91, 3 P.3d 626 ..............................................5

**Rules**

30(b)(6), F.R. Civ. P..................................................................................22

30(d)(2), F.R. Civ. P..................................................................................15

31(a)(4), F.R. Civ. P..................................................................................22

32(3), F.R. Civ. P. .....................................................................................23

37(c), F.R. Civ. P.......................................................................................15

vi

**Statutes**

§ 27-1-308, MCA ...................................................................................17

§ 27-1-703, MCA ...................................................................................20

§ 33-18-201, MCA .............................................................................passim

**Treatises**

*Restatement (Second) of Torts* § 288B(1) ................................................5

*The T.J. Hooper*, 60 F.2d 737, 740 (2d Cir. 1932)) (Hand, J.) ................................5

Plaintiffs respectfully submit this brief in support of their Motions in Limine.

## LEGAL STANDARDS

Courts possess inherent authority to manage the course of trials, and decisions to admit or exclude evidence fall within the sound discretion of the trial court. *United States v. Blitz*, 151 F.3d 1002, 1007 (9th Cir. 1998). Motions in limine are a well-recognized judicial practice under authorized case law. *Ohler v. United States*, 529 U.S. 753, 758 (2000).

The purpose of a motion in limine is to "prevent the introduction of evidence which is irrelevant, immaterial, or unfairly prejudicial." *State v. Krause*, 2002 MT 63, ¶ 32, 309 Mont. 174, 44 P.3d. 493. In general, a motion in limine is used to obtain a preliminary ruling on the admissibility of a particular evidentiary matter, and obtain an order excluding anticipated inadmissible evidence from trial before it is actually offered. *Klepper v. Montana Dept. of Transportation,* 2012 WL 28067 at *1 (D. Mont. 2012), citing *Luce v. U.S.,* 469 U.S. 38, 40 n. 2 (1984); *BNSF Railway Co. v. Quad City Testing Laboratory, Inc.*, 2010 WL 4337827 at *1 (D. Mont. 2010). Motions in limine assist judicial efficiency by ensuring "evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose." *Coleman Const. Inc. v. Diamond State Ins. Co.,* 2008 WL 2357358 at *1 (D. Mont. 2008) (internal citation omitted). Further, the motion seeks guidance from

1

the court regarding an evidentiary question to "aid the parties in forming a trial strategy." *Hunt v. K-Mart Corp.,* 1999 MT 125, ¶ 11, 294 Mont. 444, 981 P.2d 275.

The goal of a motion in limine is to preclude presentation of matters which by their very mention may unfairly prejudice a party in front of a jury. *Cooper v. Hanson*, 2010 MT 113, ¶ 40, 356 Mont. 309, 234 P.3d 59. The Montana Supreme Court stated in *Cooper* that "counsel may want to avoid objecting to improper arguments in front of the jury, as such objections only underscore the inappropriate points made by opposing counsel. We have historically encouraged the filing of motions in limine for precisely this reason." *Id.*, ¶ 38.

In the Ninth Circuit, a motion in limine may be used affirmatively to admit evidence, as well as to exclude it. This procedural mechanism is grounded in the court's inherent authority to manage trials. Specifically, the Ninth Circuit has recognized that a motion in limine can be employed to admit evidence. *In re NFL'S "Sunday Ticket" Antitrust Litig.*, 2024 U.S. Dist. LEXIS 79048 (2024).

**MOTIONS TO EXCLUDE**

1. **Arguments, testimony, and evidence about "industry standard" that is contrary to § 33-18-201 and *Lorang*.**

HCSC's standard of care expert, Michael Ridgeway, testified that state law, including statutes, regulations, and court decisions, provide the foundation for insurance industry standards. Doc. 239 ¶ 67. He agrees, based on Montana's insurance code and the Montana Supreme Court's decision in *Lorang*, that § 33-18-

2

201 is "Designed to protect claimants against insurers who would deny a claim without first conducting a reasonable investigation." *Id.* 151:22-152:2. He also agrees that "an insurer may not deny a claim without first conducting a reasonable investigation based on all the available information." *Id.* He further agreed that "the person handling the claim has an obligation in Montana to obtain enough information to make an informed decision" and that applies in the context of health insurance claim handling. *Id.* He agrees that the health insurance company has an obligation to attempt "to obtain the particular records that are needed to make the claim decision." *Id.*

