**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION**

| | |
|---|---|
| JOHNNY C. RUTHERFORD, JR. and MARY RUTHERFORD, and JOHNNY RUTHERFORD on behalf of those similarly situated,　　　　　Plaintiffs,　　　　　v.　　HEALTH CARE SERVICE CORPORATION, A Mutual Legal Reserve Company, doing business in Montana as Blue Cross and Blue Shield of Montana, and MONTANA UNIVERSITY SYSTEM,　　　　　Defendants. | **Case No. CV-24-81-H-BMM**　　**ORDER** |

**INTRODUCTION**

Plaintiffs Johnny C. Rutherford, Jr., Mary Rutherford, and Johnny

Rutherford on behalf of those similarly situated (collectively "Rutherford"), moves

for partial summary judgment against Defendants Health Care Service Corporation

doing business in Montana as Blue Cross Blue Shield of Montana and the Montana

University System (hereinafter "HCSC" and "MUS" respectively). (Doc. 237.)

HCSC opposes the motion. (Doc. 268.)

HCSC also moves for summary judgment against Rutherford on all claims.

(Doc. 233.) Defendant MUS joined in support of HCSC's summary judgment

motion. (Doc. 259.) Rutherford opposes the motion. (Doc. 263.) The Court held a hearing on the cross-motions for summary judgment on July 8, 2026. (Doc. 280.)

## BACKGROUND

MUS employed Rutherford as the facilities director of the Helena College, University of Montana. (Doc. 4 at 3.) MUS provided health insurance to Rutherford under Montana University System Group Benefits Plan ("Plan"). (*Id*.) HCSC administers the Plan. (*Id*.) Rutherford experienced two herniated discs in his spine that caused him severe pain. (*Id*. at 4.) Rutherford's pain affected his ability to work. (*Id*.) Rutherford underwent several pain management treatments and physical therapy sessions to alleviate the pain, but nothing fully mitigated his pain. (*Id*. at 5.)

Rutherford sought treatment at the Mayo Clinic ("Mayo") in Rochester, Minnesota. (*Id*.) Dr. Arjun Sebastian ("Sebastian") determined that Rutherford's nerve roots had been severely compromised. (*Id*.) Sabastian recommended that the performance of surgical repair on the nerves represented the best treatment option. (*Id*.) Rutherford sought to have MUS and HCSC pay for Rutherford's surgery. (*Id*.) Mayo sought pre-authorization from HCSC. (*Id*. at 6.) HCSC responded that it did not require pre-authorization. (*Id*.)

Sebastian performed the surgery and completely alleviated Rutherford's pain. (*Id*.) HCSC requires the type of surgery performed on Rutherford to undergo a "medical necessity and experimental, investigations or unproven" review before

approving the cost of the surgery. (*Id*. at 6.) HCSC received Rutherford's claim and initial medical records regarding Rutherford's surgery from Mayo on July 1, 2023. (Doc. 236 ¶ 5.). The original documents sent by Mayo did not include a copy of Rutherford's MRI results. (*Id*. ¶ 6.) The original documents described Rutherford's progression of cervical compression, non-operative treatment attempts, and the successful surgical procedure performed. (Doc. 239 ¶ 8.)

Blue Cross Blue Shield Minnesota ("BCBS Minnesota") sent a medical records request on July 6, 2023, asking Mayo to provide records of Rutherford's history and physical treatment plan indicating "services, testing, and procedures" performed. (Doc. 234-7.) BCBS Minnesota requested Mayo provide Rutherford's medical records within 10 days. (*Id*.) Mayo sent additional records to BCBS Minnesota twelve days later on July 18, 2023, that referenced in the physician notes Rutherford having undergone an MRI. (Doc. 236 ¶ 9.) Mayo's additional records did not contain Rutherford's MRI report or imaging. (*Id*.) Mayo's additional documents described positive CT scan results and physician notes indicating Rutherford had undergone X-rays, an MRI, and CT scans. (Doc. 239 ¶ 10, 11.) BCBS Minnesota faxed the additional documents to HCSC. (*Id*. ¶ 10.) HCSC contends it received Mayo's additional documents on July 20, 2023. (*Id*.; Doc. 236 ¶ 9.)

HCSC's Medical Review Unit ("MRU") alleges it conducted its review before having received the additional records from Mayo. The nurse medical necessity claim reviewer ("Nurse Reviewer"), Kelly Dunkirk ("Dunkirk"), reviewed Rutherford's claim on July 19, 2023. (Doc. 239 ¶ 12.) Dunkirk's review of Rutherford's claim remained limited to the documentation Mayo originally had provided on July 1, 2023, and not the additional documents sent to BCBS Minnesota on July 18, 2023. (*Id*.) Dunkirk concluded that Rutherford's claim did not meet the medical policy's medical necessity requirements. (*Id*.) Dunkirk reasoned that Rutherford's claim lacked documentation "to support radiographic evidence of cervical nerve root compression (as document by MRI)." (*Id*.) HCSC's medically necessary review policy requires that a medical director ("MD") review any denials made by Nurse Reviewers.

