**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**HELENA DIVISION**

| | |
|---|---|
| JOHNNY C. RUTHERFORD, JR. and MARY RUTHERFORD, and JOHNNY RUTHERFOR ON BEHALF OF THOSE SIMILARLY SITUATED,<br><br>           Plaintiffs,<br><br>    vs.<br>HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Company, doing business in Montana as Blue Cross and Blue Shield of Montana, and the MONTANA UNIVERSITY SYSTEM,<br><br>           Defendants. | **CV-24-81-GF-BMM**<br><br><br><br>**ORDER ON MOTIONS IN LIMINE** |

**INTRODUCTION**

The Court addresses competing motions in limine. Plaintiffs Johnny C. Rutherford, Jr., Mary Rutherford, and Johnny Rutherford on behalf of those similarly situated, (collectively "Rutherford"), filed a motion in limine that addressed multiple topics. (Doc. 249.) Rutherford seeks to exclude various subjects and topics at trial. (Doc. 250.) Defendant Health Care Service Corporation doing business in Montana as Blue Cross Blue Shield of Montana and the Montana

1

University System (hereinafter "HCSC" and "MUS" respectively) opposes the motion. (Docs. 267 and 259.)

HCSC has filed two motions in limine. (Docs. 241 and 243.) HCSC seeks to exclude the testimony of Rutherford's expert witnesses. (Doc. 241.) HCSC also seeks to exclude evidence of various subjects and topics. (Doc. 244.) Rutherford opposes the motions. (Docs. 260 and 265.) The Court held a hearing on July 8, 2026.

## FACTUAL BACKGROUND

The Court and parties remain familiar with the factual circumstances of the case. The factual and procedural background has been addressed in detail in the Court's previous order addressing the parties' cross-motions for summary judgment. (*See* Doc. 288.) Trial is scheduled for September 8, 2026.

## LEGAL STANDARD

Motions in limine serve as procedural mechanisms "to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). The decision on a motion in limine is committed to the district court's discretion, including the decision of whether to reserve ruling until trial. *See United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999). Motions in limine "should not be used to resolve factual disputes or weigh evidence." *BNSF R.R. v. Quad City Testing Lab., Inc.*, CV-07-170-BLG-RFC, 2010 U.S. Dist. LEXIS 113888, at *1 (D. Mont. Oct. 26, 2010).

A court will grant a motion in limine only if "the evidence is 'inadmissible on all potential grounds.'" *Frost v. BNSF Ry. Co.*, 218 F. Supp. 3d 1122, 1133 (D. Mont. 2016) (quoting *Quad City Testing Lab.*, 2010 U.S. Dist. LEXIS 113888 at *1). "[D]enial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Ducheneaux v. Lower Yellowstone Rural Elec. Ass'n*, No. CV 19-6-BLG-TJC, 2021 U.S. Dist. LEXIS 98985 at *25 (D. Mont. May 25, 2021) (internal quotations omitted).

Evidentiary rulings must be deferred until trial if evidence fails to meet the "inadmissible on all potential grounds standard." *Quad City Testing Lab.*, 2010 U.S. Dist. LEXIS 113888 at *2. To defer rulings on motions in limine allows a court to place "questions of foundation, relevancy and potential prejudice . . . in proper context." *Id.* (internal quotations omitted). A court may alter its ruling on a motion in limine if trial brings to light facts that the court failed to anticipate in its earlier ruling. *Bensimon*, 172 F.3d at 1127.

## DISCUSSION

HCSC moves the Court in limine to exclude testimony of Rutherford's experts. (Doc. 241.) HCSC also requests the Court exclude various opinions and

topics at trial. (Doc. 243.) Rutherford also seeks to exclude various opinions and topics at trial. (Doc. 249.) The Court will address each motion in turn.

## I.     HCSC's Motions in Limine

### A. HCSC's Motion to Exclude Rutherford's Expert Testimony.

HCSC seeks to exclude testimony of Rutherford's liability and damage experts. (Doc. 241.) Rutherford initially disclosed four liability experts: Kimberlee Hewitt ("Hewitt"), Richard Miltenberger ("Miltenberger"), Gregory Munro ("Munro"), and Linda Peeno ("Peeno"). (Doc. 242 at 10.) Rutherford subsequently disclosed an additional liability expert, Kim Holland ("Holland"), to rebut the opinions of HCSC's expert, Michael Ridgeway ("Ridgeway"). (*Id.*) HCSC argues that each of Rutherford's liability experts offer the same following two opinions: (1) that HCSC failed to conduct a reasonable investigation of Rutherford's claim; and (2) that HCSC's claim processing procedures prove improper. (*Id.*)

HCSC seeks to exclude Rutherford's liability experts for the following reasons: (1) they are unqualified; (2) they provide improper opinions on ultimate issues of law; (3) they rely on mischaracterized facts in the record; (4) they provide opinions outside the purview of expert testimony; (5) they mischaracterized HCSC's expert's opinions; and (6) they provide cumulative testimony. (Doc. 242.) Rutherford also disclosed two damage experts, Charity Rowsey ("Rowsey") and Steve Matthews ("Matthews"), with whose opinions HCSC takes issue. (Doc. 242

at 13.) HCSC contends that the Court must exclude Rutherford's damages experts as their opinions prove irrelevant and unreliable. (*Id*.) The Court disagrees.

HCSC's concerns with Rutherford's liability and damage expert testimony more appropriately can be addressed on cross examination. HCSC's concerns are also further minimized because Rutherford "concede[s] only what Rule 702 forecloses: the experts will not instruct the jury on the Unfair Trade Practices Act, opine that HCSC "violated" it, or testify to HCSC's subjective intent." (Doc. 260 at 7.)

Pursuant to Fed. R. Civ. P. 702, an expert's testimony proves admissible under the following circumstances: "(1) the testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. The U.S. Supreme Court "[i]n *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, imposed a gatekeeping obligation on trial judges to engage in objective screening designed to ensure that evidence that is put before the jury 'is not only relevant, but reliable.'" *United States v. Grace*, 455 F. Supp. 2d 1148, 1151 (D. Mont. 2006) (quoting 509 U.S. 579, 589 (1993)). "[J]udges are entitled to broad discretion when discharging their gatekeeping function." *U.S. v. Hankey*, 203 F. 3d 1160, 1168 (9th Cir. 2000). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are

the traditional and appropriate means of attacking shaky but admissible evidence."

*Daubert*, 509 U.S. at 595.