Nevertheless, HCSC has argued and Ridgeway has contended in his report and deposition that the "industry standard" is to deny claims and require providers to appeal with additional information they want considered. See Doc. 160 at 8-9. ("In his report, Ridgeway explains that if a provider submits a claim without all required documentation, 'it is industry standard that the insured and/or provider should be given enough information to understand why the claim was denied and to file an appeal.' [] It is undisputed that BCBSMT did just that in Rutherford's case. [] Ridgeway explains that "'[i]t is industry standard that providers are expected to submit all required documentation to justify reimbursement from an insurer for the procedures the provider performs.' [] He explains that '[m]edical providers are familiar with health insurance claim processes, have access to insurers' clinical

3

guidelines, know what records they have and what the insurer requires, and want to be paid for the treatment they provide.'")

HCSC also disclosed a physician expert Dr. Wade Jensen, and his report similarly contends: "If any information is missing, payment for the procedure is typically initially denied by the insurance company."

Ridgeway, a former department of insurance lawyer in Oklahoma, acknowledged that state law—Montana's in this case—sets the standard for claim handling. Yet HCSC has used Ridgeway's testimony to support their argument that the industry standard is something entirely different from what § 201 and *Lorang* require.

It is well established that an expert cannot opine on the meaning of the law. See, e.g., *Jarecke v. Am. Nat'l Prop. & Cas. Co.*, 2014 U.S. Dist. LEXIS 159300, *9-10 (D. Mont.), citing *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (citation, quotation, and emphasis omitted); *see also United States v. Moran*, 493 F.3d 1002, 1008 (9th Cir. 2007). The tasks of resolving questions of law and "instructing the jury as to the applicable law '[are] the distinct and exclusive province[s]' of the court." *Id.*, citing *Hangarter*, 373 F.3d at 1016 (quoting *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993)).

The Court should exclude any argument, testimony or evidence from HCSC or its witnesses that the claim handling standard applicable to HCSC in its handling

4

of Rutherford's claims is anything other than that standard that is defined by Montana law including §33-18-201, MCA and the *Lorang* decision.

**2.   Arguments, testimony, and evidence that "everyone does it that way."**

Similarly, through Ridgeway and other witnesses, HCSC has argued that, regardless of the dictates of § 201, *Lorang*, *McVey*, *Ridley v. Guaranty Nat. Ins. Co.* (1997), 286 Mont. 325, 951 P.2d 987*, Watters v. Guaranty Nat'l Ins. Co.*, 2000 MT 150. ¶27, 300 Mont. 91, 99, 3 P.3d 626, 632 and other applicable case law, the health insurance industry denies claims as not medically necessary based on what providers submit and leaves it to the providers to appeal and provide what is required to obtain approval.

This argument, fairly described as "everybody else does it too," does not relieve HCSC of complying with its legal obligations. *See Restatement (Second) of Torts* § 288B(1); *The T.J. Hooper*, 60 F.2d 737, 740 (2d Cir. 1932)) (Hand, J.) ("There are precautions so imperative that even their universal disregard will not excuse their omission."); *Texas & Pac. Ry. Co. v. Behymer*, 189 U.S. 468, 470 (1903) (Holmes, J.). It is well-established in Montana that the prudence of a defendant is not measured by the imprudence of others. *Limberhand v. Big Ditch Co.*, 218 Mont. 132, 147, 706 P.2d 491, 500 (1985) ("Nicholsons' prudence is not measured by the imprudence, if any, of others. Nicholsons' duty is measured by the standard of reasonable care.")

5

The Ninth Circuit's comment in *Booten* also makes this clear; the Court held the insurer must ask for what it needs even though the failure to inquire was "an all-too-common occurrence." *Booton v. Lockheed Medical Benefit Plan*, 110 F.3d 1461, 1465. (9th Cir. 1997)[1] Even universal noncompliance in the insurance industry, if such could be proven, cannot excuse conduct that violates the governing statute. Authority on this point appears in Plaintiffs reply brief in support of his early motion for partial summary judgment. See, Doc. 166 at 9-10.

The Court should exclude all argument, testimony, and evidence supporting the argument that HCSC is justified in handling claims according to an industry standard that differs from what is required under Montana law.