MD, Dr. Warren-Ellis ("Warren-Ellis"), conducted her review of Rutherford's claim on July 20, 2023. (Doc. 236 ¶ 9.) Warren-Ellis's review also remained limited to the first set of documents sent by Mayo as HCSC contends it had not yet received the documents from BCBS Minnesota. (*Id*.) Warren-Ellis denied Rutherford's claim for the same reasons as Dunkirk—Rutherford's claim lacked documentation of an MRI. (*Id*.) HCSC notified Rutherford on July 21, 2023, that his surgery had been deemed "not medically necessary" as his files contained "[n]o documentation to support radiographic evidence of cervical nerve root compression (as documented

by MRI.)" (*Id*. ¶ 10.) The letter notified Rutherford that he had the right to appeal the denial decision and provide additional documentation for coverage. (*Id*.) Mayo filed an appeal on Rutherford's behalf on September 13, 2023. Sebastian subsequently submitted a letter outlining the reasons why he thought Rutherford's surgery had been medically necessary. (Doc. 4 at 10; Doc. 236 ¶ 17.)

Rutherford filed his complaint in Montana state court on December 15, 2023. (Doc. 3 at 17.) Following Rutherford's filing and service of his complaint on HCSC, Rutherford contends that HCSC, after involvement with its legal team, initiated an "executive inquiry" into Rutherford's claim in January 2024. (Doc. 4 at 12, 29.) HCSC contends that Rutherford's appeal remained pending during the time Rutherford filed suit. (Doc. 234 at 23-24.) HCSC claims it completed Rutherford's appeal during the allotted appeal timeline. (*Id*.) Following the appeal and the filing of Rutherford's suit, HCSC subsequently withdrew its denial, approved, and paid Rutherford's claim in full in January 2024.  (Doc. 4 at 12-13, 29.)

## PROCEDURAL HISTORY

Rutherford filed an individual complaint in Montana state court against HCSC and MUS December 15, 2023. (Doc. 3.) Rutherford amended his complaint to include class claims in October 2024. (Doc. 4.) Rutherford's complaint alleged the following claims against HCSC and MUS: (1) common law bad faith; (2) breach of fiduciary duty; (3) consumer protection act violations; (4) breach of contract; (5)

breach of the implied covenant of good faith and fair dealing; (6) agent liability of HCSC; and (7) negligence. (Doc. 4.) Rutherford also asked for the following relief and asserts his class action causes of action: (8) request for declaratory judgment; (9) request for injunction; (10) common law baith faith; (11) violation of the Montana Unfair Trade Practices Act; (12) negligence per se; (13) violation of the consumer protection act; and (14) unjust enrichment. (Doc. 4 at 25-43.)   HCSC removed the action to federal court on November 14, 2024, asserting diversity jurisdiction. (Doc. 1.) Rutherford subsequently filed a motion for class certification, and appointment of class counsel, on January 3, 2025. (Doc. 29.) HCSC filed a motion to stay Rutherford's motion to certify the class arguing Rutherford's class certification order proved premature. (Doc. 41.)

The Court granted Rutherford's motion for class certification under Rule 23(b)(2) and Rule 23(b)(1) and denied HCSC motion to stay. (Doc. 96.)  HCSC filed motions for reconsideration of class certification. (Doc. 101; Doc. 124.) The Court granted HCSC's motions for reconsideration of class certification. (Doc. 105; Doc. 111; Doc. 183.) The Court vacated its previous class certification ruling (Doc. 96) that had established a Rule 23(b)(2) class and Rule 23(b)(1) class. (Doc. 105 at 9; Doc. 111; Doc. 183 at 22.)

The Court allowed Rutherford to file a supplemental motion for class certification. (Doc. 183 at 23.) Rutherford filed a renewed motion for class

certification and appointment of class counsel on April 10, 2026, seeking class certification under Rule 23(b)(3) and Rule 23(c)(4). (Doc. 199.) The Court denied Rutherford's class certification motion reasoning that Rutherford lacked Article III standing to assert the requested prospective relief of reprocessing. (Doc. 230.)