### 1. Rutherford's Liability Experts' Qualifications.

HCSC contends that all five of Rutherford's liability experts lack expertise "in health insurance claims processing." (Doc. 242 at 15.) HCSC relies on *Certain Underwriters at Lloyds, London v. Inlet Fisheries, Inc.*, 389 F. Supp. 2d 1145, 1154 (D. Alaska 2005), where the court excluded experts who had insurance industry experience but lacked specific experience regarding the "issue in the case at bar."

An expert witness must have "knowledge, skill, experience, training, or education' relevant to such evidence or fact in issue." *United States v. Chang,* 207 F.3d 1169, 1172 (9th Cir. 2000). Each of Rutherford's liability experts has sufficient experience relevant to the issues in this case, mainly revolving around the question of whether HCSC conducted a reasonable investigation into Rutherford's health insurance claim. Hewitt has years of experience related to claims handling and market conduct examination of insurers and their third-party administrators. (Doc. 260 at 7-8.) Hewitt examined insurer's conduct regarding compliance with Montana's insurance laws in these roles. (*Id.*) This activity included analyzing whether insurers adequately investigated claims based on the information they possessed or could have reviewed in its records. (*Id.*)

Miltenberger also proves qualified. (*Id*.) Miltenberger, as a health-benefit plan administrator, claims adjudicator, and CEO of a health insurer, has experience in the claims handling and investigative procedures entailed in making a medical-necessity determination. (*Id*. at 9.) Rutherford further notes that Miltenberger may offer his opinion on how HCSC's processes differed from his health insurance company's processes while he was CEO as standard of care evidence. (*Id*.)

Munro has years of experience as a lawyer litigating insurance cases in Montana. (Doc. 260 at 10.) Munro has sufficient experience and knowledge regarding the standard of care of an insurance company investigating a claim to offer an opinion on HCSC's conduct investigating Rutherford's claim. (*Id*.) Peeno, as a medical doctor, also has demonstrated she has experience of offering opinions on the reasonableness of HCSC's investigation of Rutherford's claim. (*Id*. at 11-12.) Peeno previously has experience making medical necessity determinations as a physician reviewer at Humana to opine on a similar medical necessity determination at issue in this case. (*Id*.) Lastly, Holland previously was the Insurance Commissioner of Oklahoma and Vice President of State Affairs for Blue Cross and Blue Shield Association. (*Id*. at 13.) Holland has the requisite experience to offer rebuttal testimony that a reasonable investigation should be conducted by HCSC before offering a denial given her work regulating insurance companies and work administrating claim handling rules. (*Id*.)

7

Each of Rutherford's expert are qualified to provide an opinion on whether HCSC's investigation of Rutherford's claim proved reasonable based on the relevant industry standards and their unique qualifications and experience in the insurance industry. HCSC may address any credibility concerns it has of Rutherford's experts on cross-examination. The issues HCSC attacks, like Miltenberger's and Peeno's "outdated" knowledge or Munro's allegedly limited experience litigating health insurance cases, remain the precise credibility issues reserved for the jury to decide. (*See* Doc. 242 at 17-18.)

### 2. Ultimate Issue of Law Opinions

"[A]n expert witness cannot give an opinion as to her legal conclusion, *i.e.*, an opinion on an ultimate issue of law." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.,* 523 F.3d 1051, 1058 (9th Cir. 2008) (citation and internal emphasis omitted). Specifically, an expert "can[not] say that the defendant did, in fact, violate [a] statute." *Bourdon v. Mt. West Farm Bureau Mut. Ins. Co.*, No. CV-12-97-M-DWM, 2013 WL 4446968, at *6 (D. Mont. Aug. 15, 2013). Both HCSC and Rutherford acknowledge that experts in this case may not testify to legal conclusions or improperly instruct the jury on what result it should reach.

Rutherford's and HCSC's experts remain free to testify "regarding industry conditions, standards, and practice." *Jarecke v. Am. Nat. Prop. & Cas. Co.*, No. CV 13-146-BLG-CSO, 2014 WL 5859535, at *5 (D. Mont. Nov. 12, 2014). Both HCSC

and Rutherford may not offer testimony that "HCSC's conduct violated the UTPA." Rutherford agrees he will not elicit such testimony if instructed. (Doc. 260 at 23.) To the extent Rutherford's experts intended to testify to HCSC's violation of the UTPA, the Court grants, in part, HCSC's motion in limine,

On the other hand, the opinions with which HCSC takes issue do not improperly opine on an ultimate issue of law. For example, Hewitt's opinion that HCSC "did not conduct a reasonable investigation based upon all available information, as required by Montana law prior to the denial of claims" would be proper. Expert witnesses may offer opinions on the ultimate issue of the case. *Reed v. Lieurance,* 281 F. Supp. 3d 1058, 1972 (D. Mont. 2017). Here, an ultimate issue remains whether HCSC's investigation of Rutherford's claim proved reasonable under the applicable industry standards and practices. The Court denies HCSC's motion in limine to exclude Rutherford's experts from offering opinions whether HCSC's conduct was reasonable. The jury must evaluate the credibility of the expert witnesses and determine the reasonableness of HCSC's actions and determine, in turn, whether HCSC violated Montana's UTPA.

HCSC also takes issue with Rutherford's experts relying on the UTPA and caselaw informing their opinions. The Ninth Circuit in *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004), rejected the insurer's argument that experts could not rely on the "requirements of state law, specifically

California's Unfair Settlement Claims Practice § 2695." The Ninth Circuit determined that "a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible." *Id.* In describing the industry standard, Rutherford's experts remain free to mention or rely on the law to assist the jury, without providing legal conclusions. As noted above, however, Rutherford's experts may not express an opinion that HCSC "violated Montana's UTPA."

### 3.  Mischaracterization of Refuted Facts.

HCSC argues that Rutherford's experts' opinions rely on mischaracterized refuted facts contained in the record. (Doc. 242 at 3-4.) For example, HCSC contends that Rutherford's experts base their opinion on the following incorrect facts: (1) that HCSC prohibits medical directors from requesting additional records; (2) that HCSC had a copy of Rutherford's MRI records during initial review; and (3) that Mayo's initial documents referenced an MRI. (*Id.*) HCSC contends that many of Rutherford's experts contradicted or acknowledged these refuted facts during their depositions. (*Id.*)

The Court denies HCSC's motion in limine to exclude allegedly refuted or factual mischaracterizations. The allegedly refuted or factual mischaracterizations relied on by Rutherford's experts may properly be addressed on cross-examination, rather than a motion in limine, as "[v]igorous cross-examination, presentation of contrary evidence . . .  are the traditional and appropriate means of attacking shaky

but admissible evidence." *Daubert*, 509 U.S. at 595.. HCSC remains free to cross-examine Rutherford's experts on the alleged contradictions made between their disclosed opinions and deposition testimony. HCSC may use its own evidence and testimony at trial to show the jury that it does not prohibit its medical directors from requesting data. HCSC further may introduce the initial records produced by Mayo to refute that the records contained either Rutherford's MRI report or any reference to an MRI. The jury must decide the facts, and HCSC may introduce contradictory statements made by Rutherford's experts to support its position.