**3.  Arguments, testimony, and evidence contrary to 30(b)(6) testimony or where HCSC withheld such testimony.**

"[T]he testimony of a Rule 30(b)(6) designee represents the knowledge of the corporation… " *Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 538 (D. Nev. Mar. 24, 2008); *Pioneer Drive, LLC v. Nissan Diesel Am., Inc.*, 262 F.R.D. 552, 558 (D. Mont. Dec. 3, 2009) ("The designee speaks for the organization as a whole and must make efforts to be able to do so."). Rule 30(b)(6)

---

[1] Soundly rejecting the position HCSC asserts in this case, the *Booten* court ruled clearly and firmly: "If the plan is unable to make a rational decision on the basis of the materials submitted by the claimant, it must explain what else it needs." It did so in a discretionary clause ERISA case and despite observing, in 1997, that the rule was all too frequently disregarded by insurers.

"gives the corporation being deposed more control by allowing it to designate and prepare a witness to testify on the corporation's behalf." *United States v. Taylor,* 166 F.R.D. 356, 360 (M.D. N.C. Feb. 27, 1996).

Because the Rule 30(b)(6) designee speaks for the company, the company "generally cannot present a theory of the facts that differs from that articulated by the designated Rule 30(b)(6) representative." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1103 (9th Cir. 2018). For example, "the entity is not allowed to defeat a motion for summary judgment based on an affidavit that conflicts with its Rule 30(b)(6) deposition[.]" *Id.* A party "cannot rebut the testimony of its Rule 30(b)(6) witness when, as here, the opposing party has relied on the Rule 30(b)(6) testimony, and there is no adequate explanation for the rebuttal." *Id.*

A Rule 30(b)(6) deposition is appropriate to "demonstrate conclusively whether or not any [] mandatory policies, procedures, or regulations exist." *F.D.I.C. v. Dosland*, 50 F.Supp.3d 1070, 1081 (N.D. Iowa Oct. 7, 2014); see also *In re Camp Lejeune N.C. Water Contamination Litig.*, 263 F.Supp.3d 1318, 1350 n.164 (N.D. Ga. Dec. 5, 2016).

### a. HCSC may not contradict what it has admitted in 30(b)(6) depositions.

HCSC has filed declarations to contradict factual testimony of its designated corporate witnesses. For example, HCSC designee Dr. J.P. Pujol testified in several different ways that HCSC does not ask providers for additional needed records if

7

HCSC has some records for review; rather, HCSC uses the appeal process to determine if additional documentation exists. Doc. 239 ¶¶ 42, 43, 49.[2] This testimony matched the testimony of the MRU nurse and doctor who denied Rutherford's claims (Dunkirk and Warren-Ellis) as well as various judicial admissions. *Id.* ¶¶ 34-36, 38, 48-53.[3] Similarly, HCSC designee Ami Pillatzke, senior manager of compliance for BCBSMT, testified HCSC defers to Dunkirk and Ellis regarding their testimony on this subject. *Id*. ¶ 39.

However, HCSC subsequently contended "the evidence shows that when a claim is missing documentation, BCBSMT's practice is to request additional records." Doc. 160 at 2. HCSC filed a declaration of nurse Staci Burns which states: "If missing documentation leads to Medical Necessity denial, a member of the MRU (including a Medical Director) or their delegate may reach out to a provider to obtain additional documentation." Doc. 160-8 ¶ 9. This contradicts the 30(b)(6) testimony

---

[2] "Q. (By Mr. Morrison) So you take whatever records are provided, and a claim decision is made. If those records do not satisfy the requirements of the medical policy as to medical necessity, then the claim is denied. And if the provider wants to appeal that, they can appeal and send in more records, and the claim can be reconsidered at that time. A. Correct. Q. That's the process at HCSC? A. Correct." Pujol dep. 17:1-1, citied in Doc. 239 ¶ 42, citing Doc. 31-1. He also testified: "It's not the practice of HCSC to reach out to providers for that information" and it would be "impractical" to do so. Pujol dep. at 107-108, *Id*.

[3] "Q. So you only ask for additional documentation if you do not have documentation in the medical record from the date of service in question? A. Correct. Doc. 239 ¶ 35, citing Dunkirk depo. 51:14-52-16.

given by Pujol, the testimony of Dunkirk and Ellis adopted by Pillatzke, and layers of other admissions by HCSC.

Similarly, Dr. Warren-Ellis testified that she made medical necessity denial decisions based on what she was given and did not even know how to go about asking for additional information. Doc. 239 ¶ 38. Again, HCSC in 30(b)(6) deposition has deferred to her on this. *Id*. ¶ 39. And the HCSC SOP for NMN denials is consistent with that. *Id*. ¶ 45. Yet HCSC now cites Dr. Matthew Smith, an author of the SOP, for the claim that the SOP is a "baseline" that "does not prohibit a medical director from contacting the member's provider for additional information." Doc. 210 at 7-8.