The Court also previously denied Rutherford's motion for summary judgment on December 19, 2026. (Doc. 183.) The Court determined that genuine issues of material fact remained on whether HCSC's conduct violated Montana's Unfair Trade Practices Act ("UTPA"), Mont. Code Ann. §33-18-201(4), by denying Rutherford's claims without performing a reasonable investigation based on all available information. (*Id*.)

## LEGAL STANDARD

Summary judgment proves appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248.

A court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 323. A court must enter summary judgment if "the

7

nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which [they have] the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## DISCUSSION

The Court addresses competing motions for summary judgment submitted by Rutherford and HCSC. (Docs. 233 and 237.) Rutherford argues that the undisputed facts establish that HCSC violated Mont. Code Ann. §§ 33-18-201(4) and (6) as a matter of law. (Doc. 238.) On the other hand, HCSC argues that the evidence shows HCSC's investigation of Rutherford's claim was objectively reasonable and did not violate Montana's UTPA. (Doc. 234.)

## I.      Competing Motions for Summary Judgment

HCSC argues that summary judgment on all of Rutherford's claims proves appropriate because the record shows that "[n]o reasonable fact finder could conclude that [HCSC] failed to conduct a reasonable investigation based on all available information and the undisputed evidence shows that [HCSC] had a reasonable basis in law and fact for contesting Rutherford's claim." (Doc. 234 at 8.) Rutherford contends to the contrary that the undisputed facts establish that HCSC's conduct in handling Rutherford's claim violated Mont. Code Ann. § 33-18-201(4). (Doc. 238 at 6.) Rutherford argues that HCSC violated Montana law by failing to conduct a "reasonable investigation based on all available information

before a claim" was denied and by failing to promptly settle the claim when liability was reasonably clear. (*Id*.)

HCSC also moves for summary judgment on several of Rutherford's claims for relief including the following: (1) punitive damages, (2) medical expenses, (3) consequential economic damages, and (4) prospective relief. (Doc. 234 at 8.) The Court will address each issue in turn.

### A. Whether HCSC's conducted a reasonable investigation under Mont. Code Ann. § 33-18-201(4).

Montana's Unfair Trade Practices Act ("UTPA") states that "[a] person may not, with such frequency as to indicate a general business practice, do any of the following: . . . (4) refuse to pay claims without conducting a reasonable investigation based upon all available information." Mont. Code Ann. § 33-18-201(4). An insurer's reasonableness in conducting a claim investigation is a factual question "ordinarily resolved by the jury." *Lorang v. Fortis Ins. Co*., 192 P.3d 186, 214 (Mont. 2008). A court may resolve questions of fact on summary judgment, however, if "reasonable minds could reach but one conclusion." *Id*.

"The Legislature has utilized unmistakable terms which establish that all information available to the insurer must be considered" in order for an insurance company to have conducted a reasonable investigation pursuant to Mont. Code Ann. § 33-18-201(4). *Id.* at 204. Further, "the issue of whether an insurer's investigation was reasonable requires an analysis of all information available to the

9

insurer when it denied the claim" and "at a minimum" requires consideration of "the insurer's own records." *Id*. The UTPA standard and public policy focus on "what the *insurer knows* at a particular point in time." *Id.* (quoting *Graf v. Cont'l W. Ins. Co.*, 89 P.3d 22 (Mont. 2004)) (emphasis in original).

The Montana Supreme Court has determined that an insurer's duty to conduct a reasonable investigation provides "that the adjuster obtains enough information to make an informed decision." *Lorang*, 192 P.3d at 216. By virtue of this obligation to obtain information, one reasonable step in the investigative process before denial requires insurers to take steps to locate pertinent information to the claim. *Id*. The Montana Supreme Court has further concluded that the inquiry into whether an insurance company conducted a reasonable investigation requires an analysis of the insurance companies conduct *before* it denies the claim, and that "conduct after the denial cannot operate to satisfy the statutory obligation to conduct a reasonable investigation before denial." 192 P.3d at 216.

The Court first determines that the relevant conduct regarding HCSC's investigation pertains to what HCSC did before it sent its initial denial to Rutherford on July 21, 2023. The Court remains unpersuaded by HCSC's argument that its initial denial letter sent to Rutherford does not constitute a "refusal to pay" or "denial" under Mont. Code Ann. § 33-18-201(4) because it

provided Rutherford an opportunity to appeal and provide the necessary documentation for approval and coverage. (Doc. 234 at 19-26.)

The Montana Supreme Court has made clear that a reasonable investigation must be completed *before* denial. *Lorang*, 192 P.3d at 216. Insurance companies have an obligation to reasonably investigate claims before it issues *any* denial of a claim, whether that denial comes after the initial claim investigation or after an insured completes an insurer's internal grievance process. Otherwise, insurers simply could fail altogether to conduct any investigation, send an initial denial letter, and then conduct a thorough and reasonable review.