### 4.  Improper Opinions regarding HCSC's Alleged Intent.

HCSC also argues that Hewitt's, Munro's, Peeno's, and Miltenberger's opinions rest on impermissible findings related to HCSC's intent. (Doc. 242 at 30.) HCSC alleges that Hewitt improperly opines that the denial letter sent to Rutherford explaining that the medical director "carefully reviewed" the claim "shows HCSC knew its duty and wanted the plan member/policyholder to believe it had performed when it had not." (*Id*. at 31 (quoting Doc. 242-6 at 10).) HCSC claims Munro improperly asserts that HCSC uses its claims handling process "for speed and efficiency" and to "shift the burden of identifying needed information and records unto the plan member and provider." (Doc. 242 at 31 (quoting Doc. 242-9 at 5).) HCSC asserts Peeno improperly opines that employees of HCSC "saw patients as [nothing] more than entries on their screens with dollar values." (Doc. 242 at 31

11

(quoting Doc. 242-11 at 10).) Lastly, HCSC argues that Miltenberger impermissibly claims that HCSC built its system to have high denial rates so "the money . . . is going to be in the pockets of the executives." (Doc. 242 at 31-32 (quoting Doc. 242-16).)

"Testimony about a party's intent or motive proves speculative and not within the purview of expert testimony." *Anderson as Tr. for Anderson v. Boyne USA, Inc.*, No. CV 21-95-BU-BMM, 2025 WL 1475515, at *3 (D. Mont. Feb. 12, 2025). Rutherford argues that his experts do not offer opinions about HCSC's intent, but rather, the experts' characterization and observations of HCSC's systems based off of the record and their experience. (Doc. 260 at 23-24.) The Court reserves ruling on HCSC's motion in limine to exclude opinions improperly based on HCSC's intent. This motion requires evidentiary context, specifically on whether Rutherford can lay the proper foundation for his experts to provide such testimony based on their training and experience. The Court will consider any specific issues and objections as they arise at trial.

### 5.  Holland's Alleged Mischaracterization.

HCSC argues that Holland's opinions relating to its expert Ridgeway must be excluded. (Doc. 242 at 32.) HCSC contends that Holland's rebuttal opinion "rests entirely on her incorrect characterization of [HCSC's] expert Michael Ridgeway's opinion, namely 'that standard industry practice allows health insurance companies

to deny claims without first performing a reasonable investigation.'" (*Id*. (quoting Doc. 242-5 at 1).) HCSC argues that Ridgeway never offered the opinion that insurance companies can forego a reasonable investigation. (*Id*.)

The Court declines to exclude Holland's rebuttal testimony on the basis that HCSC believes it mischaracterizes Ridgeway's opinion. HCSC may address its arguments during its cross-examination of Holland and through its direct examination of Ridgeway. The crux of the issue appears to be that the experts disagree on what a reasonable insurance investigation requires. The jury must determine credibility and the reasonableness of HCSC's investigation after hearing the testimony of each party's experts rather than exclusion of an experts' testimony on a motion in limine. The Court denies HCSC's motion in limine to exclude Holland's rebuttal testimony.

### 6.  Cumulative Nature of Testimony.

HCSC also asks the Court to limit the number of Rutherford's experts to avoid confusing the jury. (Doc. 242 at 33.) The Court declines to do so. The court in *Cranska v. UMIA Insurance Inc.,* 2024 U.S. LEXIS 5565, at *18 (D. Mont. Jan. 10, 2024), determined that the experts' testimony was not cumulative even when each expert reached a similar conclusion. *Cranska* reasoned that "each [expert] appl[ies] their own unique qualifications" and perspective to assist the factfinder. *Id*. Rutherford's experts similarly appear to bring unique backgrounds and perspective

to the issues in this case as a lawyer, insurance regulators, a health insurance executive, and a treating physician. (*See* Doc. 260 at 25.) The Court declines to limit the number of Rutherford's experts.

### 7. Rutherford's Damages Experts.

HCSC also seeks exclusion of Rutherford's damages experts, Rowsey and Matthews. (Doc. 242 at 33.) HCSC argues Rowsey's and Matthews's testimony proves irrelevant and unreliable. (*Id*.)

### a. Rowsey's Opinion.

HCSC argues that Rowsey's testimony proves irrelevant due to the Court's denial of class certification. (*Id*.) HCSC argues that Rowsey's opinions relate to the computation of damages on a class-wide basis and fails to acknowledge only Rutherford's individual damages. (*Id*. at 34.) The Court denies HCSC's motion in limine to exclude Rowsey. Rutherford contends that Rowsey's opinion develops on the theory that the "the rate at which HCSC allows claims reviewed for medical necessity increases as the number of appeals increases." (Doc. 260 at 31.) Rowsey's computation of damages opinion also could relate to the computation of Rutherford's individual damages. Rutherford has provided a sufficient basis that Rowsey's damages analysis and opinion pertain to Rutherford's individual case.

### b. Matthews's Opinion.

HCSC also argues that Matthews's testimony relating to HCSC's denial of claims increasing HCSC's profits and executive compensation should be excluded as irrelevant and unreliable. (Doc. 242 at 34.) Rutherford argues that Matthew's opinion directly rebuts HCSC's contention that it would be "impractical" to investigate claims before denial. (Doc. 260 at 32.) Rutherford contends that Metthew's testimony regarding the correlation between HCSC's claims-handling process and HCSC's profits and executive compensation proves relevant to the jury's finding of malice. (*Id*. at 33.)

The Court reserves ruling on this motion in limine to exclude certain testimony of Matthews related to HCSC's profits. HCSC has not established that Matthew's testimony proves "inadmissible on all potential grounds standard." *Quad City Testing Lab.*, 2010 U.S. Dist. LEXIS 113888 at *2. HCSC may open the door to the relevancy of this information if it presents argument that investigating claims before denial would be impractical for HCSC due to financial strain. The Court will consider any specific issues and objections as they arise at trial.