The Court should exclude testimony, evidence, and argument that contradicts what HCSC has admitted and adopted in its 30(b)(6) depositions.

**b. HCSC should not be allowed to offer fact testimony or evidence regarding subjects on which its 30(b)(6) witnesses were unprepared to answer questions.**

HCSC splintered its 30(b)(6) testimony among multiple witnesses. One, Mark Tomaszweski, was designated to address just one subsection of a topic that related to claim denial data reported by the Kaiser Family Foundation. Yet he came unprepared to address the accuracy of most of the data reported by KFF. HCSC should not be allowed at trial to question the accuracy of that data after depriving Rutherford the opportunity to question the company about the subject. This data

9

shows that HCSC has far higher denial rates than other carriers in Montana. Tomaszewski in his deposition contended that the denial rate in one category should be 39% (he did not calculate decimals) rather than the reported 40% (compared to single digits for other carriers); he did not otherwise identify any inaccuracy with respect to Montana data.[4] HCSC should not now be permitted to question the accuracy of the same data. Therefore, the Court should exclude previously undisclosed opinions, calculations, or criticisms concerning the accuracy of KFF market-share data or related statistical information.

Another HCSC 30(b)(6) witnesses was Ami Pillatzke, senior manager of compliance, who testified she was not aware of any rules that govern the collection of medical records at HCSC prior to a claim decision. Do. 239 ¶ 26. HCSC should not be allowed at trial to contend that such rules exist.

Despite the narrow focus of the testimony each of the HCSC multiple corporate witnesses was responsible for, there is a list of subjects that these witnesses were unprepared to address. HCSC should be precluded from offering testimony,

---

[4] Q. You do not have any reason to believe that any of the data about Montana denial rates in Exhibit 123 are inaccurate? *** A. I think the question was it being for Blue Cross Blue Shield Montana on Row 44 of the exhibit, the data is not complete in the Kaiser Family Foundation file here. And the in-network denial rate was 39 percent, not 40 percent. We -- I would have to look at the other data, the updated data, to tell you if the other numbers moved or not. Q. But at this time you're not prepared to identify any other inaccuracy; correct? A. Not at this time, no." Tomaszewski dep. 58:14-59:6.

10

evidence, or argument regarding subjects within properly noticed topics for which its witnesses were designated but unable to answer questions.

### c. HCSC should not be allowed to offer fact testimony or evidence regarding topics on which it failed to produce witnesses to testify.

Because HCSC splintered its 30(b)(6) testimony among multiple witnesses designated to testify to only narrow subject areas, topics remained uncovered as the close of discovery neared. These topics had been noticed well in advance of that cutoff. The parties, by agreement, continued to take depositions after the close of discovery and the parties were very busy completing discovery. On April 3, 2026, Plaintiffs' counsel emailed HCSC counsel about remaining 30(b)(6) topics. On April 9, HCSC advised that discovery had closed and HCSC would not produce witnesses on these topics or meet and confer. On April 14, Plaintiffs' counsel replied and explained that Plaintiffs would seek Court intervention if HCSC did not meet and confer; HCSC then agreed to meet and confer. A call was conducted Friday April 17. Plaintiffs provided a summary afterword. See Exhibit 1, attached. The discussion included 30(b)(6) topics such as whether HCSC checked its own records as part of the medical necessity review process (Topic 4i) (HCSC agreed to provide "something akin to an interrogatory answer" confirming that *claim reviewers do not look at internal HCSC payment systems for that information as part of their medical necessity review process*); whether HCSC possesses any evidence of options given to MRU MDs for investigating beyond looking at records given to them by the nurse

11

(Topic 4j) (*HCSC said there was nothing other than the SOP to back up its claim that medical directors may do additional investigation*; Plaintiffs asked for a discovery answer containing this information as well); whether HCSC tracks medical necessity denials other than quantification done specifically for this case (Topic 6) (*HCSC said it does not track NMN denial rates in the normal course of business*; Plaintiff asked for this in writing); analysis of staffing adequacy for NMN reviews (Topic 7) (HCSC said *there is no specific analysis of the adequacy of staffing or metrics tracking denial rates* other than the CMS/KFF data; Plaintiffs asked for this in writing). The parties also discussed HCSC's failure to respond to Requests for production seeking denial letters. (RFP 38-40). HCSC had agreed to meet and confer about the scope of these requests but never produced the requested documents. Plaintiffs asked that HCSC at least produce the NMN denial letters from July and August 2023. HCSC counsel said they would discuss this with their client.