HCSC had notified Rutherford that his claim had been denied on July 21, 2023, because they needed additional documentation of an MRI to provide coverage of his claim. HCSC further offered that Rutherford had the ability to appeal this denial and provide the missing documentation. Had Rutherford or Mayo failed to pursue the appeal, this denial letter HCSC sent on July 21, 2023, would have stood for HCSC "refusing to pay" and provided for HCSC's final determination of denial.

The Court determines that the relevant inquiry into whether HCSC's conduct proves objectively reasonable requires only an inquiry into HCSC's conduct on or before July 21, 2023. HCSC may not rely on its appeal process or further investigation into Rutherford's claim to establish it conducted a reasonable

investigation *before* denial. The Court also notes that Rutherford cannot rely on actions by HCSC following July 21, 2023, to establish Rutherford violated Mont. Code Ann. § 33-18-201(4). HCSC's conduct after July 21, 2023, and during the appeal process, however, remains relevant to Rutherford's other UTPA claims and damages. *See Lorang*, 192 P.3 at 216.

The Court cannot, as a matter of law, conclude that HCSC's conduct before denial of Rutherford's claim on July 21, 2023, violated Mont. Code Ann. § 33-18-201(4). Rutherford relies on *Lorang* to support his argument that HCSC's investigation of Rutherford's claim proves unreasonable as a matter of law. *Lorang* involved an insured who had her leg amputated and required the use of a prosthetic leg device requiring the replacement of "sockets" on a periodic basis. 192 P.3d at 191. The insured had submitted multiple claims for coverage of these replacement sockets spanning from 1993-2002. *Id*. The insurance company denied the claim each time, even though at all relevant times, the insured insurance policy "provided coverage for the cost of medically necessary replacement sockets." *Id*. Eventually, the insurance company would reverse its denials after the Insurance Commissioner intervened. *Id*.

Again in 2002, the insured submitted a claim for reimbursement of the replacement sockets that included a letter from the insured's doctor describing the medical necessity of the sockets. *Id*. The insured stressed that the insurer

previously had made payments for her covered replacement sockets. *Id*. The insurance company still refused to reconsider its denial, and the insured filed suit. *Id*. Despite having records in the claim files that the insurance company previously had paid for the insured's replacement sockets on numerous occasions, the insurance company argued it conducted a reasonable investigation into the submitted 2002 claim. *Id*. at 204. The Montana Supreme Court disagreed. *Id*. at 214.

The adjuster who handled the insured's claim in 2002 reviewed the records, including a note which stated that the insured's "claims for replacement sockets are not to be denied on a basis that such coverage is not available under the policy." *Id*. The adjuster acknowledged that she had reviewed the note, but that upon making the denial determination, she had forgotten that she should pay the claim. *Id*. *Lorang* concluded that an adjuster who reviews the pertinent information, and consequently forgets about the relevant information, and then denies the claim, has failed to conduct an unreasonable investigation. *Id*. *Lorang* reasoned that an insurance company's duty to conduct a reasonable investigation requires that "the adjuster obtains enough information to make an informed decision" and that, an adjuster forgetting the pertinent information contained in the claim files was "in effect, no different than a failure to conduct *any* investigation." *Id*. at 217 (emphasis in original).

*Lorang* provides guiding principles for the Court. The facts differ from *Lorang*. The Court cannot as a matter of law conclude that HCSC's investigation of Rutherford's claim was objectively unreasonable. Unlike *Lorang*, HCSC did not review relevant information in Rutherford's files that stated Rutherford had an MRI and then forgot about such pertinent information when rendering its denial. HCSC instead asserts that Rutherford's original claim submitted to HCSC did not include a report that Rutherford had undergone an MRI, but that HCSC took reasonable steps to locate the relevant information to approve Rutherford's claims. (Doc. 234 at 10.)

The parties dispute the following factual questions that remain pertinent to whether HCSC conducted a reasonable investigation under Mont. Code Ann. § 33-18-201(4): (1) whether HCSC's document requests to Mayo, through BCBS Minnesota, provided sufficient specificity for Mayo to know it needed to provide MRI records; (2) whether HCSC had "possession" of the documents, through BCBS Minnesota, on July 18, 2023, before initially reviewing and denying Rutherford's claim; and (3) in the event that Mayo's additional documents should reasonably have been reviewed or requested by HCSC, does reference to an MRI in physician notes suffice to establish documentation that an MRI was performed.