### B. HCSC's Additional Motions in Limine.

#### 1. Exclusion of the Kaiser Family Foundation Report and Data Set.

HCSC moves the Court to exclude the Kaiser Family Foundation Report ("KFF" Report"), reference to its context, and arguments related to the KFF report

15

at trial. (Doc. 244 at 11.) HCSC represents that the KFF Report contains data HCSC submits to the Centers for Medicare and Medicaid Services ("CMS") relating to the plans they offer on the Federal Facilitated Marketplace ("FFM"). (*Id*. at 12.) HCSC argues that the KFF Report and its underlying data should be excluded because it represents an incomplete data set containing only HCSC's partial submission, would be irrelevant, would not be limited to the denials at issue in the case, medical necessity denials, and would be prejudicial. (*Id*.)

HCSC claims that the KFF Report contains data for not only medical denials, but also dental and pharmacy claims and only includes data from the plans offered on the FFM. (Doc. 244 at 15.) HCSC argues that Rutherford did not obtain his plan through the FFM. (*Id*.) HCSC argues, as a result, that the data contained in the KFF Report remains irrelevant to Rutherford's claim. (*Id*.) HCSC asserts that its denial rate of *medical* claims, excluding dental and pharmacy claims, is only 18%, compared to the overall 29% denial rate published in the KFF Report for all denials. (*Id*. at 16.) HCSC argues that incomplete data and over-inclusiveness of the type of claims involved in the KFF Report skews the denial rates. (*Id*.)

Rutherford contends that the KFF Report should be allowed admission as relevant to (1) show the claim-denial rates compiled and published in the KFF with regard to HCSC; (2) establish a general business of claim denials without reasonable investigation; and (3) prove HCSC acted with actual malice. (Doc. 265 at 9-10.)

16

Rutherford asserts that the KFF Report's published information from health insurers establishes that HCSC's denial rates are significantly higher than other Montana health insurance carriers, including denial rates in the year 2023 when Rutherford's claim was denied. (*Id*. at 10, 12.)

Rutherford acknowledges that the KFF Report includes only data from FFM but argues that HCSC has admitted its medical necessity review remains the same across "insure or self-funded, marketplace or nonmarketplace, insured or administered as a TPA." (*Id*. at 13, 15.) Rutherford also argues that HCSC's employee in charge of submitting the data to CMS, Mark Tomaszewski, testified that the reporting contained no inaccuracies. (*Id*. at 13-14.) Rutherford further contends that the other internal data sets and denial rates provided by HCSC in discovery do not encompass the denial rates to other health insurers in Montana, providing relevant information on HCSC's denial practices compared to others as a general business practice. (*Id*. at 16.)

The Court reserves ruling on this motion in limine to exclude evidence regarding the KFF Report. HCSC has admitted its medically necessary denials remain the same across all of its insurance coverages, including the health coverage offered on FFM. The Court directs that if Rutherford intends to introduce the KFF Report that he should limit the introduction to the relevant portions of the KFF Report that relate to medical claim denials and not those of dental and pharmacy

denials. HCSC has provided the Court with sufficient evidence that these claim-denial rates differ from other medical denials like the denial at issue in this case. The Court will consider any specific issues and objections as they arise at trial. This motion requires evidentiary context at trial and establishing whether Rutherford can lay the proper foundation for the KFF Report's introduction.

### 2. Exclusion of HCSC's and BCBS Montana's Financial Condition During the Liability Phase.

HCSC seeks to exclude evidence relating to Blue Cross Blue Shield Montana ("BSBC Montana") or its parent company HCSC's financial standing during the liability phase of the trial. (Doc. 244 at 20.) HCSC contends such evidence would be irrelevant and prejudicial. (*Id*.)

"The financial standing of the defendant is inadmissible as evidence in determining that amount of compensatory damages to be awarded." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). Evidence of a defendant's size and wealth could prove prejudicial because it "might suggest to the jury that it base its verdict on an improper consideration." *Rodriguez v. JLG Industries, Inc.*, 2012 WL 12882925, *12 (C.D. Cal. Oct. 29, 2012) (citations omitted).

Rutherford contends that it does not intend to introduce HCSC's financial standing to establish liability, but instead to "rebut HCSC's assertion that compliance with Montana law was economical infeasible." (Doc. 265 at 18.) Rutherford argues that the relevance of HCSC's profits would be relevant to the

issue of whether hiring more people to investigate the claims is practical. (*Id*.) The Court remains unpersuaded by Rutherford's arguments and finds that the introduction of HCSC's and BCBS Montana's financial standing appears too prejudicial. The issues in this case remain limited to HCSC's investigation into Rutherford's individual claim. Rutherford may continue to argue that HCSC could have done a more reasonable investigation, with additional employees and a more thorough review, without reference to HCSC's annual profits.

The Court grants HCSC's motion in limine to exclude evidence of HCSC's or BCBS Montana's financial condition during the liability phase of trial. Financial condition of a defendant generally proves irrelevant and has the potential to impermissibly sway the jury's consideration. *Geddes*, 559 F.2d at 560. The Court notes that HCSC may open the door to the relevancy of this information if it presents argument about the financial impracticability of conducting a reasonable investigation of claims before denial. The Court will consider HCSC's and BCBS Montana's financial condition potential admissibility and objections as they arise at trial.

Rutherford may seek to ask potential jurors during *voir dire* if they have a financial interest in BCBS Montana or HCSC. The Court grants HCSC's motion in limine to exclude evidence relating to the financial standing of BCBS Montana and HCSC or their ability to pay damages at the liability phase of the trial, except as to

question during *voir dire*. Fed. R. Evid. 403 and *Geddes,* 559 F.2d at 560. Both parties do not dispute that HCSC's financial standing may become relevant during a potential punitive damages phase.

### 3. Exclusion of HCSC's CEO Maurice Smith's Compensation During Liability and Punitive Phases.

HCSC similarly argues that evidence relating to HCSC CEO Maurice Smith's compensation and finances should be excluded. (Doc. 244 at 22.) HCSC argues that information about its executive's compensation would be irrelevant to the issues in this case. (*Id.*) Rutherford responds that the compensation of HCSC's executive would be relevant to show that their "bonuses vary widely in correlation with the previous years' claim handling profits." (Doc. 265 at 19.)

The Court reserves ruling on HCSC's motion in limine to exclude evidence of Smith's compensation during the liability phase. This motion requires evidentiary context. The Court will consider any specific issues and objections as they arise at trial.