HCSC did not respond to Plaintiffs' summary and did to provide any of the requested written confirmations of fact. HCSC thwarted Plaintiffs' ability to obtain this information in discovery and should not be permitted at trial to introduce new evidence, testimony, or arguments on these subjects.

## 4. Denials of Rutherford's MPSJ and Motion for Certification.

Last year, Rutherford filed an early motion for partial summary judgment which was denied. A revised motion with substantially more evidence has recently

been submitted. If the motion is granted, in whole or in part, the jury should be instructed accordingly. However, to the extent the motion is denied, the Court's Order should not be shared with the jury. The same is true with respect to all or part of the motion for class certification that has been denied.

A denial of summary judgment is not evidence and is not a finding of fact. It merely reflects the Court's procedural determination that a factual dispute existed on a pretrial record. Informing the jury that the Court denied summary judgment would improperly convey the Court's assessment of the sufficiency of the evidence and create a substantial risk that jurors would defer to the Court's perceived view of the merits rather than independently evaluate the evidence presented at trial. Any marginal relevance is substantially outweighed by the danger of unfair prejudice, confusion of issues, and misleading the jury under FRE 403.

Likewise, comments by the Court in such orders should generally be inadmissible. *See, Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 769 F. Supp. 671, 704 (D. Del. 1991), *aff'd*, 988 F.2d 414 (3d Cir. 1993) (Trial court's "comments on the issues on which he denied summary judgment are not 'decisions' within the meaning of the law of the case doctrine"). *See also, Ensource Invs. LLC v. Willis*, No. 3:17-CV-00079-H-LL, 2020 WL 532376, at *1 (S.D. Cal. Feb. 3, 2020), citing *United States v. Sine*, 493 F.3d 1021, 1033–37 (9th Cir. 2007) (Finding "evidence of a judge's statements 'directly opining on [a party's] motivations and

truthfulness' in a prior civil hearing was inadmissible under Rule 403, since it 'heavily weigh[s] on the unfair prejudice side of the balance.' *Id.* at 1035")

**5.  Depositions taken in violation of this Court's Pro Hac Vice Orders.**

HCSC has been represented by at least 17 lawyers in this case, including Daniel Auerbach, Christy McCann, Elizabeth Hecker, Emily Kuwahara, Martin Bishop, Robert Deegan, Tracy Roman, Crinesha Berry, Eric Fellemen, Kaman Chow, Lauren Short, Emily Tucker, Alessandra Allegretto, William Sheridan, Dianna Wyrick, Sean Slanger, and HCSC in house litigation counsel Jason Pesick. Sheridan and Allegretto (Doc. 40), Deegan (Doc. 59), Roman (Doc. 123), Hecker (Doc. 135), and Kuwahara (Doc. 149) were admitted pro hac vice by this Court. Each Order stated that it was personal to the lawyer admitted. (E.g., "Admission is personal to Ms. Roman, not the law firm she works for.") Deegan, Roman, Hecker and Kuwahara all signed acknowledgements and promised to follow these rules. Docs. 60, 137, 139, 154.

This Court's Local Rules make clear that pro hac vice admission is necessary to "participate in a particular case." L.R. 83.1(d)(1). They further dictate that "Local counsel must participate actively in all phases of the case, including, but not limited to, attendance at depositions…." L.R. 83.1(d)(7).

It appears from transcripts (most were taken remotely) that local counsel did not participate in most of the depositions taken and defended by the Crowell &

14

Moring team. See, depositions HCSC defended without local counsel: Lisa Kelly, Mark Tomaszewski, Makilah Alexander, Catherine Cuenca, Staci Burns, Matthew Smith; depositions HCSC took without local counsel: Yvonne Hencley, Kimberlee Hewett, Kim Holland, Steven Ross Figge, Richard Miltenberger, Greg Munro, Linda Peeno, Johnny Rutherford, Mary Rutherford.

More importantly, the depositions of Hewitt, Munro and Figge appear to have been taken (remotely) by attorneys not admitted pro hac vice, with no pro hac vice admitted attorney in attendance, and without local counsel, all in violation of this Court's Orders and the pledges signed by PHV counsel. Plaintiffs were not familiar with the details of those orders and did not raise objections at the time but believe that the attorneys who were admitted by the Court PHV were responsible for knowing those orders and adhering to them.