HCSC argues that its claims coordinators sought additional information from Rutherford's provider on July 6, 2023, through the state in which the treatment was

performed, BCBS Minnesota. (Doc. 234 at 10, 18.) BCBS Minnesota sent letters to Mayo outlining what information was necessary to approve Rutherford's claim, including information related to Rutherford's received "services, testing, and/or procedures." (*Id*. at 10.) BCBS Minnesota notified Mayo it had 10 days to provide the required information. (*Id*.) Rutherford disputes the reasonableness and specificity in which HCSC requested information from Rutherford's provider as its request letter did not explicitly mention an MRI. (*Id*. at 19.)

HCSC alleges that Mayo provided BCBS Minnesota with the additional documents on July 18, 2023, twelve days following the request. (*Id*. at 11.) HCSC argues that on July 19, 2023, after failing to receive the necessary documentation on Rutherford's MRI, HCSC's MRU reviewed the available pertinent information to Rutherford's claim and issued an adverse determination to Rutherford. (*Id*.) HCSC contends that it did not receive the additional documents from BCBS Minnesota that mentioned that Rutherford had undergone an MRI in the physician's notes until July 20, 2023, one day after HCSC had completed its medically necessary review. (*Id*.) HCSC argues that its investigation of Rutherford's claim proved reasonable as it had considered all the pertinent information available to HCSC at the time of review and that Rutherford's files lacked documentation of Rutherford's MRI report and imaging. (*Id*.) HCSC asserts that documentation of an MRI proved necessary to approve Rutherford's claim

15

under HCSC's medical policy. (*Id*.) HCSC's argument under these factual circumstances provides that unlike *Lorang*, it never received and then forgot the pertinent information before its claim review.

On the other hand, Rutherford disputes the timing of when Mayo produced the requested documents and when these additional documents became available to HCSC. Rutherford argues that Mayo transmitted the requested records to BCBS Minnesota on July 18, 2023, before HCSC had conducted its medical review. (Doc. 238 at 8.) Rutherford contends that HCSC's MRU failed to consider or request these records that were essential to the investigation of Rutherford's claim and available to them by July 18, 2023. (Doc. 238 at 10.) Rutherford argues that HCSC's MRU improperly reviewed only the limited first batch of documents Mayo had sent on July 1, 2023. (*Id*. at 8.) Rutherford further notes that the records produced by Mayo, but not considered by HCSC's MRU, "referenced positive CT scan finding and reflected a prior MRI." (*Id*.) Rutherford alleges that it proves unreasonable for HCSC's MRU to fail to consider available documents that reference Rutherford's MRI and for HCSC's MRU to fail to request the missing documentation before concluding that Rutherford's claim did not satisfy HCSC's medical policy. (*Id*.)

Rutherford further argues that HCSC delegated BCBS Minnesota as an agent of HCSC when they requested the initial documents from Mayo on HCSC's

16

behalf. (Doc. 263 at 20.) Rutherford contends that HCSC's agent BCBS Minnesota had possession of documents which referenced Rutherford's MRI on July 18, 2023, before HCSC's MRU reviewed Rutherford's claim. (*Id*. at 18-20.) Rutherford asserts that a reasonable investigation would have included consideration of the additional documents from Mayo. (*Id*.) HCSC disputes that the documents received by BCBS Minnesota on July 18, 2023, amount to HCSC having possession or availability of the documents at the time it made the adverse decision. (Doc. 234 at 11.) HCSC further claims that, even had HCSC been in possession of the additional documents produced by Mayo, the additional documents still failed to include Rutherford's MRI report and imaging. (*Id*.)

The Court declines to conclude that HCSC's conduct was objectively unreasonable or reasonable as a matter of law. Rutherford has not shown that HCSC failed entirely to conduct any investigation before its denial on July 21, 2023. HCSC has provided disputed evidence that it took steps, through initial record requests, to obtain the pertinent information relating to Rutherford's claim from Mayo. HCSC asserts that its claims coordinators made record requests to "the independent BCBS Plan in the state where treatment occurred (here, BCBS Minnesota) which in turn requests those records from its contracted provider who treated the member." (Doc. 268 at 30-31.) HCSC has not shown by undisputed evidence, however, that its investigation into Rutherford's claim before July 21,

2023, proved objectively reasonable given the factual disputes on when evidence of Rutherford's MRI became available for review.

The disputed material factual questions defeat summary judgment for either party. The timing and possession of when HCSC received documentation that Rutherford had undergone an MRI to satisfy HCSC's medical policy remains disputed. HCSC contends it did not receive Mayo's second batch of documents until the completion of the medically necessary review on July 20, 2023, and that these second batch of documents did not provide sufficient documentation of Rutherford's MRI report and imaging. (Doc. 234 at 11.)