On the other hand, "executive compensation is not relevant to show defendants' ability to pay a punitive damages award.*" In re E.I. DuPont de Nemours and Co*., No. 2:13-md-2433, 2015 WL 5882084, at *2 (S.D. Ohio Oct. 5, 2015) (quoting *Avondale Mills, Inc. v. Norfolk S. Corp*., No. 1:05-cv-2817, 2008 WL 6953958, at *1 (D. S.C. Jan. 16, 2008)). The Court grants HCSC's motion in limine to exclude evidence of Smith's compensation during the punitive damages phase as

such evidence would be irrelevant to HCSC's or BCBS Montana's ability to pay punitive damages. Smith would not be responsible for paying a punitive damages award.

### 4. Exclusion of Hyperbolic and Inflammatory Rhetoric about Health Insurers and Managed Care Organizations.

HCSC contends that the Court should exclude Rutherford or his counsel from "making hyperbolic, inflammatory, or stereotypical characterizations of HCSC, health insurers, managed care organizations, or large corporations generally." (Doc. 244 at 25-26.) HCSC does not describe exactly what statements it wishes to exclude. Rutherford argues it does not intend to make hyperbolic or inflammatory statements aimed at corporations or health insurers. (Doc. 285 at 22-23.)

The Court reserves ruling on this motion in limine depending on whether Rutherford does introduce inflammatory statements at trial and based on what specific wording or phasing may be used. This motion requires context. The Court will consider any specific issues and objections as they arise at trial.

### 5. Exclusion of references to BCBS Montana's Law Firm, Lawyers, and Their Residency.

HCSC moves the Court to exclude evidence relating to the size of HCSC's legal team, the law firms that employ them, and where the legal team resides. (Doc. 244 at 27.) HCSC argues such evidence would serve only to prejudice the jury against HCSC. (*Id*.) Courts have routinely excluded evidence relating to the size and

21

location of the law firms and lawyers representing a party. *See e.g. Zrowka v. BNSF Ry. Co*, 2023 WL 3412465, at *5 (D. Mont. 2023); *Olsen v. Owners Ins. Co.*, No. 18-cv-01665, 2022 WL 1791098, at *2 (D. Col. June 1, 2022); *Strickholm v. Evangelical Lutheran Good Samaritan Soc.*, No. 1:11-cv-00059, 2013 WL 788096, at *6 (D. Idaho Mar. 1, 2013); *Alexander v. Wal-Mart Stores, Inc.*, No. 2:11-cv-752, 2013 WL 427132, at *4 (D. Nev. Feb. 1, 2013).

Rutherford may seek to ask potential jurors during *voir dire* if they have a connection to one of the lawyers in the case or with the law firms involved. The Court otherwise grants HCSC's motion in limine to exclude Rutherford from referencing the size and location of HCSC's legal team. Fed. R. Evid. 401.

### C. Rutherford's Motions in Limine

#### 1. Exclusion of Testimony that "industry standard" is contrary to § 33-18-201 and *Lorang*.

Rutherford moves the court to exclude argument and testimony that the health insurance claim handling industry standard differs from the standard's set out in Mont. Code Ann. § 33-18-201(4) and *Lorang*. (Doc. 250. at 10-11.) Rutherford specifically focuses on the fact that Montana law requires an insurer to conduct a reasonable investigation based on all available information and that an adjuster should obtain enough information to make an informed decision. (*Id*.) HCSC does not disagree that these requirements apply to HCSC's investigations in Montana.

The Court finds that Rutherford's motion in limine seeks to address issues relating to the parties' disagreements over the interpretation of what "a reasonable investigation based on all available information" means. Motions in limine are improper "for arguing that the opposing party's legal arguments on the merits of the case are incorrect." *Laskowski v. Dep't of Veteran Affs.*, 2011 WL 5040953, at *4 (M.D. Pa. Oct. 24, 2011. The main issue for the jury to decide remains whether HCSC conducted a reasonable investigation of Rutherford's claim. The parties' expert witnesses are free to opine regarding what a reasonable investigation entails based on their unique backgrounds, industry standards, and experience in the insurance industry.

The Court will instruct the jury on the law as applied to Rutherford's case, including that Mont. Code Ann. § 33-18-201 requires insurance companies to conduct a reasonable investigation and obtain pertinent records. The Court denies Rutherford's motion in limine. Rutherford failed to show that HCSC's experts rely on principles or standards that remain contrary to Montana law. Rutherford's providers initially submitted documents to support his claim, as HCSC argues that other providers typically do in the industry. HCSC may argue it remains industry standard to have medical providers submit required documents when seeking reimbursement of a claim. To the extent that HCSC attempts to rely on principles that appear contrary to Montana law at trial, Rutherford may object at trial. The

23

Court will address objections and argument as they arise at trial. Otherwise, Rutherford may cross-examine HCSC's experts at trial on why their opinions prove contrary to the relevant industry standards.

### 2. Exclusion of Arguments and Testimony that "everyone does it that way."

Rutherford seeks to exclude argument and testimony that everyone in the health insurance industry denies claims as not medically necessary based on what medical providers submit and leave the determination for appeal rather than under an initial investigation. (Doc. 250 at 12.) Rutherford argues that the Court should prohibit HCSC attempts to make such an argument to relieve itself from "complying with its legal obligations." (*Id*.) The Court reserves ruling on this motion in limine to exclude HCSC from arguing that "everyone else does it that way." This motion requires evidentiary context.

### 3. Exclusion of Arguments, Testimony, and Evidence contrary to 30(b)(6) Testimony.

Rutherford moves the Court to prevent HCSC from presenting evidence or testimony that contradicts the testimony that it admitted in the Fed. R. Civ. P. 30(b)(6) depositions. (Doc. 250 at 13-14.) Rutherford relies on *Snapp v. United Transp. Union*, 889 F.3d 1088, 1103 (9th Cir. 2018). *Snapp* determined that an "entity [could not] defeat a motion for summary judgment based on an affidavit that conflicts with its Rule 30(b)(6) deposition" and that the entity could not "rebut the

24

testimony of its Rule 30(b)(6) witness when, as here, the opposing party has relied on the Rule 30(b)(6) testimony, and there is no adequate explanation for the rebuttal." *Id*. *Snapp* went on to explain, however, that "Rule 30(b)(6) testimony also is not binding against the organization in the sense that the testimony can be corrected, explained and supplemented, and the entity is not 'irrevocably' bound to what the fairly prepared and candid designated deponent happens to remember during the testimony." *Id*. at 1103–04 (quoting 7 James Wm. Moore, et al., Moore's Federal Practice § 30.25[3] (3d ed. 2016)).

The Court denies Rutherford's motion in limine to exclude HCSC from supplementing or presenting evidence outside the scope of the 30(b)(6) depositions. The Ninth Circuit caselaw cited by Rutherford does not preclude HCSC from presenting evidence Rutherford contends as contrary to HCSC's representative testimony during the 30(b)(6) deposition. Rutherford remains free to cross-examine HCSC's representative on issue he finds contradictory of the sworn deposition testimony at trial.