"Federal courts have inherent and broad regulatory authority to make rules respecting the admission, practice, and discipline of attorneys in the federal courts." *Gallo v. U.S. Dist. Ct. For Dist. of Arizona*, 349 F.3d 1169, 1179–80 (9th Cir. 2003) The Court's limitations on PHV admission are imposed for reasons that include accountability and preventing one side from having an unfair advantage. Evidence obtained in violation of discovery obligations may be excluded. Rule 37(c), 30(d)(2), F.R. Civ. P. Having ignored the conditions under which the Court authorized

15

participation in this case, HCSC should not now obtain the benefit of testimony procured through those unauthorized appearances.

## 6.  Evidence Regarding Mary's Financial Condition

This Court dismissed the claims of Mary Rutherford on grounds that she was not a party to the insurance contract. Doc. 70 at 18-20. The Court held that she did not have an emotional distress or loss of consortium claim absent the type of evidence of physical symptoms that were present in the *Butler* case.[5] Because that type of evidence does not exist, Plaintiffs did not amend their Second Amended Complaint (removed from state court) to add additional facts of that kind. While Plaintiffs respectfully disagree with the Court's Order on this point, it appears clear from the Order that Mary Rutherford may not seek damages at trial.

The emotional distress in this case, as in most cases of wrongfully denied and delayed claims, is tied directly to the risk of financial harm related to the insurance claim denial. Here, John Rutherford was a state employee with a modest income. Mary Rutherford is the executive director of the Montana Community Foundation and has a more generous salary. Given that Mary's claims have been dismissed, the Court should also exclude evidence regarding Mary Rutherford's personal finances, assets, bank accounts, income, or financial condition because such evidence is

---

[5] *Id.*, citing, *Butler v. Unified Life Ins. Co.,* No. CV 17-50-BLG-SPW-TJCC, 2018 WL 4473883, at *4 (D. Mont. July 18, 2018), report and recommendation adopted, No. CV 17-50-BLG-SPW, 2018 WL 4462502 (D. Mont. Sept. 18, 2018).

irrelevant to the issues remaining for trial and creates a substantial danger of unfair prejudice, confusion, and distraction. Moreover, Mary's personal finances, to the extent they mitigated the risk of financial harm posed by HCSC's denial of Rutherford's claims, would constitute a collateral source that would be inadmissible under Mont. Code Ann. § 27-1-308.

**7.   Linda Peeno's 2007 License Suspension**

One of Rutherford's experts is a former health insurance company medical director who gained notoriety as a whistleblower exposing unlawful medical necessity denials. She was a licensed medical doctor who did not work as a practicing physician. HCSC counsel noted at deposition that she does not list licenses on her resume. She testified that she did not renew her medical license "in the early 2000s, because she had "completely shifted to medical ethics work." Peeno depo. 67:6-11. See Exhibit 2, attached. HCSC counsel then presented her with a 2007 Kentucky Board of Licensure suspension for not completing continuing medical education requirements. *Id.* at 68. This evidence should be excluded because the event is remote in time, unrelated to the issues in this case, and Dr. Peeno's testimony in this case involves claim handling rather than medical decisions. Any probative value is substantially outweighed by unfair prejudice.

**8.  Argument that HCSC's appeal process is part of the investigation or that it was still "deciding" the Rutherford claim after denial.**

HCSC has repeatedly argued in its briefing and before this Court that it uses the appeal process to investigate medical necessity claims. Doc. 239 ¶ 49-53. As Rutherford has noted in his briefing, the Montana Supreme Court made clear in *Lorang* that the investigation must be performed *before* the denial, and subsequent payments cannot cure a previous bad faith denial without obtaining the information necessary to make an informed decision.[6] The jury should be instructed about the key dictates of *Lorang*. Additionally, though, to prevent jury confusion, HCSC should be precluded from arguing that it did not deny Rutherford's claim on July 21, 2023. As HCSC admitted on May 20, 2025:

> 6.    Approximately one month after surgery, on July 21, 2023, Plaintiffs were informed that BCBSMT denied coverage for the surgery as "not medically necessary" under the terms of the Plan.

Doc. 74. See also, Doc. 239 ¶¶ 15-18.