Conversely, Rutherford argues that the requisite information regarding Rutherford's MRI was available to HCSC on July 18, 2023, when BCBS Minnesota received the additional documents submitted by Mayo. (Doc. 263 at 18.) Rutherford asserts that as the "designated" entity to receive the requested documents, BCBS Minnesota reception of Mayo's additional documents on July 18, 2023, extends to HCSC. (*Id.*) Rutherford argues that once those additional documents referencing an MRI in the physician notes available to HCSC should have been considered by HCSC and allowed Rutherford's claim to be approved. (*Id.*)

The Court cannot resolve these disputed questions of fact on summary judgment. The reasonableness of HCSC's actions in investigating Rutherford's

claim remains a factual question reserved for the jury. Reasonable minds could conclude that HCSC acted reasonably or unreasonably under these circumstances. *Lorang,* 192 P.3d at 214. The Court declines to address HCSC's alternative argument that it had a reasonable basis in contesting Rutherford's claim because the Court found that genuine dispute of material facts preclude summary judgment for either party. (*See* Doc. 234 at 27.) Genuine disputes of fact remain on whether HCSC had access to records that indicated Rutherford underwent an MRI, requiring approval of Rutherford's claim. This disputed fact proves essential to the determination of whether HCSC had a reasonable basis for contesting Rutherford's claim.

### B. Whether HCSC violated Mont. Code Ann. § 33-18-201(6) by failing to settle Rutherford's claim once liability became reasonably clear.

Montana's UTPA states that "[a] person may not, with such frequency as to indicate a general business practice, do any of the following: . . . (6) neglect to attempt in good faith to effectuate prompt, fair, equitable settlements of claims in which liability become reasonably clear." Mont. Code Ann. § 18-33-201(6). Rutherford argues that HCSC violated Mont. Code Ann. § 18-33-201(6) by denying Rutherford's claim for lack of evidence of cervical nerve root compression and conservative treatment. (Doc. 238 at 26.) Rutherford contends that at the time of the denial by Warren-Ellis, HCSC had evidence of cervical root nerve

compression and 6-weeks of unsuccessful conservative treatment documented in the initial records sent from Mayo. (*Id.*)

Rutherford further claims that Mayo's second batch of documents received on July 20, 2023, undisputedly indicated cervical nerve root compression and conservative treatment. (*Id.*) Rutherford claims that liability to pay Rutherford's claim became reasonably clear at this time, yet HCSC did not pay Rutherford's claim until January 2024. (*Id.* at 27.) Rutherford asserts at the very latest, liability became reasonably clear by September 20, 2023, when Sebastian sent HCSC a letter explaining that Rutherford's surgery was medically necessary. (*Id.*)

The court in *Cranska v. UMIA Ins., Inc.*, 709 F. Supp. 3d 1200, 1213 (D. Mont. 2024), *aff'd*, No. 24-947, 2025 WL 1098879 (9th Cir. Apr. 14, 2025), held that "whether liability was 'reasonably clear' is a question of fact for the jury." The court conducted a thorough review of the relevant case law and concluded that when a dispute of material fact exists, the court cannot make a holding as a matter of law. *Id.* Such a ruling necessarily would require the court to determine whether the insurer had a reasonable basis in fact to contest the claim. *Id.* This determination appropriately rests with the trier-of-fact. *Id.*

The Court declines to grant partial summary judgment to Rutherford on his claim under Mont. Code Ann. § 33-18-201(6). HCSC disputes the time in which liability became reasonably clear. HCSC provided evidence that Mayo did not

initiate an appeal of Rutherford's claim until November 15, 2023. (Doc. 268 at 27.)

HCSC contends that it had 60 days from the appeal to overturn its initial adverse

decision and determine liability. (*Id*. at 28.) HCSC argues it made that liability

determination on January 5, 2024. (*Id*. at 28.) HCSC contends that that once the

appeal process was completed and liability became reasonably clear, HCSC

promptly settled with Rutherford by paying his claim in full. (*Id*.) The jury remains

the proper fact finder to determine when liability became reasonably clear and

whether HCSC promptly and reasonably settled Rutherford's claim at that time.

### C. Whether HCSC's claim processing procedures comply with the requirement of Montana's UTPA for conducting a reasonable investigation.

Rutherford moves the Court to determine that HCSC's general business

practice for reviewing and denying "Not Medically Necessary" claims for lack of

documentation violates Mont. Code Ann. § 33-18-201(4). The Court declines the

offer.

Rutherford alleges that HCSC's handling of Rutherford's claim reflects the

standard process for HCSC reviewing claims denied as "Not Medically

Necessary." (Doc. 238 at 12.) Rutherford argues that HCSC has a practice of not

"direct[ing] reviewers to obtain information they deem necessary to make an

informed medical necessity determination or suggest that is an option." (*Id*.)