### 4. Exclusion of the Court's Denial of Rutherford's Motion for Partial Summary Judgment and Class Certification.

Rutherford seeks to exclude reference of the Court's denial of summary judgment and class certification. (Doc. 250 at 19-20.) Rutherford argues that the Court's denial of Rutherford's motions throughout the litigation proves irrelevant

and prejudicial. (*Id*. at 20.) HCSC did not provide objections to this motion in limine in its response brief. (*See generally* Doc. 267.)

The Court grants Rutherford's motion in limine to exclude reference to the Court's denial of Rutherford's Motion for Partial Summary Judgment and the Court's denial of Class Certification as well as comments made by the Court in such motions. *See Ensource Invs. LLC v. Willis*, No. 3:17-CV-00079-H-LL, 2020 WL 532376, at *1 (S.D. Cal. Feb. 3, 2020) (citing *United States v. Sine*, 493 F.3d 1021, 1033–37 (9th Cir. 2007)).

### 5. Exclusion of Deposition taken in Violation of Court's Pro Hac Vice Orders.

Rutherford seeks to exclude certain depositions he contends were taken in violation of the Court's Pro Hac Vice orders. (Doc. 250 at 21.) Rutherford contends that fifteen out-of-state lawyers have represented HCSC in this case but that the Court only admitted pro hac vice six of these lawyers. (*Id*. (citing Docs. 40, 59, 123, 135, and 149).) Rutherford asserts that the pro hac vice orders specifically say "[a]dmission is personal to [specific lawyer], not the law firm she works for." (Doc. 250 at 21.) Rutherford further contends that the Court's Local Rules require that local counsel participate in all phases of the litigation, including attendance at depositions. (*Id*.) Rutherford argues that of the numerous depositions both defended and taken by HCSC, local counsel did not participate, and in some depositions, no attorneys admitted pro hac vice were present. (*Id*. at 22.)

26

HCSC disputes that two of the depositions referenced by Rutherford, Peeno's and Hewitt's, violated the Court's pro hac vice order as either local counsel or an admitted pro hac vice counsel were present. (Doc. 267 at 23 n.10.) Rutherford accepted that local counsel and/or admitted pro hac counsel were present at Peeno's and Hewitt's depositions. (Doc. 279 at 8.)

HCSC further argues that excluding the other referenced depositions of which no local or admitted pro hac vice counsel were present represents a "drastic sanction." (Doc. 267 at 23.) HCSC contends that Rutherford failed to raise any objections at the time HCSC conducted the depositions using attorneys not admitted pro hac vice thereby waiving such objections now. (*Id.* (citing Fed. R. Civ. P. 32(d)(3)(B)).) HCSC further argues that exclusion of use of these depositions would be a disproportionate sanction due to the lack of prejudice Rutherford has shown. (Doc. 267 at 25.)

The Court denies Rutherford's motion in limine to exclude depositions taken by attorneys who the Court has not admitted pro hac vice or taken without local counsel present. The Court acknowledges that HCSC should have complied with their obligations under their pro hac vice orders of admission and avoided evading the Court's directives. Had time restraints been an issue to complete these depositions properly, the parties remained free to ask the Court for a discovery deadline extension. The Court notes, however, that Rutherford should have raised

27

this issue with the Court as soon as the information became available to him rather than in a motion in limine months before trial. Rutherford fails to explain why he did not raise any objections earlier. The Court also determines that Rutherford has not established that he suffered any prejudice or that HCSC obtained an unfair advantage with the use of these depositions. Both Rutherford and HCSC instead have used the deposition testimony throughout the litigation.

### 6. Exclusion of Mary's Financial Condition.

Rutherford similarly moves to exclude evidence regarding Mary Rutherford's financial condition. (Doc. 250 at 23.) The Court explained above that a defendant's financial condition generally proves irrelevant to any liability determination. *See Geddes*, 559 F.2d at 560. Rutherford contends that Mary's financial proves irrelevant here because the Court dismissed any claims she had for damages, including seeking emotional distress. (Doc. 250 at 23.)

HCSC argues that Rutherford has put Mary's financial condition at issue by claiming that Rutherford faced financial stress in dealing with the payment of Rutherford's claim that HCSC denied. (Doc. 267 at 26-28.) HCSC contends that Rutherford and Mary jointly share finances and that Mary's finances remain relevant to his claim for emotional distress and his alleged financial hardship faced during the claim denials. (Doc. 267 at 26.)

The Court reserves ruling on Rutherford's motion in limine to exclude evidence regarding Mary Rutherford's financial condition. Rutherford has placed his financial condition at issue in the litigation. The financial strain of which Rutherford complained appears somewhat tied to Mary Rutherford's finances as Rutherford has joint access to her finances as her spouse. Rutherford may open the door to the admissibility of information regarding Mary Rutherford's finances. This motion requires evidentiary context. The Court will address specific issues and objections as they arise at trial.

### 7.  Exclusion of Linda Peeno's 2007 License Suspension.

Rutherford seeks to exclude evidence of his expert, Linda Peeno's, medical license suspension in 2007 under Fed. R. Evid. 403. (Doc. 250 at 24.) Rutherford argues that Peeno did not renew her medical license because she "shifted to medical ethics work" rather than continuing as a medical doctor. (*Id.*) Rutherford contends that this evidence of Peeno's lack of a license proves remote in time, irrelevant, and that any probative value is substantially outweighed by unfair prejudice. (*Id.*) HCSC did not file an objection to this motion in limine. (*See generally* Doc. 267.) The Court grants Rutherford's motion to exclude evidence of Linda Peeno's 2007 medical license suspension.