---

[6] *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 86, 345 Mont. 12, 35, 192 P.3d 186, 204; *Lorang,* ¶¶ 134, 154, 180; See also, *McVey v. USAA Cas. Ins. Co.*, 2013 MT 346, P24, 372 Mont. 511, 515-516, 313 P.3d 191, 195, citing, *Lorang*, ¶ 149. ("A later payment fails to cure an insurer's prior failure to conduct a reasonable investigation, as required by § 33-18-201(4), MCA.")

18

HCSC further should be prohibited from arguing or presenting evidence that it performed the requisite pre-denial investigation[7] during the appeal process.

## 9. Conversations Allegedly Overheard During Deposition Breaks.

The depositions of John and Mary Rutherford were taken in the Browning law firm offices in Helena. During a break in the deposition, Rutherford's met with their counsel in a separate adjacent room. Unknown to them, the wall was not soundproof and HCSC counsel advised when they returned to the deposition room that they could hear the conversation.

In the deposition of one of Plaintiffs' experts, which was taken by zoom, HCSC also overheard conversation between Rutherford's counsel and the expert during a deposition break, over a microphone that was inadvertently and unknowingly not muted by the witness, before HCSC counsel announced themselves.

Both of these conversations were non-discoverable and inadvertently disclosed. Accordingly, the Court should exclude any testimony, argument, or evidence concerning conversations allegedly overheard during deposition breaks

---

[7] There is no dispute that, based on Montana's insurance code and the Montana Supreme Court's decision in *Lorang*, § 33-18-201 is "Designed to protect claimants against insurers who would deny a claim without first conducting a reasonable investigation." Doc. 239 ¶ 67 (quoting Ridgeway Deposition at 151:22-152:2)

19

where counsel and witnesses reasonably believed they were speaking privately and were not informed that others could hear the conversation.

**10. Alleged fault of Non-Parties should be excluded.**

As the Court knows, the only records request that was issued to Mayo Clinic prior to HCSC denying Rutherford's claims as not medically necessary was sent by Blue Cross Blue Shield of Minnesota (BCBSMN) pursuant to the rules that Blue Cross Association members follow regarding communications with network providers in other states. The Court is also aware that the BCBSMN letter sent to Mayo (BCBSMT_1068) did not identify the items that the HCSC MRU later determined were required to establish medical necessity.

The Court should exclude testimony, argument, or evidence from HCSC attempting to place responsibility on BCBSMN rather than HCSC for the shortcomings of this request. First, the duties imposed by § 33-18-201 run directly to HCSC. An insurer cannot avoid statutory liability by delegating portions of its investigation to third-party vendors, affiliated entities, nurses, or medical directors. The investigation either complied with § 33-18-201(4) or it did not. Second, the Montana Code precludes comparison of fault with persons that could have been named as a party but were not. Mont. Code Ann. § 27-1-703(6)(c)(iii). See also, *Faulconbridge v. State*, 2006 MT 198, ¶ 81, 333 Mont. 186, 142 P.3d 777, citing, *Plumb v. Fourth Jud. Dist. Court, Missoula County* (1996), 279 Mont. 363, 379, 927

20

P.2d 1011, 1021 ("A defendant may not . . . introduce . . . non-party conduct in an attempt to merely diminish its own responsibility, for this would constitute an attempt to apportion fault to a non-party.")

## 11. Evidence, Insinuation or Argument attempting to place fault on Plaintiffs should be excluded.

HCSC has not thus far indicated that it intends to argue Rutherford was at fault in some way for HCSC's denial of his claims. However, to prevent this from becoming an issue at trial, Plaintiffs ask the Court to exclude any evidence, insinuation or argument attempting to place blame or responsibility on Plaintiffs. Defendants have not pled comparative fault or contributory negligence as affirmative defenses or otherwise suggested in their pleadings that Rutherford's were at fault. Doc. 97 at 72 et seq.

## 12. Undisclosed and Late-Produced Documents

On March 25, 2026, two days before the close of discovery, HCSC produced two additional volumes of documents, Bates stamped BCBSMT_24140-26536. HCSC advised these documents "were not produced in response to specific discovery requests and contain documents that BCBSMT may use to support its defenses and/or arguments opposing class certification." On April 15, HCSC provided additional documents, again not responsive to any discovery question but for HCSC's own use. BCBSMT_26553-26842.

These documents were not timely produced as part of the initial disclosure process and were produced so late in the process that Plaintiffs had no meaningful opportunity to conduct discovery about them. Plaintiffs ask the Court to preclude HCSC from introducing these documents. Alternatively, at the very least, Plaintiffs should be allowed the opportunity to depose the company about these nearly 3000 pages of additional documents.