Rutherford contends that HCSC's denial of Rutherford's claim without having its

MRU obtain additional documentation, that was received by BCBS Minnesota, resulted in HCSC not having obtained the necessary information needed to make an informed decision violating Mont. Code. Ann. § 33-18-201(4). (*Id*. at 18-20.) Rutherford argues that HCSC's general practice of not having its MRU request documentation if lacking remains contrary to Montana law.

HCSC has provided the Court sufficient evidence at summary judgment to refute these assertions. (Doc. 268 at 28-30.) HCSC contends that its claims coordinators initially reach out to obtain pertinent and required documentation from the insured's provider. (*Id*.) HCSC has further provided evidence that its standard policy does not prohibit either Nurse Reviewers or MD's from requesting missing documentation. (*Id*.) HCSC provides that the MD's routinely seek additional documentation if needed and that its claims coordinators make an initial request for documents from providers from the outset to satisfy its obligations. (*Id*.) The Court declines to grant Rutherford summary judgment on his claims that HCSC's "Not Medically Necessary" policy generally violates Montana's UTPA.

### D. Punitive Damages.

HCSC argues that it is entitled to summary judgment on Rutherford's claim for punitive damages as the undisputed evidence does not establish that HCSC acted with actual fraud or malice in the handling of Rutherford's claim. (Doc. 234 at 29.) HCSC claims that its actions "reflect a company attempting to get the

information it needed to pay Rutherford's claim" but that nothing HCSC's did "could possibly support a jury finding deliberate indifference." (*Id*. at 32.) Rutherford responds that the question of whether HCSC acted with actual malice remains a question for the jury. (Doc. 263 at 25-26 (citing Mont. Code Ann. § 27-1-221(7)). The Court agrees.

Punitive damages may be awarded if the "defendant has been found guilty of actual fraud or actual malice." Mont. Code. Ann. § 27-1-221(1). Actual malice exists where the defendant knows of or "intentionally disregards facts that create a high probability of injury to the plaintiff" and deliberately acts either "in conscious or intentional disregard of" or "with indifference to the high probability of injury to the plaintiff." Mont. Code. Ann. § 27-1-221(2). Rutherford has raised genuine issues of material fact as to whether Rutherford may recover punitive damages against HCSC at trial. Rutherford asserts that the record shows that HCSC disregarded facts that created a high probability of injury to Rutherford. (Doc. 263 at 27.) Rutherford alleges that HCSC disregarded facts that established Rutherford was entitled to the benefits under the Plan, but that HCSC deliberately chose to deny such benefits. (*Id*.)

Rutherford points to the fact that HCSC had not reviewed documentation that suggested Rutherford had undergone an MRI and failed to consider and/or disregarded evidence in HCSC's possession for months. (*Id*.) Rutherford argues

that the information disregarded by HCSC showed that Rutherford was entitled to benefits. (*Id*. at 28-29.) For example, Rutherford alleges that HCSC had in its possession information related to Rutherford undergoing an MRI by at least September 1, 2023. (*Id*.) Rutherford's Montana provider, Benefis, who had performed Rutherford's MRI, submitted a reimbursement claim for the MRI on September 1, 2023. (*Id*. at 18, n.5.)  HCSC did not pay Rutherford's claim, however, until January 2024.

Genuine disputes of material fact preclude summary judgment on Rutherford's punitive damages claim. A reasonable juror could conclude that HCSC's actions rose to the level of actual malice. The Court denies HCSC's request for summary judgment on Rutherford's punitive damages claim.

### E.  Medical Expenses.

HCSC argues that Rutherford's claim for "[p]ayment of all [his] medical expenses as billed by his provider and covered by the plan" must be dismissed as moot. (Doc. 234 at 32.) HCSC contends that Rutherford has admitted that HCSC has paid his claims in full. (*Id*.) Rutherford argues that the jury should be able to consider these damages "while assessing malice and punitive damages." (Doc. 263 at 29.) Rutherford also suggests that Rutherford may still recover such damages as compensatory damages for HCSC's violation of the UTPA. (Doc. 263 at 20 (citing *Estate of Gleason v. Cent. United Life Ins. Co*., 350 P.3d 349, 350 (Mont. 2015).)