### 8. Exclusion of Argument that HCSC's Appeal Process is Part of the Investigation.

Rutherford moves the Court to exclude HCSC from arguing that its appeals process remains part of the reasonable investigation into Rutherford's claim. (Doc. 250 at 25.) Rutherford argues that *Lorang* makes clear that a reasonable investigation must be done before the denial and that subsequent actions cannot cure bad faith. (*Id.*) *Lorang* determined that the inquiry into whether an insurance company conducted a reasonable investigation required requires an analysis of the insurance companies conduct before it denied the claim, and that "conduct after the denial cannot operate to satisfy the statutory obligation to conduct a reasonable investigation before denial." 192 P.3d at 216. The Court determined that this language provides that HCSC's actions in conducting Rutherford's appeal do not resolve the question of whether HCSC conducted a reasonable investigation *before* sending Rutherford its initial denial on July 21, 2026. (*See* Doc. 288 at 10-11.)  The Court resolved the parties' dispute at summary judgment. (*Id.*)

The Court grants this motion in limine to exclude HCSC from arguing that its appeal process proves part of the reasonable investigation into Rutherford's claim as noted in the Court's summary judgment order. (*See* Doc. 288 at 10-11.)  HCSC's appeal process remains relevant to other claims at issue in this case, particularly Rutherford's claim that HCSC failed to settle the claim promptly when liability became reasonably clear. *See* Mont. Code Ann § 33-18-201(6). HCSC's alleged

subsequent actions, alleged thorough investigation into Rutherford's claims, and the eventual payment of Rutherford's claims, also may prove relevant to damages. *See Lorang*, 192 P.3d at 216. The Court does not preclude HCSC from offering evidence at trial regarding its appeal process and what was done to resolve Rutherford's claim.

### 9. Exclusion of Conversations Overheard During Deposition Breaks.

Rutherford seeks to exclude evidence of conversations overheard during deposition breaks taken during John and Mary Rutherford's depositions in Helena, Montana. (Doc. 250 at 26.) Rutherford contends that at one point during the deposition, Rutherford's counsel had a conversation with Rutherford. (*Id*.) HCSC informed Rutherford's counsel when they returned to the deposition that they could hear the conversation had. (*Id*.) HCSC did not object to the exclusion of evidence of the overheard conversation. (*See generally* Doc.  267.) The Court grants Rutherford's motion in limine to exclude evidence of the alleged conversation between Rutherford and his counsel overheard by HCSC at Rutherford's deposition.

### 10. Exclusion of Alleged Fault of Non-Parties.

Rutherford moves the Court to prohibit HCSC from placing fault onto non-parties in the case, namely BCBS Minnesota and Mayo. (Doc. 250 at 27.) Rutherford argues that Mont. Code Ann. § 27-1-703(6)(c)(iii) precludes parties from comparing fault of others who could have been named as a party to the suit. (*Id*.) On the other hand, the Montana Supreme Court has explained that in certain instances, the

introduction of non-party evidence may be relevant and admissible. *Byers v. Cummings*, 87 P.3d 465 (Mont. 2004). *Byers* determined that evidence of non-party conduct may be admissible where "presented as to the involvement of others . . . to explain how the transaction came together and the role of each who participated in the transaction." *Id*.

The Court grants Rutherford's motion in limine to prevent HCSC from attempting to introduce evidence and apportion fault to BCBS Minnesota. The Court will allow HCSC to introduce evidence of BCBS Minnesota's conduct and Mayo's conduct, however, to show HCSC's communications with BCBS Minnesota and Mayo, and BCBS Minnesota's and Mayo's involvement and roles, if any, in the investigation of Rutherford's claim. BCBS Minnesota's participation in the sending of the record request to Mayo and receipt of the medical records from Mayo proves highly relevant to the issues in this case. (*See* Doc. 267 at 29.) Communications with these non-parties provide insight into the reasonableness and extent of HCSC's investigation.

### 11. Exclusion of Evidence that Places Fault on Rutherford.

Rutherford seeks to exclude evidence or argument by HCSC attempting to place fault on Rutherford. (Doc. 250 at 28.) Rutherford claims that HCSC failed to plead affirmative defenses of comparative fault or contributory negligence. (*Id*.; *see also* Doc. 97.)

The Court grants Rutherford's motion in limine to exclude evidence and argument related to apportioning fault to Rutherford. The Court will allow HCSC to describe its communications with Rutherford and the requests sent to Rutherford, as such evidence would be relevant to HCSC's investigation of Rutherford's claim and the events that transpired following the submission of his claims. The communications with Rutherford related to his claims provides insight into the reasonableness of HCSC's actions.

### 12. Exclusion of Undisclosed and Late-Produced Documents.

Rutherford asks the Court to exclude undisclosed, untimely, and late-produced documents. (Doc. 250 at 28.) Rutherford contends that HCSC produced a large volume of documents on March 25, 2026, two days before close of discovery, and an additional set of documents on April 15, 2026. (*Id.*) HCSC argues that Rutherford waived any objection to the timeliness of HCSC's disclosure of documents on March 25, 2026, and April 15, 2026. (Doc. 267 at 30.) HCSC contends that Rutherford has shown no prejudice and failed to ask the Court for additional discovery or depositions until the filing of this motion in limine. (*Id.*) HCSC also claims that Rutherford untimely provided pages of documents after the close of discovery on May 4, 2026. (*Id.*) Courts have declined to exclude untimely produced documents where "[b]oth parties [produced] documents well after the discovery

deadline." *See Torres v. City of L.A.*, No. CV-13-1200-MWF-(JCGx), 2014 WL 13133503, at \*7 (C.D. Cal. Aug. 5, 2014).

The Court denies Rutherford's motion in limine to exclude undisclosed, untimely, or late produced document disclosures made by HCSC. The Court declines to exclude the documents produced by HCSC before the close of discovery. Although HCSC provided the March 15, 2026, documents at the end of discovery, it did so before the deadline passed. The Court further declines to exclude the documents produced by HCSC after the close of discovery. Rutherford himself untimely produced discovery documents after the close of discovery and failed to promptly notify the Court regarding the discovery issues he now brings to the Court. Both parties have had ample time since the disclosure of the late-produced documents to have reviewed the documents and notified the Court of any issues.

### 13. Rutherford's Affirmative Motions in Limine.

### 1. Whether *Lorang* Sets the Standard.

Rutherford requests that the Court "make clear that the rules set forth in § 201 and *Lorang* govern HCSC's claim handling in this case." (Doc. 250.) The Court declines to do so on a motion in limine. The Court will instruct the jury on the law that applies to the case at trial. The Court denies this motion in limine.

      **2. Whether Dunkirk and Ellis are agents of HCSC and therefore, their testimony can be used for "any purpose."**

Rutherford also asks the Court to determine that Dunkirk and Ellis constitute managing agents of HCSC so that Dunkirk's and Ellis's testimony may be used for any purpose as outlined in Fed. R. Civ. P. 32. (Doc. 250 at 29-30.) Rutherford argues that as HCSC's medical review unit, Dunkirk and Ellis exercised judgment in making claim decisions on behalf of HCSC. (*Id.* at 31.) Rutherford further asserts that HCSC's Rule 30(b)(6) representative testified that HCSC defers to what Dunkirk and Ellis provide regarding the medical review process. (*Id.*)

HCSC argues that Dunkirk and Ellis do not fit the description of a managing agent as laid out in Fed. R. Civ. P. 32(a)(3). (Doc. 267 at 32.) HCSC argues that Dunkirk lacks authority to deny claims, as her denials must be reviewed by a doctor for additional review. (*Id.*) HCSC claims that Ellis no longer worked for HCSC at the time that her deposition was taken. (*Id.* (citing *Carpenter v. Forest Meadows Owners Ass'n, No.*, 2011 WL 3207778, at *3-4 (E.D. Cal. July 27, 2011)).) *Carpenter* explained that managing agents must be acting as managing agent when they are deposed and must be employed by the party at the time of the deposition to meet Rule 32(a)(3)'s temporal requirements. 2011 WL 3207778, at *3-4.