## AFFIRMATIVE MOTIONS

### 1. *Lorang* sets the standard.

Plaintiffs have sought partial summary judgment in their favor on liability based on the undisputed evidence and the applicable law set forth in § 33-18-201, MCA and *Lorang*. Doc. 238. This law establishes the "rules of the road" applicable to HCSC in this case. As discussed above, HCSC's expert Michael Ridgeway, a former insurance department counsel in Oklahoma, agrees that this state law sets the industry standard. Regardless of whether this motion is granted, the Court should make clear that the rules set forth in §201 and *Lorang* govern HCSC's claim handling in this case.

### 2. *Dunkirk and Ellis are, at a minimum, managing agents of HCSC. Therefore, their testimony may be used by Plaintiff for "any purpose."*

Federal Rule of Civil Procedure 32 states that "an adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)." Fed.

22

R. Civ. Pro. 32(3). In this case, Dunkirk and Ellis meet the definition of managing agents.

"[C]ourts consider multiple factors when determining whether an individual is a managing agent, including: (1) whether he has general powers allowing him to exercise judgment and discretion in corporate matters; (2) whether he can be relied on to testify, at the corporation's request, in response to the discovery proponent's demands; (3) whether there are any other employees who have more authority than the individual in regard to information concerning the subject matter at issue in the case; (4) his general responsibilities respecting the matters involved in this litigation; and (5) whether he can be expected to identify with the interests of the corporation. No single factor is conclusive, and courts typically focus on the degree of control the individual has over the corporate affairs at issue." *Vision Ctr. Nw. Inc. v. Vision Value LLC*, No. 3:07-CV-183 RLM, 2008 WL 4276240, at *3 (N.D. Ind. Sept. 15, 2008), *aff'd*, No. 3:07-CV-183, 2008 WL 4724722 (N.D. Ind. Oct. 21, 2008) (internal citations omitted) (emphasis added).

A formal association between the deponent and the party corporation is not required to establish "managing agent" status. *Libbey Glass, Inc. v. Oneida, Ltd.,* 197 F.R.D. 342, 350-51 (N.D. Ohio 1999), *Calgene, Inc. v. Enzo Biochem, Inc.,* 1993 WL 645999, at *8 (E.D.Cal.1993) (finding a deponent who had power over the subject matter of the litigation to be a "managing agent")).

23

"The burden is on the examining party to establish the status of the deponent as an officer, director, or managing agent, <u>but this burden is a "modest" one and any doubts are resolved in favor of the examining party</u>." *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 333 (D. Nev. 2016). (emphasis added).

In this case, Dunkirk and Ellis were the agents of HCSC and constituted the medical review unit that denied Rutherford's claim. HCSC has said they exercised judgment in making their decisions. Doc. 239 ¶ 14. They testified about the process used in the for reviewing claims for medical necessity. This testimony has been described in detail in the briefing and evidence that is already in the Court record. See Doc. 239 ¶¶ 34-38. Notably, HCSC's 30(b)(6) representative testified that HCSC defers to Dunkirk and Ellis regarding the MRU process. *Id.* ¶ 39; Doc. 191-3 (Pillatzke depo. 56:1-17.) Because HCSC defers to Dunkirk and Ellis and relied upon their judgment and understanding of the process, they meet the definition of 'managing agent' under Fed. R. Civ. Pro. 32. Accordingly, the Court should rule in limine that Plaintiffs may use the depositions of these witnesses for any purpose.

## CONCLUSION

Plaintiffs respectfully ask the Court to grant their motions in limine as detailed above.

//

24

DATED this 12th day of June, 2026.

By:_____

       John M. Morrison
       MORRISON, SHERWOOD, WILSON & DEOLA, PLLP

25

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(d)(2)(E) of the Montana Federal Local Rules of Procedure, I certify that the foregoing document is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double spaced; and the word count calculated by Microsoft Word 2016 for Mac is **5,795** excluding table of contents, table of authorities, certificate of compliance and certificate of service.

DATED this 12th day of June, 2026.

By: John M. Morrison
Scott L. Peterson
MORRISON, SHERWOOD, WILSON & DEOLA PLLP

Justin P. Stalpes
Conner C. Bottomly
BECK, AMSDEN & STALPES PLLC

*Attorneys for Plaintiffs*

26