A review of *Gleason* proves proper. The Montana state district court in *Gleason* had instructed the jury that it must find that the plaintiff suffered compensatory damages beyond the damages recoverable under the insurance policy in order to award punitive damages. 350 P.3d at 357. The Montana Supreme Court determined that this jury instruction constituted an error. *Id*. *Gleason* concluded that "when an insurer is found to have violated the UTPA, damages due to denial of claims or delay in payment of claims in breach of the insurance contract may constitute compensatory UTPA damages sufficient to present the question of malice to the trier of fact." *Id*. Gleason further reasoned that "[t]he fact that damages due to a breach of the UTPA may also be damages arising out a breach of contract should not preclude the award of punitive damages if it can be shown that the insurer acted with malice." *Id*. *Gleason* concluded that "when an insurer is found to have violated the UTPA, breach of contract damages can also constitute compensatory damages for that violation." 350 P.3d at 358.

Rutherford has admitted that HCSC paid Rutherford's claim in full, including payment of the medical expenses at issue under the insurance policy. Rutherford sought payment of his medical bills when he filed suit. HCSC had not yet paid his claim in full at the time Rutherford filed suit. HCSC has now paid the full cost of Rutherford's surgery and claim. Rutherford acknowledges that he does "not seek a double recovery of the Mayo bills HCSC has already paid, but those

25

expenses remain relevant to malice, punitive damages, and emotional distress." (Doc. 263 at 31.)

The Court agrees that Rutherford may not seek double recovery for the amounts HCSC has already paid Rutherford, and, therefore, grants HCSC summary judgment on Rutherford's claim of relief for payment of the medical bills HCSC has paid. Rutherford may reference the payment amount that HCSC paid for Rutherford's medical expenses at trial for the purposes of demonstrating punitive damages, malice, and emotional distress. The Court acknowledges that HCSC's ultimate payment of Rutherford's claim does not cure or limit other damages Rutherford may recover under his UTPA or punitive damages claims. *Lorang*, 192 P.3d at 216.

The undisputed evidence shows that Rutherford was entitled under his insurance policy to the payment of his medical expenses that HCSC has now paid. It remains undisputed that Rutherford could have recovered the amounts HCSC now has paid to Rutherford as breach of contract compensatory damages, had HCSC not paid Rutherford's claim on January 5, 2024. The Court will instruct the jury on the amount that HCSC paid for Rutherford's covered claim and medical expenses. The Court will instruct the jury that if they find HCSC violated the UTPA, it may, but is not required to, award Rutherford additional damages beyond the payment of his medical expenses. The Court will further instruct the jury that if

they find that HCSC violated the UTPA, and Rutherford's only suffered damages were the amount of his initially denied surgery costs and medical expenses, they still must decide if HCSC acted with actual malice.

### F.  Consequential Economic Damages.

HCSC contends that it is entitled to judgment as a matter of law on Rutherford's request for consequential economic damages. (Doc. 234 at 33.) HCSC claims that Rutherford has failed to show any evidence or identify the expense he incurred while dealing with HCSC's claim denials. (*Id*.) Rutherford testified in his deposition that he "incurred minor expenses," but could not recall or provide detail on what those expenses were. (*Id*.) Rutherford acknowledges that at trial he must produce sufficient evidence of consequential economic damages to recover. (Doc. 263 at 31.)

The Court declines to grant summary judgment to HCSC on Rutherford's consequential economic damages. Rutherford has the burden of establishing at trial with reasonable certainty the minor consequential economic damages he referred to at his deposition.

### G. Prospective Relief.

HCSC argues that Rutherford's request for prospective relief proves moot. (Doc. 234 at 33-34.) The Court agrees. Rutherford does not dispute that the Court previously found he lacks standing to seek prospective relief. (Doc. 263 at 32.)

Rutherford can "no longer benefit from such relief" as he is no longer a member of the Blue Cross Blue Shield of Montana plan and has had his claim paid in full. *Slayman v. FedEx Ground Package Sys., Inc*., 765 F.3d 1033, 1048 (9th Cir. 2014). The Court grants HCSC's request for summary judgment on Rutherford's claims for prospective relief.

## CONCLUSION

The Court determines that summary judgment proves improper given the dispute of genuine material facts underlying the factual record. The Court denies summary judgment to Rutherford and HCSC on Rutherford's Montana UTPA claims. The Court grants HCSC summary judgment on Rutherford's claimed relief in the form of already paid medical expenses and prospective injunctive relief.

## ORDER

Accordingly, **IT IS ORDERED**:

1. HCSC's Motion for Summary Judgment (Doc. 233) is **GRANTED, in part**, and **DENIED, in part**.

   a. Rutherford's claims for payment of medical bills already paid and prospective relief are **DISMISSED**.

2. Rutherford's Motion for Partial Summary Judgment (Doc. 237) is **DENIED**.

**DATED** this 20th day of July 2026.

Brian Morris, Chief District Judge
United States District Court