Rule 32(a)(3) provides that "an adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director,

35

managing agent, or designee under Rule 30(b)(6) or 31(a)(4)." Fed. R. Civ. P. 32(a)(3). Court consider the following factors when determining if a witness falls with the definition of a managing agent: "(1) whether [they have] general powers allowing [them] to exercise judgment and discretion in corporate matters; (2) whether [they] can be relied on to testify, at the corporation's request, in response to the discovery proponent's demands; (3) whether there are any other employees who have more authority than the individual in regard to information concerning the subject matter at issue in the case; (4) [their] general responsibilities respecting the matters involved in this litigation; and (5) whether [they] can be expected to identify with the interests of the corporation. No single factor is conclusive, and courts typically focus on the degree of control the individual has over the corporate affairs at issue." *Vision Ctr. Nw. Inc. v. Vision Value LLC*, 2008 WL 4276240, at *3 (N.D. Ind. Sept. 15, 2008), *aff'd*, 2008 WL 4724722 (N.D. Ind. Oct. 21, 2008). "The burden is on the examining party to establish the status of the deponent as an officer, director, or managing agent, but this burden is a "modest" one and any doubts are resolved in favor of the examining party." *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 333 (D. Nev. 2016).

The Court denies Rutherford's affirmative motion in limine to determine that Dunkirk and Ellis are "managing agents" of HCSC. Dunkirk fails to possess sufficient power and authority to exercise her judgment. An independent medical

director must review each denial made by Dunkirk. The Court determines that Ellis also cannot be designated as a managing agent for HCSC. Ellis may have had some authority to make claim decisions while she was employed by HCSC. Ellis now may not be expected to identify with the interests of HCSC as HCSC no longer employs Ellis as a medical director.

## ORDER

Accordingly, **IT IS ORDERED:**

**HCSC's and MUS's Motions in Limine**

1. HCSC's Motion in Limine to Exclude Testimony of Plaintiffs' Experts (Doc. 241) is **GRANTED**, in part, and **DENIED**, in part.

   a. The Court **DENIES** to exclude any of Rutherford's disclosed experts at trial.

   b. Rutherford's experts may not offer ultimate legal opinions that HCSC's conduct "violated the Montana UTPA."

   c. The Court **RESERVES RULING** on HCSC's motion in limine to exclude improper opinions regarding HCSC's alleged intent.

   d. The Court **RESERVES RULING** on HCSC's motion in limine to exclude Matthew's testimony relating HCSC's denial of claims increasing HCSC's profits and executive compensation.

2. HCSC's Motion in Limine (Doc. 243) **GRANTED**, in part, and **DENIED**, in part.

    a. The Court **RESERVES RULING** on HCSC's motion in limine to exclude evidence of the Kaiser Family Foundation Report.

    b. HCSC's motion in limine to exclude evidence of BCBS Montana's and HCSC's financial conditions during the liability phase of trial is **GRANTED**.

    c. The Court **RESERVES RULING** on HCSC's motion in limine to exclude evidence regarding HCSC's CEO, Maurice Smith's, compensation during the liability phase. HCSC's motion in limine to exclude evidence of Maurice Smith's compensation during the punitive phase is **GRANTED**.

    d. The Court **RESERVES RULING** on HCSC's motion in limine to exclude hyperbolic and inflammatory rhetoric about health insurers.

    e. HCSC's motion in limine to exclude references to HCSC's law firm size and location is **GRANTED**.

3. MUS's Motion for Joinder in HCSC's Motion for Summary Judgment and in Opposition of Rutherford's Motion for Partial Summary Judgment and Motion in Limine (Doc. 259) is **GRANTED**, in part and **DENIED**, in part to the extent that the Court granted, in part, and denied, in part, HCSC's

Motion for summary judgment (*See* Doc. 288) and granted, in part, and denied, in part, Rutherford's motions in limine in this Order.

**Rutherford's Motions in Limine**

1. Rutherford's Motion in Limine (Doc. 249) is **GRANTED**, in part, and **DENIED**, in part.

   a. Rutherford's motion in limine regarding "industry standard" contrary to § 33-18-201 and Lorang is **DENIED**.

   b. The Court **RESERVES RULING** on Rutherford's motion in limine to exclude evidence that "everyone does it that way."

   c. Rutherford's motion in limine to exclude evidence contrary to 30(b)(6) testimony is **DENIED**.

   d. Rutherford's motion in limine to exclude evidence that the Court denied his Motion for Partial Summary Judgment and Class Certification is **GRANTED**.

   e. Rutherford's motion in limine to exclude depositions taken in violation of the Court's Pro Hac Vice Orders is **DENIED**.

   f. The Court **RESERVES RULING** on Rutherford's motion in limine to exclude evidence of Mary Rutherford's financial condition.

   g. Rutherford's motion in limine to exclude evidence of Linda Peeno's license suspension is **GRANTED**.

39

h. Rutherford's motion in limine to exclude argument that HCSC's appeal process is part of the investigation under Mont. Code Ann. § 33-18-201(4) is **GRANTED**.

i. Rutherford's motion in limine to exclude testimony and evidence regarding conversations allegedly overheard during deposition breaks is **GRANTED**.

j. Rutherford's motion in limine to exclude argument of non-party fault is **GRANTED**. HCSC may still provide testimony regarding third-parties involvement in the investigation of Rutherford's claim.

k. Rutherford's motion in limine to exclude argument of fault by Rutherford is **GRANTED**. HCSC may still provide testimony regarding the communications it had with Rutherford during the investigation of Rutherford's claim.

l. Rutherford's motion in limine to exclude undisclosed and late-produced documents is **DENIED**.

m. Rutherford's motion in limine to have the Court determine *Lorang* sets the standard is **DENIED**.

n. Rutherford's motion in limine to have the Court determine Dunkirk and Ellis as managing agents of HCSC is **DENIED**.

DATED this 30th day of July 2026.

Brian Morris, Chief District Judge
United States District Court